Mathew S. Rosengart (SBN CA 255750)
Mark D. Kemple (SBN CA 145219)
Alex Linhardt (SBN CA 303669)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
rosengartm@gtlaw.com
kemplem@gtlaw.com
linhardta@gtlaw.com

Jonathan F. Cohn (DC 476551) (*PHV forthcoming*)
Mary Elizabeth Miller (DC 252694) (*PHV forthcoming*)
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
William T. Thompson (TX 24088531) (*PHV forthcoming*)
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
LEHOTSKY COHN LLP
Telephone: (512) 693-8350
Facsimile: (512) 727-4755
jon@lehotskycohn.com
mary@lehotskycohn.com
will@lehotskycohn.com

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| SARAH WYNN-WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 4:26-cv-06341<br><br>**META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS UNDER 9 U.S.C. §§ 3, 4**<br><br>Complaint Filed Date: June 25, 2026<br><br>***Hearing Date Pending Judicial Assignment***<br>Judge: _____<br>Date: _____<br>Time: _____<br>Courtroom: \_\_ |

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

*Both parties have declined magistrate judge jurisdiction, and thus the parties are currently awaiting their judicial assignment. Hence, the date and place of the hearing have been left blank on this notice. Defendant Meta Platforms, Inc. will promptly file an amended Notice of Motion once a judge is assigned.*

PLEASE TAKE NOTICE that on _____, 2026, at _____ or as soon thereafter as the matter can be heard, before the Honorable _____, in Courtroom ___ of the Ronald V. Dellums Federal Building & United States Courthouse, located at 1301 Clay Street Oakland, CA 94612, Defendant Meta Platforms, Inc. ("Meta"), will and hereby does move the Court for an order compelling Plaintiff Sarah Wynn-Williams' claims to arbitration and staying proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the attached declarations, the attached exhibits, all other papers filed in this action, and the arguments of counsel.

DATED: July 6, 2026

Respectfully submitted,

Jonathan F. Cohn* (DC 476551)
Mary Elizabeth Miller* (DC 252694)
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
William T. Thompson* (TX 24088531)
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
LEHOTSKY COHN LLP
Telephone: (512) 693-8350
Facsimile: (512) 727-4755
jon@lehotskycohn.com
mary@lehotskycohn.com
will@lehotskycohn.com

*Attorneys for Defendant Meta Platforms, Inc.*

/s/ Mathew S. Rosengart
Mathew S. Rosengart (SBN CA 255750)
Mark D. Kemple (SBN CA 145219)
Alex Linhardt (SBN CA 303669)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
rosengartm@gtlaw.com
kemplem@gtlaw.com
linhardta@gtlaw.com

*Attorneys for Defendant Meta Platforms, Inc.*

* *Pro hac vice* motion forthcoming.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

**TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

    A.    Wynn-Williams' Termination, Severance Agreement, and Book
        Publication ........................................................................................................ 2

    B.    The Arbitration........................................................................................................ 3

LEGAL STANDARD.............................................................................................................. 7

ARGUMENT ......................................................................................................................... 8

I.       THE COURT MUST COMPEL ARBITRATION. ................................................. 8

    A.    Wynn-Williams negotiated for and agreed to arbitration. ..................................... 8

    B.    Wynn-Williams waived any objection to arbitration by actively and
        substantively participating in the arbitration proceedings for over 15
        months. ......................................................................................................... 11

    C.    Even if court intervention were proper, there is no basis to do so now. .............. 15

II.      THE COURT SHOULD STAY ALL PROCEEDINGS........................................ 20

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aggarwal v. Coinbase, Inc.*,
685 F. Supp. 3d 867 (N.D. Cal. 2023)..................................................................................10

*BG Grp. PLC v. Republic of Argentina*,
572 U.S. 25 (2014) ...............................................................................................................10

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,
671 F.3d 635 (7th Cir. 2011)................................................................................................15

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)............................................................................................. 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)............................................................................................. 8

*Chung v. Nemer*,
2012 WL 5289414 (N.D. Cal. Oct. 25, 2012)..................................................................... 9

*Cir. City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ............................................................................................................. 7

*Cornelius v. CVS Pharmacy Inc.*,
133 F.4th 240 (3d Cir. 2025)................................................................................................17

*Dickey v. Ticketmaster LLC*,
2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ..................................................................... 9

*Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*,
822 F.2d 833 (9th Cir. 1987)................................................................................................16

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983)................................................................................. 11, 13, 15

*Gal v. Meta Platforms, Inc.*,
2026 WL 1864073 (N.D. Cal. June 29, 2026) .....................................................................19

*George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*,
722 F.2d 1471 (9th Cir. 1984)..............................................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................................................... 9

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ...............................................................................................................10

*Johannessen v. JUUL Labs, Inc.*,
2024 WL 3173286 (N.D. Cal. June 24, 2024) .....................................................................19

*L. Offs. of Richard E. Wilson, LLC v. Smith*,
2022 WL 16647769 (9th Cir. Nov. 3, 2022)........................................................................12

ii

*L. Offs. of Richard E. Wilson LLC v. Smith*,
  2021 WL 5313801 (D. Haw. Nov. 15, 2021) ......................................................................14

*Madrid v. Lazer Spot, Inc.*,
  2020 WL 4274218 (E.D. Cal. July 24, 2020) ......................................................................14

*Malem Med., Ltd. v. Theos Med. Sys.*,
  761 F. App'x 762 (9th Cir. 2019)........................................................................................16

*McBurnie v. Acceptance Now, LLC*,
  643 F. Supp. 3d 1041 (N.D. Cal. 2022)..............................................................................14

*Memmer v. United Wholesale Mortg., LLC*,
  135 F.4th 398 (6th Cir. 2025)..............................................................................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ........................................................................................................9, 11

*Nagrampa v. Mailcoups*,
  469 F.3d 1257 (9th Cir. 2006).............................................................................................15

*Naoko Ohno v. Yuko Yasuma*,
  723 F.3d 984 (9th Cir. 2013)...............................................................................................16

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1074 (9th Cir. 2013)............................................................................................. 9

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*,
  946 F.2d 722 (9th Cir. 1991).........................................................................................12, 13

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*,
  935 F.2d 1019 (9th Cir. 1991)........................................................................................15, 16

*Ramirez v. Domino's Pizza Supply Chain*,
  2024 WL 5452684 (D. Colo. Nov. 8, 2024) .......................................................................17

*Scoggins v. Menard, Inc.*,
  2025 WL 1369010 (6th Cir. May 12, 2025) .......................................................................17

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ............................................................................................................20

*In re Sussex*,
  781 F.3d 1065 (9th Cir. 2015).............................................................................................15

*The Amalgamated Sugar Co. LLC v. Agri-Sys.*,
  2021 WL 1093612 (D. Idaho Mar. 22, 2021) .....................................................................13

*Tuminello v. Richards*,
  504 F. App'x 557 (9th Cir. 2013)........................................................................................ 8

*Yost v. Everyrealm, Inc.*,
  657 F. Supp. 3d 563 (S.D.N.Y. 2023) ................................................................................19

*Yu v. Gao*,
  2026 WL 1180470 (9th Cir. Apr. 30, 2026) .......................................................................12

iii

**State Cases**

*ITT Telecom Prods. Corp. v. Dooley*,
　214 Cal. App. 3d 307 (1989)...................................................................................16

*Richards v. Silver*,
　2026 WL 1014006 (Fla. Dist. Ct. App. Apr. 15, 2026)..........................................18

*Sobremonte v. Superior Ct. of Los Angeles Cnty. (In re Bank of Am. Nat. Tr. & Sav. Ass'n)*,
　72 Cal. Rptr. 2d 43 (Cal. Ct. App. 1998)...............................................................13

**Federal Statutes**

9 U.S.C. § 1....................................................................................................................... 7
9 U.S.C. § 2....................................................................................................................... 7
9 U.S.C. § 3.....................................................................................................................20
9 U.S.C. § 16...................................................................................................................16
9 U.S.C. § 401.................................................................................................. 16, 17, 19, 20
9 U.S.C. § 402....................................................................................................... 16, 17, 19

**State Statutes**

Cal. Civ. Code § 1550 ....................................................................................................10
Cal. Civ. Code § 1556 ....................................................................................................10
Cal. Civ. Proc. Code § 335.1 .........................................................................................20
Cal. Gov't Code § 12960................................................................................................20

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff's claims against Meta must remain in arbitration—where they have been litigated for over 15 months—pursuant to the Federal Arbitration Act and the arbitration provision in her Severance Agreement.

2. Whether proceedings concerning Plaintiff's complaint should be stayed pending the outcome of the arbitration.

**INTRODUCTION**

For over 15 months, Plaintiff Sarah Wynn-Williams ("Wynn-Williams") actively participated in the arbitration she now seeks to enjoin. Since March 18, 2025, she repeatedly asked the arbitrator to rule on arbitrability and her defenses to Meta's contract claims. She also filed her own counterclaim in the arbitration for breach of contract, propounded over 140 discovery requests, and repeatedly engaged with and sought relief from the arbitrator. At no point during that time did she seek to move this case to federal court. To the contrary, she made clear she wanted the arbitrator—whom she helped select—to decide the issues she raised.

But the arbitration has not gone as she had hoped. The arbitrator denied Wynn-Williams' multiple requests to vacate the Interim Award, which requires her to abide by the terms of the Severance Agreement she and her counsel negotiated. And the arbitrator rejected her many attempts to terminate her obligations under that agreement while retaining all its benefits, including the $780,000 severance payment she received.

Dissatisfied with her unfavorable results in arbitration, Wynn-Williams and her fifth set of attorneys now want to move the case to federal court. No longer liking her odds of success in arbitration, she seeks to avoid the final merits hearing scheduled for October, and asks this Court for the extraordinary, inappropriate relief of enjoining an arbitration that has been pending for over 15 months.

This Court should recognize the complaint for what it is: a last-ditch effort to circumvent the bargained-for arbitration process and avoid a final merits determination. The Court should reject Wynn-Williams' efforts and compel arbitration for three independent reasons. *First*, as part of her severance agreement, which was heavily negotiated, edited, and revised by her own

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

employment counsel, Wynn-Williams agreed to arbitration—and to let the arbitrator decide arbitrability. *Second*, she has long waived any objection to arbitration by actively participating in it, seeking relief, filing a counterclaim, and insisting that the arbitrator should decide the issues she raised, including the question of arbitrability. *Third*, even if the Court had the authority to override the arbitrator's determinations, there is no reason to intervene now instead of waiting three months for the arbitrator to make his final ruling after the October merits hearing, which will fully resolve the dispute and potentially obviate any basis for review.

Accordingly, the Court should grant this motion to compel arbitration and stay this case.

## BACKGROUND

### A.    Wynn-Williams' Termination, Severance Agreement, and Book Publication

This is a contract dispute. Wynn-Williams, a former Director of Global Public Policy at Facebook (now Meta), was terminated for performance reasons almost nine years ago in November 2017. *See* Swartz Decl. ¶ 2. Represented by experienced employment counsel, Wynn-Williams negotiated a favorable severance agreement and release, under which she received $780,000 in severance pay and other benefits, as well as Meta's payment of her attorneys' fees. *See* Linhardt Decl., Ex. A § 2 ("Severance Agreement" or "Agreement"); Swartz Decl. ¶¶ 3-5. Her counsel also proposed substantive revisions to the Severance Agreement. He exchanged numerous redlined drafts of the Agreement with Meta, prepared the initial draft of a liquidated damages provision, and introduced the final amount used in the signed Agreement. Swartz Decl. ¶¶ 3-5.

In exchange for the benefits she received, Wynn-Williams agreed "not to make disparaging, critical or otherwise detrimental comments to any person or entity concerning the Company, its officers, directors or employees." Severance Agreement § 9. The Agreement, however, allows Wynn-Williams to communicate with government agencies and to testify under oath. *Id.* § 4.[1] In addition, Wynn-Williams agreed to return all Meta property in her possession. *Id.* § 7.

---

[1] Wynn-Williams exercised her ability to do so, submitting a 78-page report to the SEC in April 2024, and a complaint to the Department of Justice in March 2025. Dkt. 1 at ¶¶ 90, 92 ("Compl.").

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

The Severance Agreement included a bargained-for binding arbitration provision. Specifically, Wynn-Williams and Meta agreed that "any and all disputes arising out of the terms of [the Severance Agreement], their interpretation, and any of the matters herein released," were "subject to arbitration, before the American Arbitration Association ('AAA') in accordance with the Employment Arbitration Rules and Mediation Procedures." *Id.* § 16(d). Wynn-Williams' independent counsel reviewed, negotiated, and proposed revisions to this provision. Swartz Decl. ¶¶ 3-5.

Over seven years passed without incident. But on March 5, 2025, Meta learned that Wynn-Williams intended to release a book called *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*. *See* Linhardt Decl., Ex. B at 5. The book, published on March 11, 2025, is replete with disparaging statements about Meta and its current and past employees, in plain violation of the Severance Agreement.[2] *See* Linhardt Decl., Ex. D (Meta March 24, 2025 Amended Arbitration Demand). Wynn-Williams did not tell Meta she was doing this. Nor did she offer to return the $780,000 (plus attorneys' fees) in severance pay that she received years earlier. Instead, she and her publisher surreptitiously concealed the book's existence until days before its release, choosing not to use the "long lead" press campaign that is typical in the industry or attempt any fact-checking with Meta. She instead decided to willfully breach her contract while keeping all of the benefits, and to keep the breach a secret for as long as possible, preventing Meta from protecting its contractual rights and confidential information before publication.

**B.    The Arbitration**

On March 7, 2025, shortly after learning of the book, Meta filed a Demand for Arbitration and an Application for Emergency Relief with the AAA against Wynn-Williams and her publisher. *See* Linhardt Decl., Ex. C; *see also* Linhardt Decl., Ex. D. Days later, on March 11, the emergency arbitrator conducted a hearing on the Application, which the book's publisher attended. Wynn-

---

[2] While numerous statements in the book are false, falsity is not at issue here, as this is a narrow breach of contract case based upon Wynn-Williams' breach of the Agreement's non-disparagement clause.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

Williams herself did not attend despite having, at the very least, constructive notice and despite communications with her publisher.[3] After the March 11 hearing, the arbitrator issued an Interim Award finding Meta was likely to succeed on the merits and ordering Wynn-Williams not to make disparaging statements concerning Meta or to further publish or promote *Careless People*. *See* Linhardt Decl., Ex. F at 3-4.

The following week, represented by counsel, Wynn-Williams moved in the arbitration to vacate the emergency arbitrator's Interim Award. In the filing, she challenged the enforceability of the Severance Agreement, including the non-disparagement provision and the arbitration requirement. *See* Linhardt Decl., Ex. G. She did not, however, contest the emergency arbitrator's authority to rule on the arbitrability question. To the contrary, she specifically sought a ruling *from the arbitrator* regarding whether the arbitration clause was valid. *See generally id.*

She also asked the arbitrator to defer ruling on her publisher's challenge to the arbitrator's jurisdiction—which included an objection to the arbitrator's authority to decide questions of arbitrability. Linhardt Decl., Ex. H; *see also* Linhardt Decl., Ex. I at 2 ("Macmillan has consistently objected to, and continues to object to, AAA/ICDR's jurisdiction . . . critically, *its jurisdiction to rule on its own jurisdiction over Macmillan*." (emphasis added)). In Wynn-Williams' words, resolution of her motion to vacate "should be top priority in this case:" She "fear[ed]" that if the arbitrator were to reject Macmillan's jurisdictional challenge, "Macmillan may seek to challenge

---

[3] Despite later arguing she was unaware of the emergency proceedings, Wynn-Williams was on notice (and the emergency arbitrator found that she was). Meta provided notice at a personal email address for her, as well as multiple senior employees and attorneys at her publisher. No emails "bounced back" to counsel for Meta, indicating that they had been successfully delivered. Moreover, as the emergency arbitrator observed, both Meta and the AAA "sent several emails copying multiple [of the publisher's] senior employees and attorneys regarding the emergency arbitration, the scheduling of the hearing, and the proposed interim award." *See* Linhardt Decl., Ex. E at 6. It is implausible that none of those individuals informed Wynn-Williams of the hearing. And on March 12 (the day after the hearing), Wynn-Williams appeared on a popular podcast and discussed Meta's attempts to "shut [her] book down." *Id.* at 3. Regardless, Wynn-Williams was subsequently provided ample notice to brief and challenge the Interim Award before the Emergency Arbitrator. She did so through her counsel but did not prevail.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

that decision *in court*, which would result in a suspension of the arbitration proceedings" and cause delay. Linhardt Decl., Ex. L at 3-4 (emphasis added).

As Wynn-Williams requested, after providing her counsel ample opportunity to brief and argue the issues, the Emergency Arbitrator addressed all of the arguments her counsel raised. Unpersuaded, however, the Emergency Arbitrator ruled for Meta, denying Wynn-Williams' motion in an extensive, 16-page decision. The Emergency Arbitrator "again f[ound] that Claimant is likely to succeed on the merits." *See* Linhardt Decl., Ex. E at 7.

Over a month later, in April 2025, Wynn-Williams filed an answer and counterclaim in the arbitration. Her filing rehashed her prior arguments that the Severance Agreement—including the arbitration provision—is unenforceable and void. Notably, once again, she did not object to the arbitrator's authority to decide questions of arbitrability. *See* Linhardt Decl., Ex. J. To the contrary, Wynn-Williams specifically asked the arbitrator to rule on her "object[ion]s to the arbitrability of Meta's claims" by ordering that "Meta's Amended Demand for Arbitration be dismissed." Linhardt Decl., Ex. K.

For the next year, after the parties selected a merits arbitrator in May 2025, Wynn-Williams continued to actively participate on the merits in the arbitration proceedings. Represented by a rotating carousel of law firms, she attended status conferences, met and conferred with opposing counsel, and submitted letter briefs, seeking resolution of issues the parties could not resolve, including on the scope of discovery. *See* Linhardt Decl. ¶ 27; Linhardt Decl., Ex. L.[4] She also propounded voluminous discovery requests on Meta (including 73 requests for admission, 59 requests for production, and 11 interrogatories) and communicated with Meta's counsel regarding the status of written responses. *See* Linhardt Decl. ¶ 28.

In March 2026, shortly after one of her prior law firms (Quinn Emanuel Urquhart & Sullivan, LLP) withdrew from the case, Wynn-Williams once again chose to publicly breach her

---

[4] Again, and significantly, Wynn-Williams did not object to the arbitrator's authority to decide questions of arbitrability; instead, she objected to "arbitral jurisdiction on the grounds that the arbitration clause contained in the severance agreement is unenforceable." Linhardt Decl., Ex. L at 1 n.1.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

Severance Agreement (while still keeping the benefits). Specifically, and in direct contravention of the Interim Award, she decided to participate in a series of events at Waterstones—a U.K. national bookstore chain—to promote her book. Linhardt Decl., Ex. M. Meta promptly notified the arbitrator. *Id.* Wynn-Williams responded directly to the arbitrator the following day, addressing the merits of the sanctions dispute and explaining in detail why—in her view—she was not violating the Interim Award. Linhardt Decl., Ex. N. She further requested that any hearing occur after she found additional counsel so that the "hearing can then also address the future progression of the arbitration." *Id.* (Throughout this period, Wynn-Williams was still represented by her attorney Ravi Naik, who is based in the United Kingdom and continues to represent her today.)

The parties proceeded to brief the merits of Meta's application for sanctions in the arbitral forum, and the law firm Selendy Gay PLLC appeared in that forum on behalf of Wynn-Williams. Linhardt Decl., Ex. O; *see also* Linhardt Decl., Exs. P, S. Wynn-Williams did not include any objection to the arbitrator's jurisdiction but instead, again, asked the arbitrator for relief by vacating the Interim Award. *See* Linhardt Decl., Ex. Q at 21. She argued that the Interim Award violated the First Amendment, *id.* at 9, and that "the Severance Agreement is unlawful and unenforceable," *id.* at 17. She challenged the validity of the non-disparagement provision. *See id.* at 18. In other exchanges with the arbitrator, Wynn-Williams' counsel noted they were reviewing Meta's proposed protective order and suggested the parties confer regarding discovery deadlines. Linhardt Decl., Ex. R at 1-2. She did not object to the arbitrator's jurisdiction but, yet again, requested that the arbitrator "lift the Interim Award." *Id.* at 2.

In May 2026, after a Status Conference with the arbitrator, the parties submitted reports to the arbitrator as to how the matter should proceed. Meta requested that the arbitrator accelerate the merits hearing date currently scheduled for October 19, 2026, Linhardt Decl., Ex. S at 1, while Wynn-Williams, through her counsel, sought leave to file a motion to dismiss the arbitration demand—for the first time, nearly 14 months after the demand was filed. Linhardt Decl., Ex. T at 1. She "strongly oppose[d] any acceleration of the merits hearing," purportedly to give the parties time to agree to a protective order and engage in discovery. *Id.* at 2. And she represented that

6

Meta's "sanction application [was] inextricably intertwined with the merits," meaning any determinations by the arbitrator as to whether she had violated the Interim Award would be "improper and premature." *Id.* She again requested that the arbitrator dissolve the Interim Award, *id.* at 2 n.2, but included a footnote noting that she was attempting to preserve an objection to "arbitrability in this matter." *Id.* at 1 n.1. The arbitrator concluded that the merits hearing should proceed in October 2026 as scheduled, denied Wynn-Williams' request for leave to file a motion to dismiss, and deferred ruling on Meta's sanctions application. Linhardt Decl., Ex. U.

Meanwhile, the parties proceeded to actively negotiate discovery issues. Meta sent a draft protective order to Wynn-Williams' new counsel on April 8, 2026, and Wynn-Williams proposed an extensive redline on April 24, 2026. Linhardt Decl. ¶ 29. Wynn-Williams continued to negotiate the protective order for another seven weeks, exchanging additional redlines and submitting disputed issues to the arbitrator twice, before the arbitrator entered the protective order on June 15, 2026. *Id.;* Linhardt Decl., Ex. V. The parties further communicated about the timing of discovery responses and agreed to a mutual exchange of written discovery responses and objections; Meta served its responses and a document production. *Id.* ¶ 30. On June 26, the day after filing this lawsuit, Wynn-Williams served her responses and objections to Meta's discovery requests in the arbitration.

On June 25, 2026, after more than 15 months of participating in arbitration, without prior notice to Meta or the arbitrator, Wynn-Williams filed this lawsuit in the Northern District of California. She seeks declaratory relief on the same bases already articulated and repeatedly rejected in the arbitration proceedings, namely an order declaring that numerous provisions in the Severance Agreement are void and staying or vacating the order previously entered in the arbitration proceedings. *See* Compl. at 56-57.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs any "contract evidencing a transaction involving [interstate] commerce" and provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. §§ 1, 2; *see also Cir. City Stores, Inc. v. Adams*, 532 U.S.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

105, 121-22 (2001) (holding that "arbitration agreements in most employment contracts [are] covered by the FAA," with narrow exceptions not applicable here). When the parties have entered into an arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court" as to whether to "direct the parties to proceed to arbitration on issues as to which [that] arbitration agreement" applies. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Instead, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

## ARGUMENT

### I.    THE COURT MUST COMPEL ARBITRATION.

This Court should compel arbitration for three independent reasons. *First*, Wynn-Williams specifically agreed in the negotiated Severance Agreement to arbitration—and to let the arbitrator decide arbitrability. *Second*, Wynn-Williams waived any objection to arbitration by actively participating in the arbitral proceedings for over 15 months—filing a counterclaim, seeking relief, propounding discovery, and asking the arbitrator to decide essentially the same issues she now presents to the Court. *Third*, even if there were a basis to override the arbitrator (and there is not), there is no reason to intervene now, instead of waiting a mere three months for the October 2026 merits hearing and the arbitrator's final ruling.

### A.    Wynn-Williams negotiated for and agreed to arbitration.

Wynn-Williams knowingly negotiated for and agreed to arbitration—and to let the arbitrator decide arbitrability—in the plainest of terms. Under Section 16(d) of the Severance Agreement, the "parties agree[d] that *any and all disputes* arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration, before the American Arbitration Association ('AAA') in accordance with the Employment Arbitration Rules and Mediation Procedures." (emphasis added). Section 16(d) further provides that "THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE *ANY* DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW." (emphasis added). That unambiguous language makes clear the parties intended to arbitrate "*any*" dispute arising out

of the contract, including arbitrability. *See Tuminello v. Richards*, 504 F. App'x 557, 558 (9th Cir. 2013) (concluding language that an arbitrator shall decide "any and all controversies" concerning "the construction, performance, or breach of this or any other Agreement" delegated arbitrability); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019) (language that "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement" delegated arbitrability); *Chung v. Nemer*, 2012 WL 5289414, at *1 (N.D. Cal. Oct. 25, 2012) (language that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement" delegated arbitrability).

Moreover, the arbitration provision incorporates the AAA rules, which likewise constitute "clear and unmistakable" evidence of delegation, as "[v]irtually every" federal court of appeals "to have considered the issue has [held]." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The Ninth Circuit has determined that "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1074 (9th Cir. 2013)). That is because the AAA rules provide "that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement.'" *Id.*; *see also* AAA Employment Arbitration Rules and Mediation Procedures R-7 (same language).

When there is "clear and unmistakable evidence" that the parties intended to "delegate threshold arbitrability questions to the arbitrator," the "court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) (citation modified). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted). Here, there are no doubts. The scope of Section 16(d) of the

Severance Agreement is clear: The arbitrator decides the threshold issue of arbitrability as well as any other issue arising out of the contract.

But even if this Court determined that *it* decides the threshold question—despite binding precedent and the plain language of the parties' agreement—the Court should still compel arbitration. Courts require arbitration when (1) the parties entered into a valid arbitration agreement and (2) the particular dispute falls within the scope of that agreement. *BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34-35 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Here, neither element is in serious dispute.

"Courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists." *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 875 (N.D. Cal. 2023). California law requires that the parties are capable of contracting, the parties consent, there is a lawful object, and there is "sufficient cause or consideration." Cal. Civ. Code § 1550. These elements are satisfied: The parties were capable, sophisticated, and represented by experienced counsel at Rudy Exelrod Zieff & Lowe LLP, who reviewed, negotiated, and helped revise the arbitration provision. *See* Cal. Civ. Code § 1556; *see supra* at pp. 2-3. Wynn-Williams then signed the Severance Agreement negotiated by her independent counsel and acknowledged she read it, "fully underst[ood its] terms and conditions," and "knowingly and voluntarily execut[ed] it." Severance Agreement at 9. The arbitration provision was also entered into for the lawful purpose of prompt and efficient resolution of any disputes between the parties. And Wynn-Williams received, among other things, at least $780,000 from Meta in consideration. *Id.* § 2.

Notably, despite now suggesting that the nearly nine-year-old contract is invalid, she has not returned any of the benefits under the contract, such as the $780,000 severance payment or the additional amount that Meta paid for her attorneys' fees. Far from believing the contract is invalid, she wants to keep all the benefits while disregarding the obligations she voluntarily assumed in exchange for those benefits.

Further, the dispute at hand certainly falls within the scope of the arbitration agreement. As noted, the parties agreed to arbitrate "*any and all disputes* arising out of the terms of" the Severance Agreement, "[those terms'] interpretation, and any of the matters herein released." Severance Agreement § 16(d) (emphasis added). That broad provision encompasses Meta's claims that Wynn-Williams breached the Severance Agreement's non-disparagement and confidentiality provisions, as well as its claims that Wynn-Williams is liable for fraud and conversion for that misconduct. Linhardt Decl., Ex. D at 7-10. And it covers Wynn-Williams' counterclaim that Meta breached the Severance Agreement's non-disparagement provision. Linhardt Decl., Ex. J at 6. Likewise, Wynn-Williams' claims for tortious interference and unfair competition are premised on Meta's enforcement of its contractual rights under the Severance Agreement. Each of those claims plainly "aris[e] out of" the Severance Agreement. Severance Agreement § 16(d).

As Wynn-Williams' *own counsel* insisted in the arbitration proceedings: "[P]ublic policy supports enforcing the *unambiguous terms* of the Arbitration Provision. It is California public policy to enforce the plain language of contracts." Linhardt Decl., Ex. L at 3 (emphasis added). And, even if there were "any doubts concerning the scope of arbitrable issues," they would be "resolved in favor of arbitration." *Mitsubishi Motors Corp.*, 473 U.S. at 626. The Court should compel arbitration.

### B. Wynn-Williams waived any objection to arbitration by actively and substantively participating in the arbitration proceedings for over 15 months.

Wynn-Williams' waiver is an independent reason to compel arbitration. For over 15 months, Wynn-Williams chose to participate in the arbitration proceedings. She filed a counterclaim, repeatedly sought relief on the merits from both the emergency arbitrator and the merits arbitrator, propounded more than 140 discovery requests, attended multiple hearings, and insisted that the arbitrator rule on her defenses. Having lost on many issues, she now wants a different forum, but the Court should reject her last-minute gamesmanship.

Under Ninth Circuit precedent, when a party has "voluntarily participated" in arbitration "over a period of several months," let alone over a year, it should be estopped from "deny[ing] the

authority of the arbitrator." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983). "[A] party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Id.* When a party has "submit[ted] its dispute to arbitration," and especially if the "party . . . has submitted the question of arbitrability to the arbitrator for decision," it has "waived its right" to object to the arbitrator's authority. *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725-26 (9th Cir. 1991); *see also L. Offs. of Richard E. Wilson, LLC v. Smith*, 2022 WL 16647769, at *1 (9th Cir. Nov. 3, 2022) (finding waiver where party "agreed to an arbitration schedule, actively participated in pre-arbitration discovery regarding documents related to the merits of the contract dispute, [ ] submitted a discovery dispute to the arbitrator," and "did not clearly object to arbitration until after they received an unfavorable ruling from the arbitrator ordering them to produce documents"); *Yu v. Gao*, 2026 WL 1180470, at *1 (9th Cir. Apr. 30, 2026) (recognizing a party waives by participating in arbitration "extensively"). "[W]here, as here, the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability." *George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*, 722 F.2d 1471, 1475 (9th Cir. 1984).

This case does not present a close call. From the beginning, Wynn-Williams actively participated in the arbitration. Represented by counsel, she moved to vacate the Interim Award on March 18, 2025. Linhardt Decl., Ex. G at 1. She specifically asked the arbitrator to rule on her defenses—challenging the enforceability of the Severance Agreement, contending that Meta breached the agreement, and arguing that the non-disparagement provision violates federal and state law and public policy. She also requested that the arbitrator rule on arbitrability, contending that Meta waived its right to require her to arbitrate. *Id.* at 12. She thus teed up for the arbitrator the very question of arbitrability, along with her other defenses.

Whereas her publisher contested the arbitrator's jurisdiction, Wynn-Williams did not. Indeed, she insisted that the arbitrator decide her motion to vacate and to "defer its decision on

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

Macmillan's jurisdictional objections until after the Motion to Vacate is resolved." Linhardt Decl., Ex. H at 4. She "fear[ed]" that if the arbitrator addressed the jurisdictional issue, the publisher "may seek to challenge that decision in court, which would result in a suspension of the arbitration proceedings." *Id.* at 3-4. She opposed delay of "arbitration proceedings" and argued that the arbitrator should not make a decision that risked any "court" challenge. *Id.* at 4. Her argument was clear: She did not want court intervention. She wanted the arbitrator to address her contentions.

A month later, she invested even more in the arbitration, filing a counterclaim along with her answer, in which she raised 23 affirmative defenses she expected the arbitrator to resolve. Among these defenses, Wynn-Williams asserted again that "the entire Severance Agreement, and the non-disparagement provision specifically, are unenforceable" and "that Meta has waived its right to arbitrate"; she also asserted that the "arbitration clause is void for ambiguity." Linhardt Decl., Ex. J at 6.

Critically, in her view, the arbitrator should address these issues. She contended that if "*the arbitrator concludes that a valid and enforceable Agreement exists,*" the arbitrator should give her relief because "Meta has also breached the agreement and did so before any alleged breach by Ms. Wynn-Williams." *Id.* (emphasis added). When she "object[ed] to the arbitrability of Meta's claims," Wynn-Williams asked the arbitrator, not a court, to "dismiss[]" those claims. Linhardt Decl., Ex. K. She repeatedly "submitted the question of arbitrability to the arbitrator for decision"—along with the central questions on the validity and enforceability of the Severance Agreement—thus "waiv[ing her] right to seek a de novo judicial determination of the same issue[s]." *Orion Pictures Corp.*, 946 F.2d at 725-26; *see also Sobremonte v. Superior Ct. of Los Angeles Cnty. (In re Bank of Am. Nat. Tr. & Sav. Ass'n)*, 72 Cal. Rptr. 2d 43, 50 (Cal. Ct. App. 1998) (noting that a party can waive the right to arbitration by filing a counterclaim); *The Amalgamated Sugar Co. LLC v. Agri-Sys.*, 2021 WL 1093612, at *3 (D. Idaho Mar. 22, 2021) (party waived objection to arbitration by litigating counterclaim in arbitration).

Wynn-Williams did not stop there. For 14 more months, she continued to "voluntarily participate[]" in the arbitration process and to "submit" to the arbitrator's authority. *Fortune*, 724

F.2d at 1357. Rotating through multiple law firms—including Kaiser PLLC, Quinn Emanuel Urquhart & Sullivan, LLP, Susman Godfrey LLP, and Selendy Gay PLLC—she welcomed the opportunity to argue her case before the merits arbitrator she helped select. Among numerous other submissions, she repeatedly asked the arbitrator to dissolve the Interim Award. *See* Linhardt Decl., Exs. R, T; *see also* Linhardt Decl., Exs. X, Y. She continued to challenge the Severance Agreement and non-disparagement provision, and she raised the same First Amendment argument she raises here—but she failed each time.

Wynn-Williams also engaged in significant discovery. *See Madrid v. Lazer Spot, Inc*., 2020 WL 4274218, at *8 (E.D. Cal. July 24, 2020) (holding that plaintiff waived right to arbitrate through "extensive litigation conduct," including "engaging in discovery"). She successfully moved for the arbitrator to apply broad discovery rules from the Federal Rules of Civil Procedure, rather than the more limited AAA discovery rules. Linhardt Decl., Ex. L. And, on September 12, 2025, Wynn-Williams propounded 73 requests for admissions, 59 requests for production, and 11 interrogatories on Meta. Linhardt Decl. ¶ 28.

She also submitted two oppositions to Meta's requests for sanctions (which did not include an objection to the arbitrator's jurisdiction), numerous letters to Meta and the arbitrator, and engaged in protracted negotiations over a protective order to govern discovery in the arbitration. *See supra* at pp. 6-7. While Wynn-Williams' latest counsel just recently stated in a footnote to a letter that she preserves her objections to the arbitrator's jurisdiction, that late-timed attempt at preservation (14 months after the arbitration process began) conflicts with her 15-month pattern of consistently consenting to arbitration and requesting rulings from the arbitrator, including on arbitrability and the merits. *See Madrid*, 2020 WL 4274218, at *8; *see also McBurnie v. Acceptance Now, LLC*, 643 F. Supp. 3d 1041, 1046 (N.D. Cal. 2022) (holding that a defendant who "blazed ahead with discovery and settlement proceedings" for eighteen months waived arbitration rights, notwithstanding references to arbitration in some filings); *L. Offs. of Richard E. Wilson LLC v. Smith*, 2021 WL 5313801, *10 (D. Haw. Nov. 15, 2021) (explaining that a party did not preserve an objection to arbitration by raising it "equivocal[ly]" and "waived any right [it]

had to object to arbitrability by participating in the arbitration with [the arbitrator] to the point where the arbitrator ruled against [it]").

It is too late for her to change course now. Having received unfavorable rulings for over 15 months, she should not be allowed to request a do-over. "It would be unreasonable and unjust to allow [Wynn-Williams] to challenge the legitimacy of the arbitration process, in which [s]he had voluntarily participated" since March 2025. *Fortune*, 724 F.2d at 1357.[5]

### C.    Even if court intervention were proper, there is no basis to do so now.

Even if there were a basis for court intervention despite the FAA, the parties' binding Severance Agreement, and Wynn-Williams' repeated waivers over the past 15 months, there is no basis for intervening *now*. As Wynn-Williams recognizes, the arbitrator has issued only an Interim Award. That Award has been in place for over 15 months, and it will last only until the arbitrator makes a final decision after the merits hearing in October. Thus, in just a few short months, the Interim Award will no longer be in effect, and there will be a final order from the arbitrator.

Wynn-Williams fails to justify an abrupt intervention to review an interim decision that will soon be extinct. Her own authority observes that "judicial review of non-final arbitration awards should be indulged, if at all, only in the most extreme cases." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*, 935 F.2d 1019, 1022 (9th Cir. 1991) (citation modified) (permitting judicial review of temporary equitable orders only where such orders are necessary to prevent a final award from "being meaningless"). And the Ninth Circuit has "refused to review awards that decided only part of the substantive issues submitted to arbitration." *Id.*; *see also In re Sussex*, 781 F.3d 1065, 1072 n.2 (9th Cir. 2015) (explaining that *Pacific Reinsurance* is limited to interim awards that are "final as to a distinct issue"). Wynn-Williams does not even mention, much less attempt to satisfy, this high standard, nor does she address the numerous cases making clear that

---

[5] On July 3, 2026, Wynn-Williams filed a letter in the arbitration contesting waiver, but she cited only one case, *Nagrampa v. Mailcoups*, 469 F.3d 1257 (9th Cir. 2006), which is plainly inapposite. "Nagrampa's 'participation' in the arbitration proceedings . . . was minimal, limited to procedural issues and undertaking certain actions to preserve her rights." *Id.* at 1278. By contrast, as discussed above, Wynn-Williams' participation was intense and sustained for over 15 months, and she has changed her mind only after participating on the merits and receiving unfavorable rulings.

mid-arbitration intervention is disfavored. *In re Sussex*, 781 F.3d at 1072-73 ("[P]ermit[ting] what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate th[e] purpose" of arbitration); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638-39 (7th Cir. 2011) ("Review comes at the beginning or the end, but not in the middle.").

That is for good reason. First, the final merits hearing is in October 2026. The hearing will resolve the issue and, depending on the outcome, could eliminate any reason for Wynn-Williams to seek further review. There is no reason to waste judicial or party resources litigating a federal case that may be unnecessary. Further, even if the court denied the motion to compel arbitration, the decision would be immediately appealable, 9 U.S.C. § 16, and there is virtually no possibility the Ninth Circuit could decide the appeal before the arbitration is resolved.

Second, Wynn-Williams' meritless arguments, which have been repeatedly rejected by the arbitrator, do not remotely make this a "most extreme case[]" in which interlocutory review should be "indulged." *Pac. Reinsurance*, 935 F.2d at 1022. Her lead argument, asserting a First Amendment claim, is frivolous. As an initial matter, she voluntarily agreed to the non-disparagement provision and received $780,000 for entering into the Severance Agreement. When a party agrees not to speak, the First Amendment is not implicated. *Malem Med., Ltd. v. Theos Med. Sys.*, 761 F. App'x 762, 764 (9th Cir. 2019) (recognizing that by signing a non-disparagement agreement, a defendant "clearly voluntarily and knowingly waived its First Amendment rights"); *see ITT Telecom Prods. Corp. v. Dooley*, 214 Cal. App. 3d 307, 319 (1989) ("[I]t is possible to waive even First Amendment free speech rights by contract.").[6] Nor is the First Amendment implicated when an arbitrator upholds the Severance Agreement. *See Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987) (concluding private arbitration proceedings do not have "the state action requisite for a constitutional due process claim"); *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998-99 (9th Cir. 2013) (explaining that enforcement of the terms of private contracts has "not ordinarily been considered state action").

---

[6] She also retains the ability to communicate with government agencies and testify under oath. *See supra* at p. 2.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

Wynn-Williams' other arguments are no stronger. The emergency arbitrator and merits arbitrator rejected most of them. The only new argument is her belated claim under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"). 9 U.S.C. §§ 401, 402. But the EFAA is a narrow exception to the FAA's general rule favoring arbitration and is plainly inapplicable here. *See* 9 U.S.C. §§ 401, 402. Wynn-Williams' EFAA argument fails for at least four reasons.

*First,* she waived invocation of the EFAA. As set out above, she actively participated in the arbitration proceedings for well over a year, *see supra* p. 6-7, 12-14, never invoking the EFAA or claiming the parties' dispute belonged in federal court. Instead of filing a federal claim, for 15 months, she "elect[ed]" to participate in the arbitration, 9 U.S.C. § 402, seeking rulings from the arbitrator and insisting that the arbitrator should rule on her defenses. On multiple occasions, she asked the arbitrator to rule on arbitrability and her other contractual and constitutional arguments, which she recycled in her complaint in this Court. As such, she waived any EFAA argument. *See Scoggins v. Menard, Inc.*, 2025 WL 1369010, at *1 (6th Cir. May 12, 2025) (per curiam) (holding it was an abuse of discretion to override the plaintiff's "deliberate waiver" of EFAA arguments); *Ramirez v. Domino's Pizza Supply Chain*, 2024 WL 5452684, at *6 (D. Colo. Nov. 8, 2024) ("Plaintiff exercised his election [under the EFAA] when he chose to pursue his claims in arbitration. . . . Plaintiff could have pursued his claims initially in federal court and elected to have the arbitration agreement deemed unenforceable. Instead, he chose to pursue his claims in arbitration, then switched tactics and filed this case once he did not like the way the arbitration process was playing out."), *rep. & rec. adopted*, 2025 WL 414381 (D. Colo. Feb. 6, 2025).

*Second*, the EFAA applies only to "predispute arbitration agreement[s]" and not to agreements executed after the purported "sexual harassment dispute" arose. 9 U.S.C. § 401. The EFAA defines a "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401. Under the decisions of sister circuits, Wynn-Williams' "dispute" arose before she signed the Severance Agreement, because she raised her allegations internally and Meta expressly disagreed with her after

conducting an investigation and concluding the allegations were baseless. *See also Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 247 (3d Cir. 2025) ("In our view, a 'dispute . . . arises' when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position."); *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025) (adopting *Cornelius* and explaining that the "relevant question is when the parties became adverse to one another"). As Wynn-Williams alleges in her Complaint, she raised concerns regarding sexual harassment prior to her termination, Compl. ¶ 61; engaged in a discussion with supervisors, *id.* ¶¶ 61, 62 (emphasis added); requested a transfer to a different department, which she claims was "blocked," *id.* ¶ 65; and was ultimately told that the subject of the sexual harassment investigation was cleared of any misconduct, *id.* ¶ 66; Linhardt Decl., Ex. J at 3 (asserting that after Wynn-Williams reported sexual harassment, HR "initiated an investigation"). All of those events preceded her termination and the parties' negotiated Severance Agreement.[7]

*Richards v. Silver* is particularly instructive. 2026 WL 1014006 (Fla. Dist. Ct. App. Apr. 15, 2026). In that case, an employee and an employer entered into a settlement agreement after the employee filed a discrimination charge based on claims of sexual harassment with the EEOC. *Id.* at *1. The settlement agreement contained an arbitration provision. *Id.* The employer later filed an arbitration demand, alleging the employee had breached the confidentiality provisions of the settlement agreement. *Id.* The employee argued the arbitration provision was unenforceable under the EFAA. *Id.* The state trial court and the court of appeals disagreed, concluding that where there were no claims of sexual harassment *after* the agreement was entered, *id.* at *2, enforcement of the agreement's arbitration clause "falls outside the EFAA prohibition" because the agreement "was created after the dispute at issue had arisen between the parties," *id.* at *3. As the court made clear, the employee's "interpretation of the EFAA would allow parties to evade valid arbitration

---

[7] If the purported dispute arose when any potential sexual harassment claim accrued, there is likewise no doubt that Wynn-Williams' Severance Agreement was post-dispute. *See Memmer*, 135 F.4th at 416 (Thapar, J., dissenting).

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

clauses in settlement agreements simply by characterizing any dispute arising out of the settlement as a new or retaliatory dispute that 'relates to' the original sexual harassment," which "would lead to an absurd result." *Id.* at \*4. The same is true here: Wynn-Williams seeks to avoid her obligations under the Severance Agreement (including her agreement to arbitrate disputes) by referring back to near-decade-old sexual harassment allegations—none of which have any substantive bearing on either party's claims in the arbitration, or Wynn-Williams' claims in this suit. The claims at issue arise out of the parties' contract.

*Third*, the EFAA does not apply because this matter is not a sexual harassment dispute. It is a simple breach of contract dispute. Wynn-Williams has not "alleg[ed] conduct constituting a sexual harassment dispute"—meaning "a dispute relating to conduct that is alleged to constitute *sexual harassment under applicable Federal, Tribal, or State law*." 9 U.S.C. §§ 401, 402 (emphasis added). Neither her Complaint nor her counterclaim in the arbitration alleges any *claims* related to sexual harassment. Compl., Count I (review of interim award); Counts II-VI (declaratory judgment regarding enforceability of the Severance Agreement); Count VIII (California Unfair Competition Law); Counts IX-X (tortious interference claims); *see also* Linhardt Decl., Ex. J at 6.[8] That precludes application of the EFAA because "describing conduct" as sexual harassment without asserting a sexual harassment claim is not enough. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 584-85 (S.D.N.Y. 2023) (rejecting a reading of the statute where a plaintiff "merely by describing conduct" as sexual harassment "could neutralize an arbitration agreement" and instead requiring a "plaintiff to assert that the conduct violated" an applicable Federal, Tribal, or State law); *id.* (making clear that plain language of the statute renders the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment); *Johannessen v. JUUL Labs, Inc.*, 2024 WL 3173286, at \*4 (N.D. Cal. June 24, 2024) ("The EFAA does not apply in the absence of a plausible sexual harassment claim."). Courts dispute whether a plaintiff must formally assert a cause of action *labeled* as sexual harassment, but

---

[8] The only claim referring at all to sexual harassment is one seeking a declaratory judgment that the EFAA applies. *See* Compl., Count VII.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

they recognize that a plaintiff must bring some claim or allegations related to sexual harassment, such as a hostile work environment. *See, e.g.*, *Gal v. Meta Platforms, Inc.*, 2026 WL 1864073, at *5 (N.D. Cal. June 29, 2026).

Wynn-Williams has not done that. Again, her claims arise out of the contract and not any alleged sexual harassment. And no claim turns on whether any purported sexual harassment occurred. The elements of sexual harassment are irrelevant and not even pled. She does not assert any sexual harassment claims because, not only would they be meritless, but the statutes of limitations ran long ago. *See, e.g.*, Cal. Gov't Code § 12960 (three years); Cal. Civ. Proc. Code § 335.1 (two years). No such claim still exists, if it ever did.

*Fourth*, the EFAA does not apply retroactively, and any purported disputes or claims now raised by Wynn-Williams arose or accrued before the statute's effective date. In a statutory note, Congress provided that the EFAA "shall apply with respect to any dispute or claim that arises or accrues *on or after* the date of enactment of this Act," which was March 3, 2022. 9 U.S.C. § 401 note (emphasis added). As explained above, any "dispute" arose long before the EFAA's effective date.

## II.      THE COURT SHOULD STAY ALL PROCEEDINGS.

Where a lawsuit involves an arbitrable dispute and a party requests a stay, the FAA provides that a court "*shall* . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court has made clear, Section 3 of the FAA "compels the court to stay the proceeding" in those circumstances. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, Wynn-Williams' claims against Meta must be stayed pending arbitration, including any interim deadlines until resolution of this motion.

### CONCLUSION

For the foregoing reasons, this Court should grant Meta's motion to compel arbitration and stay all proceedings concerning Wynn-Williams' complaint.

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341

DATED: July 6, 2026

Jonathan F. Cohn* (DC 476551)
Mary Elizabeth Miller* (DC 252694)
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
William T. Thompson* (TX 24088531)
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
LEHOTSKY COHN LLP
Telephone: (512) 693-8350
Facsimile: (512) 727-4755
jon@lehotskycohn.com
mary@lehotskycohn.com
will@lehotskycohn.com

*Attorneys for Defendant Meta Platforms, Inc.*

* *Pro hac vice* motion forthcoming.

Respectfully submitted,

/s/ Mathew S. Rosengart
Mathew S. Rosengart (SBN CA 255750)
Mark D. Kemple (SBN CA 145219)
Alex Linhardt (SBN CA 303669)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
rosengartm@gtlaw.com
kemplem@gtlaw.com
linhardta@gtlaw.com

*Attorneys for Defendant Meta Platforms, Inc.*

21

META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION,
CASE NO. 4:26-cv-06341