# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION DIVISION**

Meta Platforms, Inc.,

    *Claimant*,

v.

Sarah Wynn-Williams; Macmillan
Publishers; Flatiron Books,

    *Respondents.*

No. 01-25-0001-2843

**META'S APPLICATION FOR EMERGENCY RELIEF UNDER RULE O-4**

Claimant Meta Platforms, Inc., requests emergency relief to stop a former employee's imminent and willful breach of contract for violating a nondisparagement clause in her Severance Agreement. Absent relief, Respondent Sarah Wynn-Williams will irreparably harm Meta by publicly disparaging the company and its employees through publication of a scurrilous book and related publicity tour. Accordingly, Meta asks the AAA to immediately appoint an emergency arbitrator and establish an expedited briefing schedule. Before March 11, Respondents should be ordered to refrain from making "disparaging, critical or otherwise detrimental comments" about Meta and its employees and leadership, cease promotion of such disparaging comments, and retract disparaging comments already made. McKenna Decl. Ex. A-1 (Severance Agreement), § 9.

1

When Meta terminated Ms. Wynn-Williams' employment in 2017, both parties signed a binding Severance Agreement and Release. In exchange for $780,000 and other benefits, *see id.* § 2, Ms. Wynn-Williams, who was represented by counsel, agreed not to make "disparaging, critical or otherwise detrimental comments to any person or entity concerning the Company, its officers, directors or employees," *id.* § 9.

Ms. Wynn-Williams has breached—and threatens to continue breaching—that clear contractual duty. In flagrant disregard of her contractual commitment, Ms. Wynn-Williams intends to publish a book accusing Meta of having "a rotten company culture." Roehrkasse Decl. Ex. A-2, A-3. She will portray Meta executives as "callously indifferent," "profoundly flawed, self-interested, and careless human beings." *Id*. Ex. A-1, A-2. She will even blame Meta for failing to "stop genocide-fuelling lies and hate speech." *Id*. Ex. A-2. These incendiary and unfair portrayals will significantly hurt Meta's reputation and goodwill.

The irreparable harm Meta will suffer in the absence of an injunction more than justifies emergency relief. Reputational injuries are archetypical examples of irreparable harm because public accusations, once made, cannot be scrubbed from existence. To maintain the status quo and enforce the Severance Agreement, the emergency arbitrator should enjoin Ms. Wynn-Williams from disparaging Meta or its employees.

2

Unfortunately, Ms. Wynn-Williams' deceptive actions have made emergency relief necessary. Apparently trying to prevent Meta from securing relief before publication of the book, Ms. Wynn-Williams and her publishers, Macmillan Publishers and Flatiron Books, kept the book's existence secret until less than a week before publication. As a result, Meta did not learn about the March 11 publication until public reports on March 5. Ms. Wynn-Williams should not benefit from her effort to hide the truth. Meta respectfully requests relief **before publication of Ms. Wynn-Williams' disparaging allegations on March 11.**

## BACKGROUND

Respondent Sarah Wynn-Williams was the Director of Global Public Policy at Facebook (now Meta) before her employment was terminated effective November 10, 2017. *See* McKenna Decl. ¶ 2. During her employment, Ms. Wynn-Williams made unfounded and misleading accusations. To avoid the irreparable harm to Meta that would result from a public airing of those unfounded and misleading accusations, the company asked Ms. Wynn-Williams not to make such disparaging comments. Ms. Wynn-Williams, who was represented by counsel, agreed to this request by signing a "Severance Agreement and Release." *See* McKenna Decl., Ex. A-1. Under the Severance Agreement, Ms. Wynn-Williams received $780,000 in severance pay and other valuable benefits.

3

Severance Agreement, § 2. In exchange, she agreed not to disparage Meta or its employees:

> 9. **Nondisparagement**: Except as described in Section 4, and not including any testimony given truthfully under oath or as required by any other legal proceeding, **you agree not to make disparaging, critical or otherwise detrimental comments** to any person or entity **concerning the Company, its officers, directors or employees**; the products, services or programs provided or to be provided by the Company; the business affairs, operation, management or the financial condition of the Company; or the circumstances surrounding your employment and/or separation of employment from the Company. . . .

Severance Agreement, § 9 (emphasis added).[1]

The Severance Agreement also included a binding arbitration provision. Ms. Wynn-Williams agreed "that any and all disputes arising out of the terms of [the Severance Agreement] their interpretation, and any of the matters herein released, shall be subject to arbitration, before the American Arbitration Association ('AAA') in accordance with the Employment Arbitration Rules and Mediation Procedures, **including its Optional Rules for Emergency Measures of Protection, to the extent not inconsistent with the terms of this Agreement**." *Id*. § 16(d). The contract specifically provides that an "arbitrator may grant injunctions and other relief in such disputes." *Id*.

---

[1] Section 4 of the Severance Agreement does not apply here. It provides that the nondisparagement provision does not prohibit Ms. Wynn-Williams from "filing a claim with a federal, state or local government agency that is responsible for enforcing a law on behalf of the government." Severance Agreement, § 4.

4

On March 5, 2025, Meta learned from public reports that Ms. Wynn-Williams intends to release a book called *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism* on March 11. *See* Roehrkasse Decl. ¶ 2. The book is already available for pre-order from online booksellers.

Flatiron's public statements regarding the book make clear it will disparage Meta and Meta's employees. According to Flatiron and its parent company Macmillan, the book is a "shocking" and "searing" memoir and "explosive insider account" that will expose "a rotten company culture." Roehrkasse Decl. Ex. A-1, A-3. Flatiron promises the book will "paint[] a portrait" of high-profile Meta executives as "callously indifferent to the price others would pay for their own enrichment." *Id*. Ex. A-2. The publisher also describes Ms. Wynn-Williams' book as telling a "story" about Meta's supposed failure "to stop genocide-fuelling lies and hate speech." *Id*.

To promote her new book, Ms. Wynn-Williams has scheduled media events, including interviews to discuss her disparaging claims against Meta. *See* Roehrkasse Decl. ¶ 4. For example, Ms. Wynn-Williams is scheduled to appear on the BBC on March 11. *See id.*

Without relief, Ms. Wynn-Williams' public disparagement of Meta and its personnel will irreparably harm the company. As Meta's Vice President of Public Affairs

explains in an attached declaration, Ms. Wynn-Williams' comments "will undoubtedly harm Meta's business reputation and will cost Meta users and goodwill." *Id*. ¶ 6.

STANDARD

The emergency arbitrator may grant emergency relief if "the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief." AAA Employment Rule O-4.

ARGUMENT

The emergency arbitrator should enjoin Ms. Wynn-Williams from disparaging Meta or its employees in violation of her Severance Agreement. And she should be ordered to retract—and refrain from promoting—any previous disparaging comments. That is the only remedy that can prevent imminent and irreparable harm to Meta's reputation. *See Lopez v. Noa*, No. B222183, 2011 WL 3211471, at *2 (Cal. Ct. App. July 29, 2011) (describing arbitration order prohibiting author and anyone acting in concert from violating contractual nondisparagement provision of settlement agreement by selling book proposal).

**I.      Disparaging Meta Violates Ms. Wynn-Williams' Contractual Obligation.**

The Severance Agreement is crystal clear. Ms. Wynn-Williams agreed "not to make disparaging, critical or otherwise detrimental comments to any person or entity"

6

about Meta, its employees, products, or operations. Severance Agreement, § 9. By publishing the book and discussing her allegations in the media, Ms. Wynn-Williams has breached and will breach that obligation.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011). There can be no doubt that Ms. Wynn-Williams and Meta entered into a binding Severance Agreement and that Meta honored its end of the deal by paying Ms. Wynn-Williams $780,000 and providing additional benefits. *See* Severance Agreement, § 2; McKenna Decl. ⁋ 3.

But Ms. Wynn-Williams has not honored her contractual duty not to "make disparaging, critical or otherwise detrimental comments to any person" about Meta. Severance Agreement, § 9. To "[d]isparage" means "to lower in rank or reputation," to "speak slightingly about," or to "bring discredit upon." *Vivian v. Labrucherie*, 214 Cal. App. 4th 267, 277 n.4 (2013) (citation omitted). Even a relatively minor, subjective statement, such as saying that a company "does not do good work for its clients" may be "sufficient to allege breach of [an] anti-disparagement clause." *New Box Sols., LLC v. Davis*, No. CV 18-5324-RSWL-KS, 2018 WL 4562764, at *6 (C.D. Cal. Sept. 18, 2018); *see also Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV 09–08241 MMM, 2011 WL 13214303, at *5-7

7

(C.D. Cal. Jan. 31, 2011) (holding that disparagement claim related to statements that the plaintiff was a "bully[]," had engaged in "financial misconduct," and "defrauded the Hospital" survived summary judgment).

Here, Ms. Wynn-Williams' book is blatantly disparaging, critical, and detrimental. It is not even a close call. Indeed, the public descriptions of the book *themselves* disparage Meta. Flatiron promises the book will expose "a rotten company culture," reveal that Meta executives are "callously indifferent to the price others would pay for their own enrichment," and fault Meta for failing to "stop genocide-fuelling lies and hate speech." Roehrkasse Decl. Ex. A-2. These statements are disparaging by any definition of the word.

## II.      Emergency Relief Is Necessary to Prevent Irreparable Harm to Meta's Reputation.

Courts routinely find that loss of customer goodwill and damage to brand reputation constitute irreparable harm. *See MacSweeney Enters., Inc. v. Tarantino*, 235 Cal. App. 2d 549, 562 (Ct. App. 1965) ("A plaintiff is not required to stand by and see his business actually injured before he may stay the hand of the person usurping his goodwill and reputation." (cleaned up)); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("[T]hreatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("damage to

. . . goodwill qualif[ies] as irreparable harm"); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

Just so here. Meta's reputation is at the core of its business, and publication of these allegations will undoubtedly cost Meta customers and goodwill. *See* Roehrkasse ⁋ 6.

Finally, even if money damages *could* fully compensate Meta—and to be clear, they could not—Ms. Wynn-Williams, as an individual, would likely be unable to pay such a substantial judgment. *See* McKenna Decl. ⁋ 4. That provides an independent basis for finding irreparable harm. *See Alliant Ins. Servs., Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1299 (2008) (affirming finding of irreparable harm where lack of a preliminary injunction would make "a subsequent judgment . . . ineffective").

Emergency relief "would prevent harm to [Meta] by requiring [Ms. Wynn-Williams] to remove old disparaging [comments] and by prohibiting [Ms. Wynn-Williams] from adding new disparaging [comments]." *GAF Materials LLC v. Lipinskiy*, No. 20-cv-2194, 2020 WL 6867412, at *6 (D. Minn. Nov. 23, 2020). To the extent Ms. Wynn-Williams has already disseminated her disparaging comments, she should retract them. That includes pulling back the book to the maximum extent possible. Declaring it too late and allowing Ms. Wynn-Williams to benefit from hiding her breaches, would be inconsistent with the Severance Agreement and fundamentally inequitable.

For Ms. Wynn-Williams' flagrant violations of the nondisparagement clause, injunctive relief is necessary. That is why the Severance Agreement expressly provides that Ms. Wynn-Williams "will be subject to a permanent injunction and/or temporary restraining order for any violations of this Agreement, including . . . any breach of Sections 9, 10, and 12." Severance Agreement, § 16(g); *see also id.* § 16(d) ("The arbitrator may grant injunctions and other relief in such dispute.").

## EMERGENCY RELIEF REQUESTED

For the reasons given, Meta respectfully requests that the emergency arbitrator enter emergency relief enjoining Ms. Wynn-Williams, her agents, and other persons acting in active concert or participation with her, including the Respondent Publishers:

1.  from making "disparaging, critical or otherwise detrimental comments to any person or entity concerning [Meta], its officers, directors or employees; the products, services or programs provided or to be provided by [Meta]; the business affairs, operation, management or the financial condition of [Meta]; or the circumstances surrounding [her] employment and/or separation of employment from [Meta]";

2.  from publishing or promoting *Careless People*;

3.  from amplifying or repeating all such previous "disparaging, critical or otherwise detrimental comments";

10

4. to retract all such previous "disparaging, critical or otherwise detrimental comments."

Dated: March 7, 2025

/s/ Mathew S. Rosengart

Mathew S. Rosengart
Mark D. Kemple
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

*Attorneys for Claimant*

Respectfully submitted.

/s/ Jonathan F. Cohn

Jonathan F. Cohn
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
jon@lkcfirm.com

William T. Thompson
Todd L. Disher
Alexis Swartz
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, Fifth Floor
Austin, TX 78701

Drew F. Waldbeser
Danielle Kerker Goldstein
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

Meredith R. Criner
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615

*Attorneys for Claimant*

11

## CERTIFICATE OF SERVICE

I certify on March 7, 2025, I served this document by e-filing through casefiling@adr.org and emailing a copy to Respondents.


/s/ *Alexis Swartz*
Alexis Swartz

12