# EXHIBIT G

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
**Emergency International Arbitral Tribunal**

Meta Platforms, Inc.,

 *Claimant*,

v.

Sarah Wynn-Williams; Macmillan Publishers;
Flatiron Books,

 *Respondents.*

No. 01-25-0001-2843

## ORDER DENYING RESPONDENT WYNN-WILLIAMS' EMERGENCY MOTION TO VACATE INTERIM AWARD

I, Nicholas A. Gowen, the undersigned Emergency Arbitrator, having been designated in accordance with the arbitration agreement entered into between the parties and dated September 6, 2017, and having been duly sworn, and having duly heard the proofs and allegations of the parties, and having issued the Interim Award dated March 12, 2025, and having reviewed the parties' submissions, issues the following ruling DENYING Respondent' Wynn-Williams'[1] Emergency Motion to Vacate Interim Award.

### BACKGROUND

**Initial Proceedings.**

On March 7, 2025, Claimant filed an Application for Emergency Relief seeking interim and emergency measures pursuant to AAA Employment Rule 0-4 concerning the publication of *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*. On March 10, 2025, the

---

[1] On March 24, 2024, the ICDR advised the parties of the administrative determination that the Claimant did not meet the filing requirements concerning Respondents Flatiron Books and Macmillan Publishers and the ICDR would not proceed with the administration of claims against these Respondents. These two Respondents will be collectively referred to as "Macmillan" and Respondent Wynn-Williams will be referred to as "Respondent."

1

Emergency Arbitrator was appointed and scheduled an emergency telephonic hearing with the parties to occur on March 11, 2025 at 3:15 p.m. (CT) / 4:15 p.m. (ET). AAA Employment Rule O-1 provides that "notice [of an application for emergency relief] may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties." AAA Employment Rule O-3 provides that the emergency arbitrator must "establish a schedule for consideration for the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard [ ]."

Claimant's filing indicated that it provided notice to the parties at the following email addresses:sarahwynnwilliams@gmail.com;publicity@flatironbooks.com;megan.lynch@flatiron.com;deb.futter@celadonbooks.com;kimberley.nyamhondera@macmillan.com;yassy.okamoto@macmillan.com; and poppy.north@macmillan.com. According to publicly available information, the individuals with Macmillan-related email addresses are identified as follows: Megan Lynch - Executive Vice President and Publisher of Flatiron Books, Deb Futter - President and Publisher of Celadon Books, a division of Macmillan, Kimberley Nyamhondera – Senior Publicity Manager at Macmillan, Yassy Okamoto – Vice President and Deputy General Counsel of Macmillan, and Poppy North – Publicity Director at Macmillan.

The ICDR used those same email addresses to provide scheduling information to all parties, indicating that the initial hearing would occur on March 11 at 3:00 p.m. (CT). The Emergency Arbitrator subsequently responded to that email exchange to modify the hearing time to occur at 3:15 p.m. (CT). Prior to the hearing, Macmillan's counsel responded to an email chain requesting that the Emergency Arbitrator, the ICDR, and Claimant remove his clients from future email threads, indicating that he would be Macmillan's point of contact. Macmillan's counsel had

2

not been copied on prior emails, indicating that he had been informed of the proceedings by Macmillan.

On March 11, 2025, the Emergency Arbitrator held the telephonic hearing. Claimant, through its counsel, appeared and presented oral argument. Claimant represented that the email address for Respondent was the best contact information that it had available. Claimant also represented that none of the emails that had been sent had "bounced back," indicating that the emails had been successfully delivered. Respondent did not appear at the hearing. Macmillan, through its counsel, did specially appear (while preserving its objections to jurisdiction).

On March 12, 2025 at 11:16 a.m. (ET), the Emergency Arbitrator informed the parties that he would provide Respondent additional time until 9:00 a.m. (ET) on March 13, 2025 to file any written objection to Claimant's Motion. Shortly thereafter, at 12:19 p.m. (ET), Claimant provided the Arbitrator and the parties additional evidence regarding Respondent's purported knowledge of the proceedings. Claimant reported that on the morning of March 12, 2025, Respondent appeared on a popular podcast where she discussed her book and Claimant's attempts to "shut this book down." The Emergency Arbitrator considered Claimant's March 12 submission of the podcast's partial transcript as another exhibit in support of its Emergency Motion. The Emergency Arbitrator found that Respondent was on notice of the emergency proceeding, satisfying AAA Employment Rule O-3. The Emergency Arbitrator subsequently issued the Interim Award, granting Claimant's Application for Emergency Relief against Respondent, and making no findings or ruling as to Macmillan

**Respondent's Motion.**

On March 18, 2025, Respondent filed an Emergency Motion to Vacate Interim Award (the "Motion"). Respondent argues that the Interim Award should be vacated on two primary grounds.

3

First, Respondent argues that Claimant did not provide her proper notice of the proceedings, as the documents were purportedly sent to an "inactive" email address (sarahwynnwilliams@gmail.com), as opposed to the address that Claimant was purportedly aware that she had previously used (swynnwilliams@gmail.com) or the email address listed on her website (www.sarahwynnwilliams.com).

Second, Respondent argues that Claimant's Emergency Application should not have been granted because Claimant could not (and cannot) demonstrate a likelihood of success on the merits of its breach of contract claim. Respondent argues that Claimant's cause of action fails for the following reasons:

1. The Severance Agreement is illegal and unenforceable as it purportedly contains provisions that confuse and deter employees from reporting misconduct, including a bar on any monetary recovery for reporting Meta's misconduct to government agencies.

2. If the Severance Agreement is valid, Claimant purportedly was the first to breach by failing to pay Respondent certain reimbursements.

3. Claimant purportedly waived its right to arbitration by publicly stating in 2018 that it would not require employees to arbitrate sexual harassment claims, which Respondent relied upon.

4. The non-disparagement provision in the Severance Agreement is purportedly unenforceable as it violates federal and California laws that protect whistleblowers from retaliation.

5. The non-disparagement provision is purportedly unenforceable because it is contrary to public policy by preventing Respondent from communicating with political officials regarding her allegations.

**Claimant's Opposition.**

On March 24, 2025, Claimant filed its opposition. Claimant argues that Respondent was provided reasonable notice of the claims pursuant to AAA Employment Rule O-3. Claimant also argues that the Severance Agreement is enforceable because it is not barred by SEC regulations,

the National Labor Relations Act, or California's Silenced No More Act. Claimant further argues that it can succeed on the merits because it did not commit a prior breach nor waive its right to arbitrate. Claimant also argues that the Severance Agreement does not contravene public policy.

**JURISDICTION**

**The Emergency Arbitrator Has Jurisdiction.**

As an initial matter, the Emergency Arbitrator continues to have jurisdiction over this dispute because a Merits Arbitrator has not been appointed, pursuant to AAA Employment Rule O-5. Moreover, Respondent has properly requested that the Interim Award be vacated, despite not having cited a AAA-ICDR rule explicitly allowing such a request. The applicable AAA Employment Arbitration Rules, specifically Rule 48, provides that "[t]he arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties." The Emergency Arbitrator interprets the AAA Employment Arbitration Rules to permit reconsideration or vacating any ruling made prior to the Close of Hearing, as provided in AAA Employment Rules O-4 and O-5. Accordingly, the Emergency Arbitrator has the authority to allow a party to file a motion to reconsider or to vacate an order, to rule on such motions, and to reconsider a previous order if necessary.

**RULING**

In addition to the AAA procedural rules, California substantive law applies to this dispute. California law provides that courts retain power to vacate or modify injunctive orders at any point, "upon a showing that there has been a material change in the facts upon which the injunction was granted." *In re Butler*, 413 P.3d 1178, 1184 (Cal. 2018). The Emergency Arbitrator has considered the facts and arguments that Respondent raised and has determined that she has not presented a material change in the facts that supported entry of the Interim Award.

5

The Emergency Arbitrator denies Respondent's Motion for two reasons. *First*, Respondent had reasonable notice of the proceedings. *Second*, regardless of the issue of notice, Respondent has presented no compelling argument establishing that Claimant would not be successful on the merits of its breach of contract claim, justifying vacatur of the Interim Award.

## I.      Respondent Had Reasonable Notice of the Proceedings.

The Emergency Arbitrator finds that AAA Employment Rule O-3 was satisfied and that Respondent had reasonable notice of the proceedings. Respondent argues that although she created the sarahwynnwilliams@gmail.com email address, she does not currently use it, does not have access to the login credentials, and that it is "inactive." The Emergency Arbitrator does not know that to be true. The facts establish that none of the emails that were sent by Claimant, or the AAA-ICDR, "bounced back."

Moreover, even if Respondent did not receive emails from Claimant or the AAA-ICDR, it is likely that she was aware of the proceedings. Over a period of six days, between March 7 and March 12, 2025, Claimant's counsel and the AAA-ICDR sent several emails copying multiple Macmillan senior employees and attorneys regarding the emergency arbitration, the scheduling of the hearing, and the proposed interim award. It is unlikely that multiple emails regarding such a significant legal matter, that were sent to five people who are seemingly senior-level Macmillan employees – with responsibilities ranging from publishing, legal, publicity and communications – did not inform Respondent of the emergency arbitration. That is particularly unlikely considering the significance of the proceeding – and the potential outcome – for all parties. To be clear, Macmillan's knowledge does not impute knowledge on Respondent. However, that information is significant because it establishes that Respondent had reasonable notice of the emergency proceeding.

Additionally, the Motion argues that Respondent's statements regarding Claimant's attempts to "shut this book down" during a March 12 podcast referred to a March 6 letter directed at Macmillan.[2] Respondent's Declaration does not make such an assertion, but is silent regarding the context of the comments Respondent made during the March 12 podcast. Moreover, Respondent's Declaration states that she never "received notice from Meta to the Primary Email" notifying her of the arbitration. (Decl. at ¶ 14.) The Declaration noticeably fails to state that Respondent was unaware of the arbitration proceeding. The Arbitrator considers all of these facts and finds that Respondent had reasonable notice of the arbitration proceeding sufficient to satisfy AAA Employment Rules O-1 and O-3.

## II.     Claimant Established a Likelihood of Success on the Merits.

Even if Respondent lacked reasonable notice of the hearing – an argument that the Emergency Arbitrator rejects – that alone does not require vacatur of the Interim Award. As Claimant argues, if there was a lack of notice, that would only permit Respondent to present her arguments that had not been previously presented. Having now done so, the Emergency Arbitrator considers Respondent's arguments in full and rejects them. The Emergency Arbitrator again finds that Claimant is likely to succeed on the merits of its breach of contract claim requiring issuance of the Interim Award granting Claimant's Emergency Application.

To obtain a preliminary injunction, Claimant must show a reasonable probability it will prevail on the merits. *Prigmore v. City of Redding*, 211 Cal. App. 4th 1322, 1333 (2012). The elements to establish a breach of contract are well-settled. Claimant must plead (1) the existence of the contract, (2) its performance or excuse for nonperformance, (3) Respondent's breach, and

---

[2] Considering that Claimant's March 6 letter had been sent to Macmillan – and not Respondent – further establishes that Respondent had been in communication with her publisher in the days preceding the release of her book.

(4) resulting damages. *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97–98 (2014). Respondent argues that Claimant cannot succeed because (a) the Severance Agreement is invalid, and (b) her affirmative defenses of prior breach and waiver establish that Claimant failed to perform its obligations. The Emergency Arbitrator rejects Respondent's assertions.

**A.  Respondent's Arguments Do Not Support Invalidating the Severance Agreement**.

Respondent argues that the Severance Agreement is invalid because certain of its provisions purportedly violate federal and California laws. Respondent's arguments are unpersuasive.

**1.  The Severance Agreement Does Not Prevent Whistleblower Activity.**

*First*, Respondent argues that the Severance Agreement discourages whistleblowers from reporting improper activity in violation of the Dodd-Frank Act and 15 U.S.C. 78u-6. Respondent's assertion is unsupported by the plain language of Section 4 of the Severance Agreement, which the Interim Award adopted. Section 4 explicitly carves out Respondent's right to "fil[e] a claim with a federal, state or local government agency that is responsible for enforcing a law on behalf of the government." In fact, Respondent took advantage of those rights by filing a whistleblower claim with the SEC nearly one year before publishing her book.

Respondent argues that the Section 4 carveout is illusory because it does not allow her to recover money for reporting misconduct. Respondent cites no binding authority to support her assertion. Instead, she cites several non-binding SEC orders. *See e.g., In re Facebook, Inc. Sec. Lit.*, 477 F. Supp. 3d 980, 1017 n.4 (N.D. Cal. 2020) (explaining that positions articulated, and statements made by the SEC in settlement documents are not law and are not binding). There is no indication that a court would determine the Section 4 carveout to be invalid.

Even if the SEC settlements that Respondent relies upon are binding, they are factually distinguishable. Each addressed prohibitions on incentive awards to whistleblowers, not a lawsuit that a government agency may file on behalf of a former employee. In *HomeStreet Inc. v. Darrel Van Amen*, HomeStreet required employees sign severance agreements that waived potential claims the employee made against it as a condition of being paid a monetary settlement.  Exchange Act Release No. 34-79844, 115 SEC Docket 18 (Jan. 19, 2017), at ¶ 38. The agreement further stated that employees were not prohibited from filing a charge with the EEOC or discussing any matter relevant to the employee's employment with any government agency, "but shall be considered a waiver of any damages or monetary recovery therefrom." *Id*. at ¶ 39. The SEC found that the agreement removed "financial incentives that are intended to encourage persons to communicate directly with the Commission staff about possible securities law violations." *Id*. at ¶ 40.

HomeStreet's severance agreement is factually distinguishable. First, HomeStreet's severance agreement sought to bar damages and monetary recovery from claims filed by the individual employee, whereas the Severance Agreement bars monetary benefit from claims brought on behalf of the individual employee by a government agency. Second, HomeStreet's severance agreement acts as a bar of all damages or monetary recovery whereas the Severance Agreement is more limited and only bars monetary benefit when the claim is brought by a government agency.

Additionally, in *In the Matter of BlackRock, Inc.*, BlackRock utilized a form separation agreement that stated that an employee waives "any right to recovery of, incentives for reporting of misconduct, including without limitation, under the Dodd-Frank [Act]. . ." Exchange Act Release No. 34-79804, 115 SEC Docket 18 (Jan. 17, 2017), ¶ 7. The SEC found that BlackRock's

9

separation agreement violated Rule 21F-17(a) by impeding an individual from communicating directly with the SEC. *Id.* at ¶ 10. BlackRock's separation agreement differs from the Severance Agreement in that it expressly forbid an employee from recovering incentives under Dodd-Frank.

Respondent does not establish that the Severance Agreement barred whistleblower activities such that would invalidate the agreement.

### 2. The NLRA Does Not Apply to Respondent.

***Second***, Respondent argues that the Severance Agreement should be invalidated because it violates the National Labor Relation Act (NLRA), by preventing Claimant from criticizing her workplace conditions. Even if Respondent's assertion is true, Section 2(3) of the NLRA excludes supervisors from the protections of the NLRA. 29 U.S.C. § 152(3). The NLRA defines a supervisor as one who (1) has authority to engage in certain supervisory functions defined in the Act, (2) uses independent judgment when exercising this authority, and (3) holds this authority in the interest of the employer. *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713 (2001). Claimant argues, and Respondent does not contest, that Respondent was a senior-level employee who had supervisory authority. Accordingly, the NLRA is inapplicable to this dispute.

### 3. The Silenced No More Act Does Not Apply to the Severance Agreement.

***Third***, Respondent argues that the Severance Agreement violates California's Silenced No More Act, which forbids a severance agreement that prohibits disclosure of information about unlawful acts in the workplace. The Silenced No More Act, which became effective January 1, 2022, is inapplicable because it does not apply retroactively. *See* Cal. Civ. Proc. Code § 1001 ("The amendments made . . . by Senate Bill 331 of the 2021-22 Regular Session [The Silenced No More ACT] apply only to agreements entered into on or after January 1, 2022."). Moreover, the statute only applies to "a provision within a settlement agreement that prevents or restricts the

disclosure of factual information related to a claim filed in a civil action or a complaint filed in an administrative action . . ." *Id*. The non-disparagement clause of the Severance Agreement does not prevent Respondent from disclosing information in a civil action. Additionally, the facts establish that Respondent's disparaging statements also included statements unrelated to her accusations of sexual harassment. The Silenced No More Act does not invalidate the Severance Agreement.

### 4. Public Policy Does Not Invalidate the Severance Agreement.

*Finally,* Respondent argues that the Severance Agreement's non-disparagement provision violates public policy because it purportedly prevents her from communicating with legislators in the United States and abroad. "Whether a contract is contrary to public policy is a question of law to be determined from the circumstances of the particular case." *Bovard v. Am. Horse Enters*., 201 Cal. App. 3d 832, 838 (1988). To determine whether a contract violates public policy is subjective. *Id*. California courts cautiously apply "public policy reasons to nullify otherwise enforceable contracts." *Id*. "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Id*. at 839. The Respondent has the burden to show that enforcement of the Severance Agreement would violate the "settled public policy of [California], or [be] injurious to the morals of its people." *Id*.

At this stage of the proceedings, the facts do not demonstrate that the Severance Agreement violates public policy merely because Respondent is not permitted to engage in informal discussions with legislators in the United States and Europe. The purpose of the non-disparagement clause is to limit Respondent's discussions with third-parties regarding her former employment with Claimant. If Respondent were permitted to communicate with legislators (outside of the context of an investigation), such actions would only create an exception that would

11

eat the rule. In such a circumstance, nothing would limit or prevent those legislators (or their aides) from parroting to the public any disparaging statements that Respondent is otherwise barred from disclosing to anyone other than a governmental investigatory body. Those legislators could also use their respective platforms as public officials to explicitly assist Respondent promote her book, which she is barred from doing.

Section 4 of the Severance Agreement provides Respondent broad relief to file claims, communicate, and cooperate with any federal, state or local government agency that is conducting an investigation of her allegations against Claimant. That is sufficient to protect her rights. No further carveout is appropriate nor necessitated by the Severance Agreement. The Emergency Arbitrator will not nullify the Severance Agreement by finding that its restrictions violate public policy.

**B.  Respondent's Affirmative Defenses Will Not Negate Claimant's Cause of Action.**

**1.  Respondent Does Not Establish Claimant Committed a Prior Material Breach.**

Respondent argues that Claimant cannot enforce the Severance Agreement because Claimant committed a prior breach of the Severance Agreement by purportedly failing to reimburse Respondent certain expenses. Prior breach is an affirmative defense requiring Respondent establish that Claimant's alleged prior breach was material. *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.,* 195 Cal. App. 3d 1032, 1051 (1987) ("California courts allow contract termination only if the breach can be classified as 'material,' 'substantial,' or 'total.'"). Whether a partial breach of a contract is material depends on the importance or seriousness of the breach and the probability of the injured party getting substantial performance. *Brown v. Grimes*, 192 Cal. App. 4th 265, 278 (2011).

Respondent has not demonstrated that Claimant's alleged failure to reimburse certain expenses was material. Sections 2 and 6 of the Severance Agreement establish that Claimant paid Respondent all amounts due at the time the agreement was executed. Section 8 of the Severance Agreement provides that any remaining expenses that were unpaid that Respondent incurred prior to September 6, 2017 were to be submitted by October 31, 2017. Respondent has not demonstrated that the alleged unpaid expenses were incurred before the Severance Agreement was executed. Rather, Claimant has demonstrated that some of Respondent's reimbursement requests were for expenses incurred after the Severance Agreement was executed.

Ultimately, this is a factual dispute that cannot be resolved at this time. *Brown*, 192 Cal. App. 4th at 277. However, the Emergency Arbitrator can consider the seriousness of the alleged prior breach to determine whether Claimant's prior actions were material, based on the facts presented. *Id*. at 278. Here, the alleged unpaid amount was less than 30% of the total amount of the consideration provided ($230,000 versus $800,000). Additionally, Claimant's alleged failure to reimburse those expenses occurred in 2017 and 2018. Yet, Respondent has never filed suit seeking to recover the alleged unreimbursed expenses.[3] Respondent has never otherwise alleged that Claimant breached the Severance Agreement. Respondent has also not alleged that the Severance Agreement had terminated in the seven years following Claimant's alleged breach.

The Emergency Arbitrator makes no factual finding regarding whether Respondent's prior breach affirmative defense will ultimately prevail. At this stage of the proceedings, the facts do not establish that Claimant's alleged failure to reimburse certain of Respondent's expenses

---

[3] It is unclear if Respondent could assert such a claim now because the four-year statute of limitations for breach of a written contract likely began to run in 2017 and may bar a recovery. *Eloquence Corp. v. Home Consignment Center*, 49 Cal. App. 5th 655, 661 (2020) ("when a controversy is ripe—that is, when all of the elements of a cause of action have occurred and a suit may be maintained.").

constituted a material breach of the Severance Agreement. Respondent's affirmative defense is insufficient to negate Claimant's breach of contract claim.

**2.    Respondent Does Not Establish that Claimant Waived Its Right to Arbitrate**.

Respondent argues that Claimant waived its right to arbitrate its breach of contract claim because of public comments Claimant made in 2018 that it would not arbitrate sexual harassment claims. Waiver is an affirmative defense and is the intentional relinquishment of a known right. *Quach v. Cal. Commerce Club, Inc.*, 16 Cal. 5th 562, 569 (2024) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)) (California courts applying the Federal Arbitration Act hold that arbitration contracts are placed on equal footing as other contracts requiring courts apply the same rules as any other contract when determining whether a party to an arbitration agreement has lost the right to enforce the agreement.)

The *Quach* court held that to establish waiver of a contract claim, the party opposing enforcement of a contract must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it. *Id*. at 584. The clear and convincing standard requires the proponent of a fact show that it is "highly probable" the fact is true. *Id*. The waiving party's intentional relinquishment or abandonment of the right may be proved by "evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right [so] as to lead a reasonable fact finder to conclude that the party had abandoned it." *Id*.

Respondent will be unable to establish that Claimant waived its right to arbitrate its claim, despite any public statements it made seven years ago. *First*, Claimant's general public statements regarding not requiring sexual harassment victims to arbitrate sexual harassment claims does not establish that Claimant waived its rights to pursue this arbitration against Respondent.

14

*Second*, this is not a sexual harassment case. It is a breach of a severance agreement related to alleged disparaging statements that Respondent published – not all of which pertain to allegations of her being sexually harassed.

*Third*, Claimant cannot be said to have acted intentionally to abandon its rights to arbitrate its claim. Respondent argues that other former employees of Claimant have recently written books that have not led Claimant to file arbitration against those former employees. The Emergency Arbitrator does not know if Respondent's assertion is true. Even so, the point is irrelevant, because those other employees are not party to the Severance Agreement. At any time since 2018, when Claimant made its public statements, Claimant and Respondent could have sought to modify the Severance Agreement to remove the arbitration clause. They did not. There are no facts related to how Claimant interacted with Respondent, demonstrating that Claimant has acted inconsistently with asserting its arbitration rights here.

*Fourth*, Claimant did not demonstrate that it acted inconsistently by pursuing arbitration. Claimant initiated this proceeding days after learning of Respondent's scheduled book release. Respondent's waiver affirmative defense would not negate Claimant's breach of contract claim.

*****

For the preceding reasons, Respondent's Motion to Vacate the Interim Award is DENIED. The Interim Award entered on March 12, 2025, is reaffirmed and remains in effect unless and until modified or vacated by the merits tribunal, once appointed, or by agreement of the parties.

The Emergency Arbitrator's fees shall be borne by Claimant, pursuant to the terms of the arbitration agreement. This allocation may be modified by the merits tribunal, once appointed, pursuant to AAA Employment Rule O-8.

I hereby certify that, for the purposes of Article I of the New York Convention of 1958, on

15

the recognition and Enforcement of Foreign Arbitral Awards, this Order was made in Los Angeles, California, United States of America.

Dated: March 31, 2025

Nicholas A. Gowen,
Emergency Arbitrator

State of Illinois        )
                         )   SS:
County of Cook           )

I, Nicholas A. Gowen, do hereby affirm upon my oath as Emergency Arbitrator that I am the individual described in and who executed this instrument.

3/31/2025

Nicholas A. Gowen, Emergency Arbitrator

16