# EXHIBIT S

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION DIVISION**

In the Matter of the Arbitration between

Meta Platforms, Inc.,

    *Claimant/Counterclaim Respondent,*

v.

Sarah Wynn-Williams,

    *Respondent/Counterclaimant.*

Arbitration Case No.: 01-25-0001-2843

Arbitrator: Hon. Marcus Salvato Quintanilla

**CLAIMANT META PLATFORMS, INC.'S**
**APPLICATION FOR SANCTIONS**

Claimant Meta Platforms, Inc., respectfully submits this application for sanctions against Respondent Sarah Wynn-Williams for violations of the Interim Award.

**INTRODUCTION**

On March 12, 2025, this tribunal issued an Interim Award prohibiting Respondent from "further promoting" her book, *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*, "on a book tour or otherwise." Cohn Decl. Ex. A at 4 ("Interim Award"). Despite having notice of this straightforward command, Respondent repeatedly promoted her book through personal appearances at bookstores. In February and March 2026, Respondent spoke at several events where her book was prominently displayed and promoted. Promotional materials for these events offered the book for sale and even used the Interim Award as a mechanism to promote the book. And despite recently telling Claimant and this tribunal that she "ha[s] no further public speaking engagements," Respondent is slated to appear at a major literary festival as a featured speaker alongside two other prominent critics of Claimant.

Respondent's defense for these flagrant and knowing violations of the Interim Award is that she cannot "control third parties." But this application for sanctions is based on Respondent's own conduct, including her decision to appear at events designed to promote sales of her book—all scheduled to coincide with the release of a paperback version of the book. Sanctions are therefore warranted, not because third-party bookstores held events promoting Respondent's book, but because Respondent personally participated in the promotional events—conduct that squarely falls within and violates the Interim Award.

To enforce its Interim Award and ensure the integrity of this arbitral process, the tribunal should exercise its authority to impose monetary sanctions on Respondent.

## BACKGROUND

### I. The Emergency Arbitrator prohibited Respondent from promoting her book.

When Claimant learned that Respondent intended to release a book disparaging Claimant, it sought emergency relief in this tribunal, in accordance with the parties' Severance Agreement. *See* App. for Emergency Relief at 5. After extensive briefing and argument, the Emergency Arbitrator found that Claimant had established a likelihood of success on its claim that Respondent had breached her Severance Agreement, and issued an Interim Award enjoining Respondent's conduct. Interim Award at 3. The Interim Award prohibits Respondent from "further promoting *Careless People* . . . on a book tour or otherwise," "from further publishing or distributing *Careless People*," and "to the extent within [Respondent's] control, from amplifying . . . in any forum all such previous 'disparaging, critical or otherwise detrimental comments." Interim Award at 4.

On March 18, 2025, Respondent moved to vacate the award. *See* Respondent's Mot. to Vacate Interim Award. On March 31, 2025, in a detailed, well-reasoned opinion, the emergency

2

arbitrator denied Respondent's motion to vacate. *See* Order on Mot. to Vacate Interim Award. The Interim Award remains in place today.

## II.  Respondent violated the Interim Award by promoting her book throughout the UK in February and March 2026.

On March 3, 2026, Claimant learned that Respondent was scheduled to speak that day at a Waterstones bookstore—a U.K. national chain similar to Barnes & Noble—in Manchester, England. *See* Cohn Decl. Ex. B. In researching that event, Claimant discovered that Respondent had participated in other similar events on February 23, February 25, as well as March 2. *See* Cohn Decl. Ex. C-F. She was also scheduled to participate in another event on March 6. *See* Cohn Decl. Ex. G.

These events were scheduled on the heels of the book's paperback release in late February 2026. *See* Cohn Decl. Ex. C at 1 ("We are thrilled to welcome Sarah Wynn-Williams to Waterstones Nottingham to celebrate the release of the paperback edition of Careless People."). Each event has been hosted by a large national bookstore that sells her book. The ads for the events and many of the events themselves featured the book, often with Respondent nearby.

 

Cohn Decl. Ex. H at 1-3.



Cohn Decl. Ex. H at 4.



Cohn Decl. Ex. I at 3.

Sometimes the photo of the book was displayed side by side with a photo of Respondent in event promotional materials.



Cohn Decl. Ex. E at 1.

The events included "Ticket & Book" options by which an attendee could purchase a copy of *Careless People* with the ticket to the event. Cohn Decl. Ex. D at 2 (February 23 event promoting "Ticket & Book option which includes a copy of Careless People by Sarah Wynn-Williams"); Cohn Decl. Ex. F at 2 (February 25 event promoting "Book and ticket option" that "include[d] a copy of *Careless People*").

And the promotional materials for these events used the Interim Award itself to promote the book. For example, the March 6 event description, advertised as "Sarah Wynn-Williams CARELESS PEOPLE," includes a description of the book—noting it is "hugely praised" and "bestselling," but that "Meta secured a ruling . . . on publication day preventing [Respondent] from promoting the book:"

5



Cohn Decl. Ex. G at 1-2.

## III. Respondent misled the Arbitrator and Claimant about additional planned events to promote *Careless People*.

On March 5, 2026, Claimant submitted a letter to the Arbitrator that detailed Respondent's violations and asked Respondent to provide Claimant and this tribunal with information about the promotional events, including the number of her books sold at the events; the content of her remarks; payments received; and contracts and communications between her, her publishers, and hosts of the events regarding her appearance at the events. *See* Claimant March 5 Ltr. at 4. Respondent's response, sent the night of March 6—apparently shortly after that day's promotional event ended—stated that she "engaged in five speaking engagements only" and "ha[s] no further public speaking engagements so there is no basis to claim an 'ongoing' or concurrent issue" and "ha[s] no public engagements." Cohn Decl. Ex. J at 1.

6

Following the status conference held by this tribunal on March 12, Claimant learned that Respondent is slated to speak at the Hay Festival, a world-renowned, global festival for literature and the arts. *See* Cohn Decl. Ex. K. Respondent will appear at this prominent literary festival for a talk with Carole Cadwalladr, the British investigative journalist primarily known for her negative coverage of Claimant, and Tim Wu, another known critic of Claimant, to speak as someone "who understand[s] Big Tech from the inside." Cohn Decl. Ex. K. Although Claimant does not have extensive information about Respondent's event at the Hay Festival the event's promotional materials include a direct link to "Browse the Festival Bookshop," Cohn Decl. Ex. K, which offers *Careless People* for sale:



*See* Cohn Decl. Ex. L.[1]

---

[1] Claimant also learned that despite representing to this tribunal that she has "no public engagements," Respondent appeared as the Keynote Speaker at the Enterprise GC 2026 conference in London on March 9-10, speaking as "the author of the #1 New York Times bestseller Careless People." Cohn Decl. Ex. M. And Respondent's appearance at the Hay Festival was publicly

**IV.  Respondent refused to provide relevant information about her promotional activities.**

Claimant has consistently sought information relevant to these events from Respondent. In its March 5, 2026, letter, Claimant requested specific information that would allow this tribunal to assess the extent of Respondent's wrongdoing. Claimant March 5 Ltr. at 4. Claimant reiterated that request during the March 12 status conference. Counsel then met and conferred over email and videoconference, but Respondent has refused to substantively respond to Claimant's request for information. *See generally* Cohn Decl. Ex. N. Respondent has not provided a single document to Claimant. Respondent has refused to provide any information about how she came to appear at these promotional events. She insists she has no contracts with the event hosts, *e.g.*, Cohn Decl. Ex. O at 1, and refuses to provide the contract with her publisher, which might cast light on how Respondent expected to promote her book before these proceedings began, Cohn Decl. Ex. O at 1 (first refusing to provide publisher contracts because Claimant requested that information "in th[e] discovery process"); Cohn Decl. Ex. P at 2 (then refusing to provide publisher contracts because they "cannot have any bearing" on her violations of the Interim Award). She also refuses to provide any documents or communications: (1) in which she was invited to participate in these events, (2) that described the events to her, or (3) in which she agreed to participate in the events. Cohn Decl. Ex. O at 2 (asserting the request is "unnecessary" and "overly broad" because it "relates to third parties"); Cohn Decl. Ex. P at 2 (asserting that because Respondent "was not involved" in planning the events, "[n]o such documents or communication relating to these requests can therefore exist"). With respect to the Hay Festival, the only information Respondent provided is that the event does not "reference the book *in any way*." Cohn Decl. Ex. Q at 2 (emphasis in original).

---

reported on March 9. *See* Emma Loffhagen, *Gisèle Pelicot and Nazanin Zaghari-Ratcliffe among Hay Festival 2026 speakers*, The Guardian (Mar. 9, 2026), https://perma.cc/67KT-3LHF.

As directed by this tribunal and in an attempt to engage with Respondent, counsel for Claimant proposed a meet and confer, which took place on March 23. *See* Cohn Decl. Ex. N at 2-3. Respondent's counsel confirmed Respondent would not produce any material in response to Claimant's requests. *See* Cohn Decl. Ex. N at 2-3. Respondent's counsel otherwise would not answer whether Respondent was in possession of contracts with the publishers; whether those contracts might say something about her promotional obligations for the book; or whether Respondent has any pertinent written communications about the events. *See* Cohn Decl. Ex. N at 2-3. In Respondent's view, Claimant has offered "no evidence of a violation" and otherwise failed to satisfy *its* disclosure obligations regarding Respondent's violations of the Interim Award— despite Claimant's previous submission to this tribunal and the fact that Claimant has no unique information about the promotional events Respondent personally attended. Cohn Decl. Ex. R at 2. Respondent's only request—made that morning shortly before the meet-and-confer—asked for material "relating to [Claimant's counsel] taking recording of an event." Cohn Decl. Ex. R at 2. Counsel for Claimant explained there were no recordings, only the first-hand knowledge of an attorney who attended the March 6 event, as well as a photograph—which depicts Respondent again appearing with the book. Cohn Decl. Ex. N at 3; *see* Thomas Decl. Ex. 1 at 1. Claimant provided Respondent with that photograph on March 23. Cohn Decl. Ex. N at 3; *see also* Thomas Decl. Ex. 1 at 1.[2]

---

[2] Respondent's counsel also refused to provide an update on Respondent's search for California counsel, despite his prior representation on March 12 that retention was "imminent." *See* Mar. 12, 2026 Order; *see also* Cohn Decl. Ex. N at 3.

**ARGUMENT**

## I.    Respondent violated the Interim Award and apparently intends to continue doing so.

Respondent knowingly and intentionally violated the Interim Award. The Interim Award is clear: It "enjoins" Respondent "from further promoting" her book "on a book tour or otherwise" and from "distributing" her book. Interim Award at 3-4. There is nothing ambiguous about the Interim Award's prohibitions, and Respondent has acknowledged that the Interim Award requires her to "stop[] promoting" her book. Respondent's Emergency Mot. to Vacate Interim Award at 3.

Despite having notice of the Interim Award, Respondent subsequently participated in a coordinated effort to continue promoting her book. Respondent attended multiple promotional events that (1) coincide with the release of the paperback version of her book, (2) take place in bookstores selling her book, and (3) prominently featured the paperback version of her book. Those event descriptions likewise promoted the book by referring to the Interim Award Meta "secured . . . on publication day preventing [Respondent] from promoting the book." Cohn Decl. Ex. E at 2.

Claimant does not seek to hold Respondent responsible for the actions of third parties she cannot control.[3] But Respondent can control herself. She voluntarily (1) served as the speaker attracting audience members who purchased a ticket and her book in the same transaction, (2) posed for photographs featuring her book, which were later distributed online as further promotional materials, (3) appeared on stages with physical copies and photographs of her book, and (4) allowed her name, image, and likeness to be used in materials promoting the events and her book. Cohn Decl. Exs. B-I. Worse, Respondent apparently intends to continue violating the

---

[3] While Claimant does not dispute that there are certain third parties outside Respondent's control, the Interim Award enjoins not just Respondent but also "her agents, servants, employees, attorneys, and any other person(s) or entities for which she controls." Interim Award at 3.

Interim Award by participating in an upcoming literary festival where her book is being promoted for sale. *See* Cohn Decl. Exs. K-L.

Respondent contends that she did not "mention the book" at these events, Cohn Decl. Ex. J at 1, but Respondent applies an unreasonably strict interpretation of the prohibitions of the Interim Award. As a matter of common sense, promoting a book includes participating in an event featuring that book, where advertising for the event includes photos of the book, some attendees have purchased the book along with their tickets, and the rest can buy the book at the store hosting the event.

Respondent does not deny that she knew the nature of these events before she participated. Her steadfast refusal to explain what happened, or to otherwise produce any evidence relating to this topic, strongly suggests she knew ahead of time that the events were designed to promote her book. She certainly has offered no other explanation for why she agreed to participate in these events with no apparent compensation beyond whatever she receives from book sales. Cohn Decl. Ex. O at 1. But even if Respondent did not know how the first event would promote her book, she certainly knew by the end of that event. And yet, she kept participating in them, knowing her attendance would violate the Interim Award. After at least five events, Respondent cannot credibly deny responsibility for her continued participation. And if Respondent has an explanation for her conduct, she should provide it to this tribunal.

The reality is Respondent has no legitimate explanation for her knowing violations of the Interim Award. But to the extent she continues to fail to meaningfully engage with Claimant or the proceedings related to this dispute, this tribunal at the very least should draw an adverse inference from her failure to produce any communications related to her participation, or otherwise explain it. Tribunals have long applied "the venerable rule that a factfinder may draw an adverse

11

inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024). Under California law:

> In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case.

Cal. Evid. Code § 413. If the documents supported her story, she would have produced them. That she refused to produce anything speaks volumes.

## II. This tribunal should impose monetary sanctions.

Monetary sanctions are necessary to vindicate the authority of this tribunal. If the Interim Award is to serve its purpose and prevent irreparable harm to Claimant, repeated and intentional violations cannot be consequence-free. There is no doubt that the parties' contract and principles of law authorize imposition of appropriate monetary sanctions here.

### A. Sanctions are necessary to enforce the Interim Award.

The integrity of the arbitral process requires parties to follow arbitral orders. The only way to ensure compliance is to ensure non-compliance is costly for violators. For this reason, Claimant respectfully requests that the tribunal order Respondent to pay: (1) $1,500 per violation of the Interim Award, (2) Claimant's reasonable attorneys' fees and costs incurred in investigating and responding to Respondent's violations of the Interim Award; and (3) any revenues she derived from her violations. This would be consistent with California law on monetary sanctions, prevent Respondent from benefiting from her violations of the Interim Award, and ensure Claimant is not unduly burdened with costs stemming from Respondent's violations of the Interim Award.

At the March 12 status conference, Respondent suggested that the tribunal should delay consideration of these issues so that it can determine compliance with the Interim Award as part

12

of the merits hearing on Respondent's breaches of contract. That would conflate two issues that must be left separate: (1) sanctions for violations of an injunction and (2) damages for breach of contract (a determination to be made at the merits hearing, not now).

The propriety of sanctions for violating the Interim Award does not depend on the outcome of the merits hearing on contract issues. Just as "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings," *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947), so too for the Interim Award. Respondent's position violates "the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980).

Thus, even if Respondent eventually prevailed at the merits hearing (Claimant is confident she will not), that would not justify her sanctionable conduct in the meantime. A party must obey an injunction while it is in force, even if the injunction is later set aside. *See United Mine Workers of Am.*, 330 U.S. at 294 ("Violations of an order are punishable as criminal contempt even though the order is set aside on appeal.").

Otherwise, interim awards and preliminary injunctions would serve no purpose. If the only consequence Respondent faced for violating the Interim Award was the same monetary liability she would have faced in the absence of the Interim Award, then the Interim Award would have no marginal effect. But interim awards are meant to prevent irreparable harm even when the enjoined party feels confident it will eventually prevail on the merits. Thus, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the

13

order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). There is therefore no reason to delay adjudication of the issue of sanctions.

### B. This tribunal has authority to impose monetary sanctions.

Imposition of sanctions is well within the arbitrator's authority. First, the Severance Agreement's arbitration provision expressly authorizes the arbitrator to grant "injunctions and other relief" in any dispute arising out of the agreement. App. for Emergency Relief, McKenna Decl. Ex. A-1, § 16(d). Necessarily included in that power is the power to enforce such an award. Second, the Severance Agreement incorporates the AAA Employment Rules. *Id*. § 16(c), (d). Under AAA Employment Rule 39(d), an arbitrator may "grant any remedy or relief that would have been available to the parties had the matter been heard in court," which would include sanctions and other relief to enforce an injunction.[4]

#### 1. The contractual power to issue an injunction includes the power to enforce that injunction.

Arbitrators can issue sanctions under their "inherent authority to police the arbitration process and fashion appropriate remedies to effectuate this authority." *Hamstein Cumberland Music Group v. Williams*, 532 F. App'x 538, 543 (5th Cir. 2013) (per curiam) (rejecting the argument "that the arbitrator was not empowered to issue sanctions"). The authority to sanction is necessary to effectuate—and therefore included in—the arbitrator's power to grant "injunctions and other relief" under the Severance Agreement. *See, e.g.*, 2A C.J.S. Agency § 149 ("Agency powers that are incidental to those expressly granted will be implied insofar as they are necessary to carrying the express powers into effect[.]"); *Seagate Tech. LLC v. W. Digit. Corp.*, 854 N.W.2d 750, 754, 762-63 (Minn. 2014).

---

[4] The 2009 AAA Employment Arbitration Rules and Mediation Procedures apply. *See* Procedural Order 1.

In *Seagate*, the Minnesota Supreme Court recognized an arbitrator's authority to impose sanctions. Like the clause here, the arbitration clause there provided that "[t]he arbitrator may grant injunctions or other relief." *See id.* at 762. Punitive sanctions, the court reasoned, qualify as "relief" within the meaning of the arbitration clause because they redress misconduct and benefit the opposing party. *Id.* (citing *Relief*, Black's Law Dictionary 1482 (10th ed. 2014) (defining relief as "[t]he redress or benefit, esp[ecially] equitable in nature (such as an injunction or specific performance), that a party asks of a court")). *Seagate* aligns with the more general rule that arbitrators may provide any relief "rationally related" to the contract. *See also Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal. 4th 362, 382 (1994).

### 2. The AAA Employment Rules and California law also authorize this tribunal to impose sanctions.

The Severance Agreement also authorizes sanctions by incorporating the AAA Employment Rules. Under the Employment Rules, the arbitrator is empowered to "grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." AAA Employment R. 39(d); *see also* R. 32. Again, in *Seagate*, where the arbitration clause likewise incorporated the 2009 AAA Employment Rules, the court recognized the arbitrator's sanction authority. 854 N.W.2d at 763.

Even more, incorporated California law authorizes sanctions for violations of an injunction. Under California law, every court has the power to "compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein," Cal. Civ. Proc. Code § 128(a)(4); *see also* Cal. Civ. Proc. Code § 177(b) ("compel obedience to the officer's lawful orders as provided in this code"). Because a California court could sanction

15

Respondent's violation of a preliminary injunction, this tribunal can sanction her violation of the Interim Award.

In terms of specific sanctions, courts certainly have the power to impose specific monetary sanctions, disgorge profits, and shift attorneys' fees when they sanction litigants. California law gives judges "the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification." Cal. Civ. Proc. Code § 177.5. "[U]se of profits as a measure for the contempt sanction is hardly a novel proposition." *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004). And "[t]he Court has discretion to 'decide whether an award of fees and expenses is appropriate as a remedial measure.'" *Black Lives Matter L.A. v. City of Los Angeles*, No. 2:20-cv-05027, 2026 WL 414801, at *4 (C.D. Cal. Jan. 15, 2026) (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)).

California courts recognize that arbitrators can exercise these same powers. In *David v. Abergel*, the parties' arbitration agreement gave the arbitrator the power to "grant any remedy or relief to which a party is entitled under California law." 46 Cal. App. 4th 1281, 1282-83 (1996). The arbitrator imposed substantial monetary sanctions, which the California Court of Appeal upheld because the court "presume[d] [the parties] meant what they said" when granting the arbitrator power to award "any remedy or relief" available under California law. *Id.* at 1283; *see also Bak v. MCL Fin. Grp., Inc.*, 170 Cal. App. 4th 1118, 1121 (2009) (affirming confirmation of arbitral award and rejecting argument that "the arbitrators exceeded their powers by ordering [the appellant] to pay $7,500 in sanctions as a result of his conduct during a prehearing dispute over the production of documents"); *WFP Sec., Inc. v. Davis*, No. B244528, 2014 WL 1465181, at *10

16

(Cal. Ct. App. Apr. 15, 2014) ("The propriety of the arbitrators' decision to impose a discovery sanction is not subject to judicial review.").

### III. This tribunal should order Respondent to disclose relevant information.

Though the publicly available evidence is sufficient to demonstrate Respondent's sanctionable conduct, information in her possession is necessary to determine the extent to which she profited from her violations of the Interim Award. Because Respondent has failed to provide that information to either Claimant or the tribunal, Claimant cannot yet quantify its request for disgorgement. But based on Respondent's own previous representation to this tribunal, promoting her book does affect her income. *See* Mot. to Vacate Interim Award at 3 (claiming that not "promoting or speaking about her" book "is causing her ongoing financial losses"). Claimant therefore respectfully requests that Respondent be ordered to produce the contract with her publishers that establishes her compensation and answer questions about income associated with these events, including from the sale of books related to these events.

The additional information that Respondent has withheld is primarily relevant to the extent of her culpability. The tribunal certainly could order Respondent to provide that information, but at this stage, the simpler course is to draw an adverse inference from Respondent's failure to explain herself. If the documentary evidence in her possession made her conduct appear more reasonable, she surely would have shared it before now.

### RELIEF REQUESTED

For the reasons given, Claimant respectfully requests:

1. Monetary sanctions of $1,500 per past event that violated the Interim Award ($7,500 total);
2. Claimant's reasonable attorney's fees in responding to Respondent's violations of the Interim Award; and
3. Disgorgement of any money Respondent made from these events, including from book sales, to be determined based on information Respondent should be ordered to disclose.

17

Dated: March 27, 2026

/s/ Mathew S. Rosengart

Mathew S. Rosengart
Mark D. Kemple
Alex Linhardt
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite
1900
Los Angeles, CA 90067

*Attorneys for Claimant*

Respectfully submitted.

/s/ Jonathan F. Cohn

Jonathan F. Cohn
Mary Elizabeth Miller
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
jon@lkcfirm.com

William T. Thompson
Alexis Swartz
LEHOTSKY KELLER COHN LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735

Drew F. Waldbeser
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305

Meredith R. Pottorff
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206

*Attorneys for Claimant*

18