# EXHIBIT W

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION DIVISION**

| | |
|---|---|
| In the Matter of the Arbitration between<br><br>Meta Platforms, Inc.,<br><br>    *Claimant/Counterclaim Respondent*,<br><br>v.<br><br>Sarah Wynn-Williams,<br><br>    *Respondent/Counterclaimant.* | Arbitration Case No.: 01-25-0001-2843<br><br>Arbitrator: Hon. Marcus Salvato Quintanilla |

**ADDENDUM TO CLAIMANT'S APPLICATION FOR SANCTIONS**

We write on behalf of Claimant Meta Platforms, Inc. to inform the Tribunal of Respondent Sarah Wynn-Williams's continuing violations of the Interim Award, which prohibits her from "further promoting" her book, *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*, "on a book tour or otherwise." Claimant understands and respects the Tribunal's May 7 decision to defer ruling on Claimant's pending application for sanctions until the final merits determination. But given Respondent's evident intent to continue flouting the Interim Award despite the Tribunal's previous admonitions, Claimant respectfully requests that the Tribunal reconsider Claimant's application to address Respondent's misconduct. At the very least, the Tribunal should be aware of Respondent's ongoing violations as the parties proceed to the final merits hearing. Further, given Respondent's March 6 written representation to the Tribunal that she had no further public speaking engagements—an evidently-false representation made just one business day before her Hay Festival appearance was announced—we submit that Respondent should be ordered to disclose any similar future events.

As the Tribunal is aware, Claimant learned earlier this year that Respondent participated in a series of speaking events at bookstores, where her book was prominently displayed and promoted. After Claimant submitted a letter to the Arbitrator on March 5 detailing those violations,

Respondent represented that she "ha[d] no further public speaking engagements," so "there is no basis to claim an 'ongoing' or concurrent issue." (*See* March 6, 2026 email from Respondent to Tribunal, a true and correct copy of which is annexed hereto as **Exhibit A**.)

On March 12, the Arbitrator held a status conference and set a briefing schedule regarding Claimant's request for sanctions based on Respondent's violations of the Interim Award. The Arbitrator made clear to the parties that the Tribunal would take a "common sense" approach to evaluating whether Respondent's participation in promotional events violated the Interim Award. The Arbitrator then issued the following admonition: "[O]n the strength of [Respondent's] prior communications, and assurances by Mr. Naik [Respondent's counsel], it is understood that Respondent will not engage in activities comparable to those at issue in Claimant's current allegations until Claimant's application is resolved." (*See* Mar. 12, 2026 email from Tribunal, a true and correct copy of which is annexed hereto as **Exhibit B**.)

Despite Respondent's representations to the contrary, Claimant learned that Respondent was, in fact, already scheduled to appear at the Hay Festival, a prominent literary festival in Wales, alongside two well-known critics of Claimant, Carole Cadwalladr and Tim Wu.[1] Claimant described this event in its March 27 application for sanctions. (App. at 7.)

The Arbitrator held a status conference on April 22, explaining that Claimant had established a *prima facie* case that Respondent's conduct violated the Interim Award. The Arbitrator further explained that Respondent's scheduled presence at the Hay Festival in

---

[1] Ms. Cadwalladr is a British journalist primarily known for her critical and negative coverage of Meta, while Mr. Wu, also a noted critic of Meta, was one of the leading advocates for an unsuccessful antitrust lawsuit against Meta. *See, e.g.*, Ben Judah, *Britain's most polarizing journalist*, The Atlantic (Sept. 19, 2019), *https://www.hudson.org/technology/britain-s-most-polarizing-journalist*; Steve Lohr, *Chris Hughes worked to create Facebook. Now, he is working to break it up*, New York Times (July 25, 2019), *https://www.nytimes.com/2019/07/25/technology/chris-hughes-facebook-breakup.html/*.

connection with the promotion of her book would likely constitute another violation of the Interim Award.

Respondent nevertheless participated in the Hay Festival event on May 31 with a premeditated stunt to garner more attention and promote her book. As described in the accompanying Declaration of Annabel Thomas ("Thomas Decl.") and as reported in the press, Respondent sat prominently in the middle of a three-person panel at the festival, as the other two panelists discussed her book and its criticism and disparagement of Meta. (*See, e.g.*, Emma Loffhagen, *Meta legal action forces Facebook whistleblower to sit in silence at Hay festival*, The Guardian [May 31, 2026], a true and correct copy of which is annexed hereto as **Exhibit C**; *see also* Thomas Decl., a true and correct copy of which is annexed hereto as **Exhibit D**, at ¶¶ 3-6.)[2]

As reported in the press and confirmed in the Thomas Decl., a Hay Festival official described the panel at the outset as "an important act of solidarity for the silenced." (Ex. C, at p. 2; Ex. D, at ¶ 3.) One of the other panelists (Ms. Cadwalladr) then introduced the event, saying: "I think this might be a Hay first, in which we have an author in a hostage situation. Blink once if

---

[2] *See also* Anita Singh, *Facebook silences whistleblower at Hay Festival*, The Telegraph (May 31, 2026), https://archive.is/6mI0a; David Sanderson, *Meta whistleblower forced into silence at Hay Festival*, The Times (May 31, 2026), https://tinyurl.com/4xactyck; The Bookseller Editorial Team, *Wynn-Williams silenced at the Hay Festival*, The Bookseller (May 31, 2026), https://archive.is/YbiTF; Paul Pigott, *Meta whistleblower sits mute for hour-long panel at Hay Festival*, BBC (May 31, 2026), https://perma.cc/6TDD-KGUH; Paul Pigott, *Facebook whistle-blower sits in silence in panel discussion about her tell-all book*, BBC (June 1, 2026), https://perma.cc/UUC8-FWBX; Louis Chilton, *Facebook whistleblower forced to sit in silence onstage during Hay Festival talk after Meta injunction*, Independent (June 1, 2026), https://tinyurl.com/4fduby7y; David Sanderson, *Meta 'acting like medieval king' by silencing whistleblower*, The Times (June 1, 2026), https://tinyurl.com/4ccv48z2; Amanda Yeo, *Facebook whistleblower sits silently at literary festival due to Meta legal order*, Mashable (June 1, 2026), https://perma.cc/WR5U-YD7E; Dan Milmo, *Meta whistleblower's lawyer says he too is prevented from promoting her book*, The Guardian (June 1, 2026), https://perma.cc/EUR2-TSBU; Wila Pope Robbins, *'Hostage Situation': Meta whistleblower falls silent amid company's threats in stunning moment*, MSN (June 1, 2026), https://perma.cc/G6AC-EJTJ; Carlos Gonzalez, *Sarah Wynn-Williams, the Writer Censored by Meta, Gives a Lecture Without Uttering a Single Word*, Co1ombia (June 2, 2026), https://perma.cc/V9PY-Q2ED; Chris Morris, *'Blink once if you can hear us': Meta whistleblower says she can't speak at book festival due to legal threats*, yahoo! finance (June 3, 2026), https://tinyurl.com/3kxyfu4c.

you can hear us, Sarah, twice if [Mark] Zuckerberg is an asshole." (Ex. C, at p. 1; Ex. D, at ¶ 4.) Ms. Cadwalladr went on to read a letter from Respondent's counsel purportedly "outlining [Claimant's] latest legal claims" and referencing Claimant's pending application for sanctions.[3] (Ex. C, at p. 2.)

Respondent's prominent presence on the panel (notwithstanding her conspicuous refusal to speak during the panel) had the intended effect: garnering press and promotion—and increasing sales of her book.[4] And as the Tribunal is aware, while we appreciate its necessary and appropriate declination of the request, *The Guardian* (oddly) contacted the Tribunal about the matter directly, seeking to gain access to the case file.

In short, cutting through Respondent's stunts and mockery of these proceedings, Respondent's participation in the Hay Festival panel was intended to and did promote her book in violation of the Interim Award. Respondent's ongoing conduct—despite this Tribunal's directives—also indicates that she will continue to flout the Interim Award pending the final merits hearing, which remains several months away. As noted above, while Claimant understands and respects the Arbitrator's preference to defer ruling on Claimant's sanctions application, we respectfully submit Respondent's ongoing violations should not be ignored and thought it appropriate to bring to the Tribunal's attention. For the foregoing reasons, Claimant requests a conference with the Arbitrator to discuss the above.

---

[3] Among other things, while Respondent sat on stage in between Ms. Cadwalladr and Mr. Wu, Mr. Wu characterized Respondent's book as "critical" of Claimant. Ms. Cadwalladr stated that Mr. Zuckerberg comes across as a "manchild" and referenced Respondent's claim in her book of alleged "sexual harassment" by a high-ranking Meta executive. (Ex. D at ¶¶ 5-6.)

[4] *See* Ella Creamer, *Sales of Meta whistleblower's memoir soar after Hay festival 'silencing,'* The Guardian (June 10, 2026), a true and correct copy of which is annexed hereto as **Exhibit E**.

Dated: June 12, 2026

Respectfully yours,

Mathew S. Rosengart                    Jonathan F. Cohn
Mark D. Kemple                         Mary Elizabeth Miller
Alex Linhardt                          LEHOTSKY KELLER COHN LLP
GREENBERG TRAURIG, LLP                 200 Massachusetts Ave. NW, Suite 700
1840 Century Park East, Suite 1900     Washington, DC 20001
Los Angeles, CA 90067                  jon@lkcfirm.com

*Attorneys for Claimant*                William T. Thompson
                                       Alexis Swartz
                                       LEHOTSKY KELLER COHN LLP
                                       7500 Rialto Blvd., Suite 1-250
                                       Austin, TX 78735

                                       Meredith R. Pottorff
                                       LEHOTSKY KELLER COHN LLP
                                       700 Colorado Blvd., #407
                                       Denver, CO 80206

                                       *Attorneys for Claimant*

# EXHIBIT A

**From:** Sarah Wynn-Williams <swynnwilliams@gmail.com>
**Sent:** Friday, March 6, 2026 2:36 PM
**To:** Marcus Quintanilla <marcus.quintanilla@msqgdr.com>
**Cc:** Will Thompson <will@lkcfirm.com>; ICDR Erin Brennan <ErinBrennan@adr.org>; Rosengart, Mathew S. (Shld-LA-LT) <rosengartm@gtlaw.com>; Linhardt, Alex L. (Shld-LA-LT) <linhardta@gtlaw.com>; Kemple, Mark D. (Shld-LA-LT-Labor-EmpLaw) <kemplem@gtlaw.com>; Jon Cohn <jon@lkcfirm.com>; Mary Miller <mary@lkcfirm.com>; Alexis Swartz <alexis@lkcfirm.com>
**Subject:** Re: Meta v Sarah Wynn-Williams

Dear Arbitrator Quintanilla

Thank you for your email.

I have read the Claimant's letter and exhibits. I write to provide my preliminary observations for you, mindful that I am currently self-represented in this hearing.

Firstly, the Claimant's state that I have been engaged with "ongoing and flagrant violations of the Interim Award." I engaged in five speaking engagements only. I have no further public speaking engagements so there is no basis to claim an "ongoing" or concurrent issue.

Secondly, the Claimant has not presented any evidence of a violation as there is no violation. I was invited to speak at five small and curated events, in which I spoke about contemporary issues only. I did not – as the Claimant's exhibits show – violate the severance agreement, mention the book, or otherwise promote the book. For your information, the discussions were on the future of the internet (on issues such as the British government's approach to regulation of online services), Artificial Intelligence (including issues to do with large model providers, of whom OpenAI and Anthropic are the only actors the public are aware of) and the use of digital technology in warfare (a topic in which I have unique expertise from my ongoing work in technology after I left the Claimant). This is what the events were billed as covering and did cover.

Thirdly, the Claimant seems to be aware that I did not breach the Severance Agreement or Interim Award. They suggest I did so by "a wink and a nod". I do not know what a "wink or a nod" means but they do not provide evidence even for that. The highest they put matters is a photo of me with a book in the background. Of course, when I am speaking those that host the event may refer to the book. I cannot control third parties beyond telling them of my legal restrictions before I agree to speak. I was very deliberate to avoid any discussion of the Claimant to ensure there was no breach and did so.

Fourthly, if the Claimant was so concerned about these events they could have come to you before now. These five events have been promoted for a while and transparently so. There has been nothing clandestine about these speaking engagements because I understand I am allowed to speak on wider topics within my expertise. The Claimant is only coming to you after the event because they knew from the promotional material of the events that I would not be in breach of the Interim Award or the Severance Agreement. The  material was clear that I would not

be speaking in any way that violated the Interim Award, and I followed the contours of that rigorously. The Claimant's evidence is speculative at best.

Finally, I am unclear what "sanctions" the Claimant seeks as they do not detail them. I do not have any further public speaking engagements. Nevertheless, such a threat of sanctions is alarming for me and suggests that the Claimant is attempting to police my behaviour and restrict me even when I am *expressly not* discussing the Claimant nor otherwise engaging in conduct that may breach the severance agreement or Interim Award. I am an expert on technology issues and as such speak about technology issues. I have stuck to the Interim Award strictly for a year, at great personal impact. That has not been easy, but I have done it. The Claimant now comes to you to complain about a speculative and unevidenced breach.

I am further concerned that the Claimant is attempting to leverage the fact that their questions to me in discovery led to me being self-represented. Any discussion of sanctions in the absence of counsel would be very difficult and unfair for me, as it would involve legal discussions. To face repercussions of any sort without representation would be very detrimental. In contrast, there is no detriment to the Claimant in me securing counsel before any such hearing as I currently have no public engagements. Contrary to the Claimant's suggestion that I have not sought to instruct new counsel; I have spent a considerable amount of my own time doing so. This has been challenging due to the extent of the Claimant's legal representation/conflicts. I have made significant progress. I have identified counsel who has confirmed that they do not have a conflict and am in the process of establishing instructions with them. I would in fact hope to have counsel in place by the end of next week / early the week after. That is not a process that should be rushed given what has transpired before.

With that in mind, I would ask that any hearing is held until once I have my counsel in place. As before, there is no prejudice to the Claimant.

I am being as open with you and the Claimant as I can be through this email. In light of these matters, I would ask that any hearing is listed for when I have counsel. That hearing can then also address the future progression of the arbitration, which would be a more resourceful use of your and the Claimant's time.

Yours sincerely

Sarah Wynn-Williams

# EXHIBIT B

**From:** Marcus Quintanilla <marcus.quintanilla@msqgdr.com>
**Sent:** Thursday, March 12, 2026 1:03 PM
**To:** Will Thompson <will@lkcfirm.com>; Ravi Naik <ravi@awo.legal>; Rosengart, Mathew S. (Shld-LA-LT) <rosengartm@gtlaw.com>; ErinBrennan@adr.org
**Cc:** swynnwilliams <swynnwilliams@gmail.com>; Linhardt, Alex L. (Shld-LA-LT) <linhardta@gtlaw.com>; Kemple, Mark D. (Shld-LA-LT-Labor-EmpLaw) <kemplem@gtlaw.com>; Jon Cohn <jon@lkcfirm.com>; Mary Miller <mary@lkcfirm.com>; Alexis Swartz <alexis@lkcfirm.com>
**Subject:** Meta v Wynn-Williams — Order re: Briefing on Respondent's Alleged Non-Compliance with Interim Measures

Dear Colleagues:

This will memorialize the status conference that we conducted starting at noon today and ending at 12:42 PM (Pacific Time).

Messrs. Rosengart and Thompson appeared as principal representatives for Meta.

Mr. Naik appeared as principal representative for Ms. Wynn-Williams.

After a fruitful discussion, the following points were agreed:

First, not later than March 27, 2026, at 6 PM (Pacific Time), Meta will submit any application for relief in connection with the pending allegations of Respondent's  noncompliance with the Emergency Arbitrator's interim measures.

That deadline has been set in view of Respondent's efforts to secure new (or additional) arbitration counsel, which, Mr. Naik advised, is imminent. The expectation is that the period from now until the due date of Claimant's application will be sufficient to permit counsel to meet and confer and engage in consensual information exchange and to potentially narrow the relief sought in Claimant's application.

Second, Respondent's Opposition to the application will be due not later than April 10 at 6 PM (Pacific Time).  Absent a compelling showing of good cause, that deadline will apply whether or not Respondent obtains a substitution of counsel.

Third, on the strength of Ms. Wynn-Williams's prior communications, and assurances by Mr. Naik, it is understood that Respondent will not engage in activities comparable to those at issue in Claimant's current allegations until Claimant's application is resolved.

IT IS SO ORDERED.



**Marcus Salvato Quintanilla, FCIArb**
**Arbitrator, Mediator, Counsel**

1 Sansome Street, Ste. 1400
San Francisco, California 94104
marcus.quintanilla@msqgdr.com
+1.949.689.1081  www.msqgdr.com
Admitted: California, Texas, New York

# EXHIBIT C

Case 4:26-cv-06341-AMO Document 41-24 Filed 07/09/26 Page 14 of 22

**Meta**

# Meta legal action forces Facebook whistleblower to sit in silence at Hay festival

### Sarah Wynn-Williams did not speak during event after lawyers warned of possible sanctions from tech firm



📷 Tim Wu and Sarah Wynn-Williams on stage at Hay. Wu condemned the restrictions on Wynn-Williams' participation. Photograph: Sam Hardwick

**Emma Loffhagen**

Sun 31 May 2026 13.18 EDT

G Prefer the Guardian on Google

Facebook whistleblower Sarah Wynn-Williams was forced to sit in silence on stage at an event at Hay festival, after lawyers advised her not to speak because of ongoing legal action brought by Meta.

Wynn-Williams, whose bestselling memoir, Careless People, details her years working at Facebook, was due to appear in conversation with the investigative journalist Carole Cadwalladr and academic Tim Wu.

Instead, Wynn-Williams sat on stage for the duration of the hour-long discussion between Cadwalladr and Wu, without speaking or responding. She was unable even to nod or shake her head.

Introducing the panel, Cadwalladr said: "I think this might be a Hay first, in which we have an author in a hostage situation. Blink once if you can hear us, Sarah, twice if [Mark] Zuckerberg is an asshole."

At the end of the event, Wynn-Williams received a standing ovation from the audience, during which she was moved to tears.

Describing the situation, Cadwalladr said: "I think we can say that Facebook is triggered."

Wynn-Williams, a former Facebook executive, has faced mounting legal restrictions since the publication last year of Careless People, which contains allegations about Meta's internal culture and decision-making, including

Case 4:26-cv-06341-AMO     Document 41-24     Filed 07/09/26     Page 15 of 22

claims relating to political influence, the company's approach to China and concerns about the wellbeing of its child users. Meta has disputed the book's claims.

Hay's programme director Helen Bagnall told the audience that the moment was "an important act of solidarity for the silenced".

Meta, which owns Facebook and Instagram, secured an emergency legal order on the eve of publication preventing her from publicly discussing aspects of the book, and she faces fines of $50,000 (£37,000) each time she breaches the order. The financial and legal pressure has reportedly threatened her with bankruptcy.

Cadwalladr described the spectacle as "trolling-like behaviour" by Meta. "This is not how you conduct crisis comms. Crisis comms would just be simply to ignore this and deprive it of oxygen. This is a kind of trolling-like behaviour against their enemies."

Speaking on stage, Wu condemned the restrictions on Wynn-Williams' participation.



📷 Tim Wu, Sarah Wynn-Williams and Carole Cadwalladr. Wynn-Williams received a standing ovation at the end of the event. Photograph: Sam Hardwick

"This is censorship," he told the audience. "This is a demonstration that some of the worst abuses in our time are not confined to kings, emperors, governments … but to a class of companies that have assumed the sovereign affect, and seek to assert their power the same way that some of those despotic nation states do."

During the event, Cadwalladr read a letter from Wynn-Williams' lawyers outlining the company's latest legal claims. The letter stated that, in March 2026, Meta filed a sanctions motion alleging that Wynn-Williams violates the emergency arbitration order "any time she appears in public in a place where she should know that her book is available for sale and her presence might draw attention to it".

According to the letter, Meta's motion specifically cited her appearance at the Hay festival as "an example of conduct that should be formally sanctioned".

It also referred to the identities of her fellow panellists. Meta argued that Cadwalladr was a journalist "primarily known for her negative coverage of Meta", while Wu was described as "another known critic".

Following the letter, Hay festival withdrew Careless People from sale while she was speaking at the festival, so as not to breach Meta's legal order.

*You've read **6 articles** in the last year*                Article count **on**

### At this dangerous time

We hope you appreciated this article. Before you close this tab, we want to ask if you could support the Guardian at this dangerous time for journalism in the US.

According to a leading global watchdog, American democracy is now more imperiled than at any point since the 1960s, marked by a precipitous decline in press freedom – driven by mounting pressure from the Trump administration in the form of threats, criminal investigations, politicized regulation, frivolous lawsuits and, for public media, catastrophic funding cuts.

Meanwhile, organizations that are supposed to be independent like the FBI and the FCC, our radio and television regulator, have also been targeting press freedom under Trump-aligned leadership, with the FBI raiding a reporter's home and the FCC threatening ABC's TV licenses after Jimmy Kimmel made a joke about Melania Trump.

The response from some ultra-wealthy and corporate media owners, keen to appease the president, has been chilling: CBS News has been taken over by a Trump ally; CNN is poised to be taken over by the same billionaire; Jeff Bezos has continued to impose cuts and editorial interventions at the Washington Post; and multiple outlets have settled multimillion-dollar lawsuits from the administration to protect their business interests.

Democracy is best served by a robust, thriving free press. But when that freedom is under attack, it falls to a determined few news organizations to ensure the full truth still reaches the public. Owned neither by a billionaire nor a corporation, the Guardian remains dedicated to covering this administration with uncompromising moral and factual clarity – and to keeping trustworthy journalism paywall-free for the world.

**Despite the risks of maintaining our fierce independence, what sustains us – and fills us with deep gratitude – is the unwavering support we've seen from readers. It is no exaggeration to say that we are here because of you: a majority of our funding comes directly from people like you responding to messages like this. Your support not only powers our work, but more importantly, it safeguards the financial independence that underpins our editorial freedom and courage. We know our requests for support are not as welcome as our reporting, but without them, it's simple: our reporting wouldn't exist. Of course, we understand that some readers are not in a position to support us, and if that is you, we value your readership no less.**

○ Support $5/monthly

Recommended

○ **Support $15/monthly**

Unlock **All-access digital** benefits:
- ✓ Far fewer asks for support
- ✓ Ad-free reading on all your devices
- ✓ Unlimited access to the premium Guardian app
- ✓ Regular dispatches from the newsroom to see the impact of your support
- ✓ Unlimited access to Feast, the Guardian recipe app

○ Support once from just $1

# EXHIBIT D

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION DIVISION**

| | |
|---|---|
| In the Matter of the Arbitration between | |
| Meta Platforms, Inc., | Arbitration Case No.: 01-25-0001-2843 |
| *Claimant/Counterclaim Respondent*, | Arbitrator: Hon. Marcus Salvato Quintanilla |
| v. | |
| Sarah Wynn-Williams, | |
| *Respondent/Counterclaimant.* | |

**DECLARATION OF ANNABEL THOMAS**

I, Annabel Thomas, do hereby declare:

1.      I am an attorney in the London office of Greenberg Traurig, LLP, attorneys of record for Claimant Meta Platforms, Inc. ("Meta"). I have personal knowledge of the facts set forth below, and if called as a witness, I could and would competently attest to them.

2.      On May 31, 2026, I attended the Hay Festival in Hay-on-Wye, Powys, Wales, billed as "Tim Wu and Sarah Wynn-Williams talk to Carole Cadwalladr."

3.      At the beginning of the event, an individual I understood to be a Hay Festival official began with a narrative introduction, stating that due to "legal pressure" Ms. Wynn-Williams would be unable to speak at the event but would join Tim Wu and Carole Cadwalladr on stage "in solidarity." Mr. Wu, Ms. Cadwalladr, and Ms. Wynn-Williams then took their seats, with Ms. Wynn-Williams seated in the middle, between Mr. Wu and Ms. Cadwalladr.

4.      Ms. Cadwalladr then quipped about having an author on stage in a "hostage situation," indicating Ms. Wynn-Williams's presence was a "Hay first" and adding that Ms. Wynn-Williams should blink once if she could hear and twice if Mark Zuckerberg is an "arsehole."

5.      Mr. Wu stated that Ms. Wynn-Williams's book *Careless People* was "critical" and that based upon the book, it was not a surprise that Meta was receptive to a "neo-Nietzschean"

1

approach to running the company. Mr. Wu added that from his reading of Ms. Wynn-Williams's book he got a visceral sense of how the company was out of touch, believing people will love them despite "spying on kids."

6.    As Ms. Wynn-Williams sat on stage next to her, Ms. Cadwalladr stated that Mr. Zuckerberg comes across as a bit of a "manchild" and described the situation as "Putinesque," while also referencing Ms. Wynn-Williams's claim in her book of alleged "sexual harassment" by a senior Meta executive.

I declare under penalty of perjury that the foregoing facts are true and correct. Executed in Buckinghamshire, England on the 11th day of June, 2026.

/s *Annabel Thomas*
Annabel Thomas

2

# EXHIBIT E

## Books

# Sales of Meta whistleblower's memoir soar after Hay festival 'silencing'

**Sarah Wynn-Williams remained silent during her hour-long appearance, but sales of Careless People have since increased by more than 300%**



📷 Wynn-Williams on stage at Hay festival. Photograph: Sam Hardwick

**Ella Creamer**

Wed 10 Jun 2026 12.51 EDT

G Prefer the Guardian on Google

Sales of the whistleblowing memoir Careless People increased by more than 300% in the UK the week after its author was "silenced" during an appearance at Hay festival following legal action by Meta, the subject of the book.

Sarah Wynn-Williams – who between 2011 and 2017 served as the director of global public policy at what was then called Facebook – sat on stage but did not speak during her hour-long appearance on 31 May on the advice of her lawyer. She appeared alongside the journalist Carole Cadwalladr and academic Tim Wu.

The sales boost – 304.5% week-on-week – has nudged the book, published last March, to the number one spot in the paperback nonfiction chart.

Upon publication, Meta obtained an order blocking Wynn-Williams from promoting her book, which accuses the company of a toxic internal culture and manipulative political influence. Meta has described the book as "a mix of out-of-date and previously reported claims about the company and false accusations about our executives".

In March, Meta filed a sanctions motion claiming that Wynn-Williams violates the order any time she makes an appearance in a place "where she should know that her book is available for sale and her presence might draw attention to it", according to a letter from her lawyers sent to Hay festival on

30 May. "Meta also said attending the Hay festival would violate the order because the Hay festival's 'promotional materials include a direct link to Browse the Festival bookshop, … which offers Careless People for sale'."

The letter asked Hay festival to "take all reasonable steps to ensure that Careless People is not sold at or through any festival bookshop, book-signing schedule, point-of-sale mechanism, or online link through which sales could be attributed to Ms Wynn-Williams's appearance at the festival".

Pan Macmillan said that since publication, more than 140,000 copies of Careless People have been sold across all formats in the UK.

Wynn-Williams' "courageous, silent appearance at Hay festival has clearly resonated with a huge number of people, who want to read her story and make up their own minds", said Mike Harpley, Wynn-Williams' editor and nonfiction publisher at Pan Macmillan.

He added that the publisher is grateful to the public "for refusing to accept what amounts to corporate censorship. By using legal threats to restrict her appearance on a panel, Meta instead drew massive public attention to what is a brilliant, deeply important book".

At the event, Wynn-Williams was unable to nod or shake her head. At the end, she received a standing ovation, and the event generated widespread press coverage.

"Wynn-Williams was brave enough to get her book out there, despite the economic threats and damage inflicted," wrote her co-panellist Wu in the Guardian on Tuesday. "The company is plainly seeking to make an example of her; to threaten financial ruin and warn off other would-be critics who may be sitting in the wings."

---

*You've read 5 articles in the last year*                    Article count **on**

### At this dangerous time

We hope you appreciated this article. Before you close this tab, we want to ask if you could support the Guardian at this dangerous time for journalism in the US.

According to a leading global watchdog, American democracy is now more imperiled than at any point since the 1960s, marked by a precipitous decline in press freedom – driven by mounting pressure from the Trump administration in the form of threats, criminal investigations, politicized regulation, frivolous lawsuits and, for public media, catastrophic funding cuts.

Meanwhile, organizations that are supposed to be independent like the FBI and the FCC, our radio and television regulator, have also been targeting press freedom under Trump-aligned leadership, with the FBI raiding a reporter's home and the FCC threatening ABC's TV licenses after Jimmy Kimmel made a joke about Melania Trump.

The response from some ultra-wealthy and corporate media owners, keen to appease the president, has been chilling: CBS News has been taken over by a Trump ally; CNN is poised to be taken over by the same billionaire; Jeff Bezos has continued to impose cuts and editorial interventions at the Washington Post; and multiple outlets have settled multimillion-dollar lawsuits from the administration to protect their business interests.

Democracy is best served by a robust, thriving free press. But when that freedom is under attack, it falls to a determined few news organizations to ensure the full truth still reaches the public. Owned neither by a billionaire nor a corporation, the Guardian remains dedicated to covering this administration with uncompromising moral and factual clarity – and to keeping trustworthy journalism paywall-free for the world.

**Despite the risks of maintaining our fierce independence, what sustains us – and fills us with deep gratitude – is the unwavering support we've seen from readers. It**