**SELENDY GAY PLLC**
Philippe Z. Selendy*
Jennifer M. Selendy*
Claire E. O'Brien*
Corey Stoughton*
Drake Reed*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
cstoughton@selendygay.com
dreed@selendygay.com

* Admitted *pro hac vice.*
*Attorneys for Plaintiff Sarah Wynn-Williams*

**ZEITGEIST LAW**
Marcia Hofmann
505 Montgomery Street
San Francisco, CA 94111
Tel: 415-830-6664
marcia@zeitgeist.law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARAH WYNN-WILLIAMS, | Case No.:   4:26-cv-06341-AMO |
| Plaintiff, | SARAH WYNN-WILLIAMS'S OPPOSITION TO META PLATFORMS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | |

Date            August 20, 2026
Time            2:00 pm
Judge:          Hon. Araceli Martínez-Olguín
Courtroom:      5, 2nd Floor

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

      A.    Ms. Wynn-Williams Endured Sexual Harassment While at Facebook Before Being Abruptly Terminated and Offered the Severance Agreement ...........3

      B.    Meta Publicly Committed Not to Compel Arbitration of Sexual Harassment Claims in Support of Free Expression .................................................................4

      C.    Ms. Wynn-Williams Published *Careless People* and Meta Responded with a Retaliatory Arbitration, Contradicting Its Public Promises ...............................4

      D.    Ms. Wynn-Williams Objects to the Arbitration Early and Often, Participating Throughout Settlement Negotiations Solely to Preserve her Rights ...........................................................................................................5

ARGUMENT ..........................................................................................................................9

I.    The Severance Agreement Expressly Preserves Ms. Wynn-Williams's Right to Seek a Preliminary Injunction in this Court.....................................................................9

II.    Ms. Wynn-Williams's Claims Are Not Subject to Arbitration...........................................10

      A.    Federal Statutes Grant Ms. Wynn-Williams the Right to Bring Counts I and VII in Court.................................................................................................11

      B.    The EFAA Precludes Arbitration of This Dispute.................................................11

            1.    This Is a Case Related to a Sexual Harassment or Sexual Assault Dispute ...........................................................................................12

            2.    The Severance Agreement Is a "Predispute Arbitration Agreement" .........................................................................................15

      C.    Meta is Estopped from Compelling Arbitration .....................................................20

III.    Ms. Wynn-Williams Has Consistently Objected to the Arbitration and Has Participated Only to Preserve Her Rights .........................................................................22

CONCLUSION.......................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aceves v. U.S. Bank, N.A.*,
192 Cal. App. 4th 218 (Cal. Ct. App. 2011) ....................................................................21, 22

*Brooks v. City of San Mateo*,
229 F.3d 917 (9th Cir. 2000) ...............................................................................................14

*Butler v. JSerra Catholic High Sch.*,
2025 WL 4057443 (C.D. Cal. Sept. 10, 2025) .........................................................................13

*Combs v. Netflix, Inc.*,
2026 WL 1974172 (9th Cir. July 8, 2026)..............................................................17, 18, 19

*Cornelius v. CVS Pharmacy, Inc.*,
133 F.4th 240 (3d Cir. 2025) .........................................................................................17, 18

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ........................................................................................20, 21

*Diaz v. Macys W. Stores, Inc.*,
101 F.4th 697 (9th Cir. 2024) ...............................................................................................11

*Diaz-Roa v. Hermes L., P.C.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024)....................................................................................13

*Echeverria-Corzan v. Michaels Stores, Inc.*,
2026 WL 668533 (N.D. Cal. Feb. 6, 2026) ............................................................................10

*Empros Cap. LLC v. Rosenbach*,
2020 WL 6684854 (N.D. Cal. Nov. 12, 2020) .......................................................................22

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir.1983) ...............................................................................................24

*Fox v. Experian Info. Sols., Inc.*,
718 F. Supp. 3d 1231 (E.D. Cal. 2024)..................................................................................20

*Garcia v. World Sav., FSB*,
183 Cal. App. 4th 1031 (Cal. Ct. App. 2010) ........................................................................21

*George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*,
722 F.2d 1471 (9th Cir. 1984) ...............................................................................................24

*Goffman v. Bank of Am., N.A.*,
2012 WL 6011906 (Cal. Ct. App. Nov. 29, 2012)..................................................................22

*Johannessen v. JUUL Labs, Inc.*,
2024 WL 3173286 (N.D. Cal. June 24, 2024) ........................................................................13

*Law Offices of Richard E. Wilson, LLC v. Smith*,
2022 WL 16647769 (9th Cir. Nov. 3, 2022) ...........................................................................25

*Lee v. Marriott Int'l, Inc.*,
2025 WL 2689263 (N.D. Cal. Sept. 21, 2025) ........................................................................13

*Linkenhoker v. Rupf*,
2007 WL 9810910 (N.D. Cal. Nov. 30, 2007) ........................................................................15

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ................................................................................................20

*Memmer v. United Wholesale Mortg., LLC*,
135 F.4th 398 (6th Cir. 2025) ...........................................................................................17, 18

*Molchanoff v. SOLV Energy, LLC*,
2024 WL 899384 (S.D. Cal. Mar. 1, 2024) .............................................................................10

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2002) ....................................................................................23, 24, 25

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*,
946 F.2d 722 (9th Cir. 1991) ..................................................................................................25

*Polen v. API Grp. Life Safety USA, LLC*,
2025 WL 3251349 (D. Or. Nov. 21, 2025) .............................................................................12

*Richards v. Silver*,
433 So. 3d 433 (Fla. Dist. Ct. App. 2026) ..............................................................................17

*Russello v. United States*,
464 U.S. 16 (1983) ..................................................................................................................17

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ............................................................................................20, 21

*Sobremonte v. Superior Ct. (Bank of Am. Nat. Tr. & Sav. Ass'n)*,
61 Cal. App. 4th 980 (Cal. Ct. App. 1998) .............................................................................24

*Solis v. Prime Comms Retail, LLC*,
2025 WL 1255143 (C.D. Cal. Apr. 7, 2025) ..........................................................................13

*The Amalgamated Sugar Co. LLC v. Agri-Sys.*,
2021 WL 1093612 (D. Idaho Mar. 22, 2021) .........................................................................24

*Valles v. Victor Valley Wastewater Reclamation Auth.*,
2016 WL 11742789 (C.D. Cal. June 7, 2016) ........................................................................14

*Voting Integrity Project, Inc. v. Keisling*,
259 F.3d 1169 (9th Cir. 2001) ...................................................................................16

*In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*,
737 F.3d 1262 (9th Cir. 2013) ...................................................................................11

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023)........................................................................13

*Yu v. Gao*,
2026 WL 1180470 (9th Cir. Apr. 30, 2026) ..............................................................25

**Statutes & Rules**

9 U.S.C. § 1..................................................................................................................11

9 U.S.C. § 2..................................................................................................................16

9 U.S.C. § 10................................................................................................................11

9 U.S.C. § 401.................................................................................................12, 14, 15, 16

9 U.S.C. § 402........................................................................................................11, 12

9 U.S.C. § 403..............................................................................................................16

Cal. Gov't Code § 12923(b)........................................................................................14

California Fair Employment and Housing Act ............................................................14

Ending Forced Arbitration Act ........................................................................... *passim*

Local Rule 36-3(a) .......................................................................................................25

U.S. Const. amend. I ....................................................................................................11

**Other Authorities**

Dave Simpson, *Facebook, Google Won't Make Harassed Workers Arbitrate*,
Law360 (Nov. 9, 2018)
https://www.law360.com/articles/1101035/facebook-google-won-t-make-
harassed-workers-arbitrate...............................................................................................4

Douglas MacMillan, *Facebook to End Forced Arbitration for Sexual-Harassment
Claims*, Wall St. J. (Nov. 9, 2018)
https://www.wsj.com/articles/facebook-to-end-forced-arbitration-for-sexual-
harassment-claims-1541799129 ...............................................................................4

The White House, *Ending the Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021* (Mar. 3, 2022) https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2022/03/03/remarks-by-vice-president-harris-at-signing-of-h-r-4445-ending-the-forced-arbitration-of-sexual-assault-and-sexual-harassment-act-of-2021/ ................................................................................................................12

# INTRODUCTION[1]

Meta's motion to compel arbitration (the "Motion") is the mirror image of Plaintiff Sarah Wynn-Williams's pending motion for a preliminary injunction. The Court should grant the preliminary relief Ms. Wynn-Williams requests and deny this Motion. As an initial matter, Meta seeks to stay claims that are indisputably not subject to arbitration, including Ms. Wynn-Williams's motion pursuant to the Federal Arbitration Act ("FAA") to vacate the Interim Award issued in the underlying Arbitration, which raises serious constitutional issues and which Meta has been exploiting to threaten Ms. Wynn-Williams and chill her speech. More broadly, none of Ms. Wynn-Williams's claims are arbitrable because she has properly asserted her rights under the Ending Forced Arbitration Act ("EFAA"). That federal statute permits her to render unenforceable any predispute arbitration agreement that purports to compel her to arbitrate claims related to sexual harassment. Those claims need not themselves *be* sexual harassment claims for the EFAA to apply; they need only relate to sexual harassment as a class of conduct (as the claims between these parties do). Because the arbitration agreement at issue here was signed in September 2017 and this dispute arose in March 2025, that agreement is a predispute arbitration agreement to which the EFAA applies. Ms. Wynn-Williams is well within her federal statutory rights to assert the EFAA and render that agreement unenforceable as to this case.

Regardless, Meta is estopped by its own conduct from compelling arbitration of this matter. In November 2018, just over a year after terminating Ms. Wynn-Williams and forcing her to sign the Severance Agreement, Meta announced to the world that it would no longer force arbitration of claims related to sexual harassment. Meta presented this announcement to the world as a turning point for its employment policies and the right thing to do. When Ms. Wynn-Williams learned of it, she took Meta at its word. In April 2024, she filed a whistleblower complaint with the Securities and Exchange Commission ("SEC"). In March 2025, she filed a whistleblower complaint with the Department of Justice ("DOJ"). Also in March 2025, she published *Careless People*, revealing Meta's heinous and repugnant corporate behavior (including, for the first time, her experience with

---

[1] Undefined terms herein have the meaning assigned in Ms. Wynn-Williams's Complaint, ECF 1.

rank sexual harassment from her supervisors). Ms. Wynn-Williams did so safe in the belief—based on Meta's public promise—that she would be able to litigate these allegations in a judicial forum if necessary. Meta may not now renege on that promise and compel Ms. Wynn-Williams to arbitration.

Ms. Wynn-Williams has asserted and carefully preserved these objections at every step beginning with her very first appearance in the Arbitration in March 2025 all the way through the filing of her complaint in this matter. Meta's contention that she has somehow waived objections she has continuously and conspicuously invoked is meritless. Meta launched settlement talks in April 2025 that stretched through the last fourteen months until almost the eve of Ms. Wynn-Williams's federal court filing. Through those negotiations, Ms. Wynn-Williams has continued to participate in minimal proceedings in the Arbitration solely to preserve her rights, a position Ms. Wynn-Williams has documented in papers and communications with both Meta and the Arbitrator at every opportunity. In these papers, Ms. Wynn-Williams went so far as to state expressly that the only reason she had not filed an action in court was because the parties were engaged in protracted settlement discussions. When those settlement talks recently concluded without success, she did what she has been saying for months she would do in that scenario: she filed this federal court action. It is thus no surprise that even the Arbitrator on July 9 declared his view that Ms. Wynn-Williams's participation in the Arbitration was "not a waiver."

Meta seeks to keep the parties' claims in the Arbitration because as long as that is the case—and the unconstitutional Interim Award remains in place—Meta can prevent Ms. Wynn-Williams from speaking the truth about Meta's misconduct and besiege her livelihood as a public policy expert. Notwithstanding that the merits hearing is scheduled for October 2026, Meta knows the parties have only just begun document discovery and still must (but have not started to) negotiate any search protocols, search terms, or custodians for document productions; notice and take all depositions; disclose and exchange experts and expert reports; and negotiate the procedures of the upcoming merits hearing. Meta's Motion, therefore, does not facilitate efficient resolution of this matter. Instead, like all of Meta's strategic maneuvers, including its choice to drag its feet in the parties' settlement talks, it is a play for further delay to maintain the status quo. Meta knows

that status quo favors Meta's interest in showing whistleblowers that it will retaliate, punish and seek to silence individuals for telling the truth. Meta's Motion should therefore be denied and, for the same reasons, the Court should grant Ms. Wynn-Williams's pending motion to preliminarily enjoin the Arbitration while the Court considers her claims against Meta.

## STATEMENT OF FACTS

### A. Ms. Wynn-Williams Endured Sexual Harassment While at Facebook Before Being Abruptly Terminated and Offered the Severance Agreement

Sarah Wynn-Williams was already an accomplished diplomat and public policy expert when she joined Facebook in 2011, ultimately rising to the role of Director of Global Public Policy. Wynn-Williams Decl. ¶¶ 3-5.[2] During her time at Facebook, Ms. Wynn-Williams was sexually harassed by her direct supervisor—Joel Kaplan, at the time Facebook's Vice President of Global Policy—and by Sheryl Sandberg, then Facebook's Chief Operating Officer. *Id.* ¶ 6. Ms. Wynn-Williams intentionally avoided reporting this harassment to protect her career from retaliation. *Id.* ¶ 7. When Facebook began investigating Mr. Kaplan anyway, she started compiling documents to submit to human resources, *id.* ¶¶ 8-10, but Facebook terminated her first, *id.* ¶ 11.

After terminating her, Facebook presented Ms. Wynn-Williams with the Severance Agreement—a contract she had no reasonable alternative but to sign. *Id.* ¶ 12; *id.* Ex. A. The Severance Agreement contains both a non-disparagement provision and an arbitration provision. The arbitration provision of the Severance Agreement states:

> The parties agree that any and all disputes arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration, before the American Arbitration Association ("AAA") in accordance with the Employment Arbitration Rules and Mediation Procedures, including its Optional Rules for Emergency Measures of Protection, to the extent not inconsistent with the terms of this Agreement. ... THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY. Notwithstanding the foregoing, this section will not prevent either party from seeking preliminary injunctive relief (or any other provisional remedy) from any court having jurisdiction over the parties and the subject matter of their

---

[2] References to the Wynn-Williams Declaration are to the Declaration of Sarah Wynn-Williams filed at ECF 41-27 in support of Plaintiff's Motion to Vacate Interim Arbitration Award and Motion for Preliminary Injunction.

dispute relating to this Agreement and the agreements incorporated herein by reference.

*Id.* Ex. A. at 7.  In exchange for agreeing to the Severance Agreement, Meta paid Ms. Wynn-Williams $580,000 up front and a further $200,000 if she complied with the Severance Agreement for the first 90 days after her termination.  *Id.* at 1-2.

**B.      Meta Publicly Committed Not to Compel Arbitration of Sexual Harassment Claims in Support of Free Expression**

Shortly after Ms. Wynn-Williams's termination, Meta announced to the world that it would no longer enforce the types of arbitration clauses it had included in the Severance Agreement with respect to sexual harassment claims.  On November 9, 2018, Meta's Vice President of People, Lori Goler, announced in the *New York Times* and other outlets that Meta would end this practice, calling it "a pivotal moment ... [and] the right thing to do."  *Id.* Ex. B.  Foreseeably, other news outlets covered and reiterated Meta's promise to the world.  *See, e.g.*, Douglas MacMillan, *Facebook to End Forced Arbitration for Sexual-Harassment Claims*, Wall St. J. (Nov. 9, 2018), https://www.wsj.com/articles/facebook-to-end-forced-arbitration-for-sexual-harassment-claims-1541799129 [https://perma.cc/5JP5-EK9U]; Dave Simpson, *Facebook, Google Won't Make Harassed Workers Arbitrate*, Law360 (Nov. 9, 2018) https://www.law360.com/articles/1101035/facebook-google-won-t-make-harassed-workers-arbitrate [https://perma.cc/7RAC-9H38].  Meta's strategy had its intended effect: Ms. Wynn-Williams learned of it through the *New York Times*'s reporting in November 2018.  Wynn-Williams Decl. ¶ 15.  Similarly, in a proxy statement in 2022, Facebook announced that it did not and would not require employees to remain silent about, and in fact encouraged them to disclose, unlawful workplace conditions—like sexual harassment.  Compl. ¶¶ 87-88; Wynn-Williams Decl. ¶¶ 22-23; *id.* Ex. D.  Ms. Wynn-Williams was involved in the shareholder advocacy effort that led to this proxy statement and had direct knowledge of it.  Wynn-Williams Decl. ¶¶ 22-23.

**C.      Ms. Wynn-Williams Published *Careless People* and Meta Responded with a Retaliatory Arbitration, Contradicting Its Public Promises**

Fearful of Meta's ability to invoke the nondisparagement clause in the Severance Agreement, Ms. Wynn-Williams refrained from speaking about the sexual harassment she had experienced while at Facebook.  Meta's public statements, however, provided Ms. Wynn-Williams with

an opportunity to finally speak about and thereby process the abuse she endured, including re-peated degrading comments and inappropriate sexualized behavior. *See, e.g.,* Compl. ¶ 28; Wynn-Williams Decl. Ex. H at 18. In 2024 and 2025, Ms. Wynn-Williams began to disclose what hap-pened to her, filing whistleblower complaints with the SEC and DOJ, respectively, breaking her silence to the government about the illegal conduct she had observed at Meta, including sexual harassment. Wynn-Williams Decl. ¶¶ 29-33. Ms. Wynn-Williams also wrote her memoir, *Care-less People*, which recounted in full the sexual harassment she experienced and misconduct she witnessed while employed at Meta.

*Careless People* was released in March 2025. *Id.* ¶ 34. In a brazen about-face from its promise to end compelled arbitration of sexual harassment disputes and encouragement for disclo-sure of unlawful workplace misconduct, Meta immediately launched a campaign to silence Ms. Wynn-Williams and force her into arbitration on grounds that her disclosure of sexual harassment violated her Severance Agreement. Meta obtained an *ex parte* preliminary arbitration award en-joining Ms. Wynn-Williams, as well as "her agents, servants, employees, attorneys, and any other person(s) or entities [] which she controls," from making any "disparaging, critical or otherwise detrimental comments" about Meta, regardless of their truth, and imposing an undefined prohibi-tion on "promoting" her book. O'Brien Decl. Ex. C at 3-4.[3]

### D. Ms. Wynn-Williams Objects to the Arbitration Early and Often, Participating Throughout Settlement Negotiations Solely to Preserve her Rights

Ms. Wynn-Williams objected to the jurisdictional basis for the Arbitration on the first date on which counsel appeared on her behalf. Because Ms. Wynn-Williams had lacked notice of the hearing on Meta's application for the Interim Award, Ms. Wynn-Williams immediately moved to vacate it, including by noting jurisdictional objections that meant "Meta cannot demonstrate a likelihood of success on the merits of its contractual claim" because, among other things, "the arbitration ... provision[] ... [is] unenforceable." O'Brien Decl. Ex. E at 1. Ms. Wynn-Williams then reiterated these and other objections to jurisdiction in her formal statement of objection filed

---

[3] References to the O'Brien Declaration are to the Declaration of Claire E. O'Brien filed at ECF 41-1 in support of Plaintiff's Motion to Vacate Interim Arbitration Award and for Preliminary Injunction.

on April 22, 2025.  Linhardt Decl. Ex. K.[4]  In conjunction with that statement of objection, Ms. Wynn-Williams filed a counter-demand in the Arbitration to preserve her claim that Meta had itself breached the Severance Agreement by disparaging her.  Linhardt Decl. Ex. J.  Macmillan, Ms. Wynn-Williams's publisher, had also objected to the Arbitration on the grounds that Macmillan was not a party at all to the Severance Agreement and therefore had not agreed to arbitrate any claims with Meta.  Because those objections would have no application to her and because of the urgent need to address the Interim Award's restrictions on her speech, Ms. Wynn-Williams encouraged the Arbitrator to consider first her own arguments that Meta had failed to demonstrate a likelihood of success in support of emergency relief.  Linhardt Decl. Ex. H at 3-4

Around the same time, Meta initiated settlement talks.  July 13, 2026, Stoughton Decl. ¶ 2.[5] The Arbitrator's first procedural order following from the parties' July 9, 2025, status conference ("Procedural Order 1"), memorialized this, stating that the parties were "currently engaged in settlement discussions."  July 13, 2026, Stoughton Decl. Ex. 10 ¶ 39.  He further stated that Ms. Wynn-Williams's counsel had informed him on June 3, 2025—just five days after the Arbitrator's appointment—that she was contemplating "parallel court proceedings ... to enjoin the Arbitration based on the asserted unenforceability of the [arbitration provision in the Severance Agreement]." *Id.* ¶¶ 13, 38.  Accordingly, when the Arbitrator in the same order found "that Section 16(d) [of the Severance Agreement] is the controlling arbitration agreement" he also expressly noted: "This determination is without prejudice to any motion by Respondent—before the Arbitrator or a court—that Section 16(d) is unenforceable." *Id.* ¶ 31.  Procedural Order 1 scheduled the merits hearing on Meta's claims for June 8-12, 2026. *Id.* at 15.

Ms. Wynn-Williams and Meta continued to engage in settlement talks from June to September of 2025, including in professional mediation; during this time, Ms. Wynn-Williams participated in the Arbitration solely as a means of preserving her rights.  For example, when Ms. Wynn-Williams submitted a letter brief to the Arbitrator on July 21, 2025, related to the scope of appro-

[4] References to the Linhardt Declaration are to the Declaration of Alex Linhardt filed at ECF 28-1 in support of Meta's Motion to Compel Arbitration and Stay Further Proceedings.

[5] References to the July 13, 2026, Stoughton Declaration are to the Declaration of Corey Stoughton filed at ECF 48-1 in support of Plaintiff's Opposition to Meta's Motion to Enlarge Time.

priate discovery under the arbitration provision in the Severance Agreement, Ms. Wynn-Williams included the following statement:

> As stated previously and consistently since the outset of this case, Respondent objects to arbitral jurisdiction on the grounds that the arbitration clause in the severance agreement is unenforceable. Respondent submits this letter brief to preserve her rights in this arbitration, but is not waiving her right to challenge the arbitrability of this dispute in court and/or in this arbitration. Respondent has refrained from filing a court action challenging arbitral jurisdiction and seeking declaratory and injunctive relief solely because the parties are engaged in ongoing settlement discussions.

Linhardt Decl. Ex. L at n.1. Ms. Wynn-Williams included that same express statement and objection in each of the discovery requests she served on Meta on September 12, 2025. July 20, 2026, Stoughton Decl. ¶ 3.[6]

The parties' settlement negotiations continued through the remainder of 2025 and into early 2026, and so Ms. Wynn-Williams continued to refrain from seeking declaratory and injunctive relief from a court. Apparently in agreement that the top priority was the parties' ongoing settlement talks, Meta did not serve a single discovery request until November 21, 2025, and, following service of those demands, the parties agreed to stay discovery in deference to their settlement talks. As the Arbitrator noted in his Procedural Order 2, issued on December 15, 2025, as of that date "no documents had been produced and no witnesses deposed." July 20, 2026, Stoughton Decl. Ex. C ¶ 2. In recognition of this fact and the fact that the parties were still engaged in settlement conversations, the Arbitrator postponed the scheduled merits hearing by four months to October 19-23, 2026. *Id.* at 4.

In early 2026, while settlement talks were active and discovery still stayed, Ms. Wynn-Williams's predecessor counsel was forced to withdraw because of an undisclosed and unwaivable conflict of interest. July 13, 2026, Stoughton Decl. ¶ 8. As an individual with limited resources, Ms. Wynn-Williams's search for new representation was a challenging task that took several months, particularly given the number of law firms that already represent Meta in various disputes. Selendy Gay PLLC appeared for Ms. Wynn-Williams in the Arbitration on April 16, 2026, and

---

[6] References to the July 20, 2026, Stoughton Declaration are to the Declaration of Corey Stoughton filed herewith.

the very next day re-engaged in settlement talks with Meta on behalf of Ms. Wynn-Williams and opposed Meta's motion for sanctions against Ms. Wynn-Williams for allegedly violating the Interim Award. *Id.* ¶¶ 9-10. These settlement conversations continued throughout April, May, and June of 2026. *Id.* Following the appearance of her new counsel, at the request of the Arbitrator, Ms. Wynn-Williams also participated in negotiations with Meta over a protective order to govern discovery in the Arbitration. Ms. Wynn-Williams did so to further preserve her rights and expressly maintained her objection to arbitral jurisdiction in the protective order the Arbitrator entered on June 15, 2026. Linhardt Decl. Ex. V at 1, n.1.

In mid-June 2026, settlement talks concluded without success. Only at that time—on June 22, 2026—did Meta serve responses and objections to Ms. Wynn-Williams's discovery requests, nine months after she had served them on September 12, 2025. On June 26, 2026, Meta also made its first production of documents in the Arbitration. Accordingly, as of this filing, just three months before the scheduled October 2026 merits hearing, as a result of the parties' protracted settlement discussions, the parties have only just begun document discovery; have not negotiated any search protocols, search terms, or custodians for document productions; have not taken or even noticed a single deposition; have not disclosed or exchanged any experts or expert reports; and have not negotiated any aspects of the upcoming merits hearing, nor has there been any litigation over the sufficiency or merits of the allegations in the case pleadings.

Meanwhile, on June 25, 2026, Ms. Wynn-Williams filed the Complaint in the above-captioned action—as her repeated objections to arbitral jurisdiction had plainly indicated she intended to do. July 13, 2026, Stoughton Decl. ¶ 11. The same day, Ms. Wynn-Williams applied to the Arbitrator for a stay of the Arbitration pending this Court's resolution of Ms. Wynn-Williams's motion for a preliminary injunction. On July 9, 2026, the Arbitrator held a conference with the parties to discuss Ms. Wynn-Williams's stay application. At that conference the Arbitrator stated that Ms. Wynn-Williams had repeatedly "registered" her objections to the Arbitration and that her "participation [wa]s not a waiver." July 20, 2026, Stoughton Decl. ¶ 2. In his order on July 10, 2026, the Arbitrator found that whether the Arbitration could continue was "for the district court to decide." July 13, 2026, Stoughton Decl. Ex. 9. at 3. Accordingly, the Arbitrator vacated all

interim deadlines in the Arbitration, set a tentative new briefing schedule to accommodate the noticed date for Meta's and Ms. Wynn-Williams's motions before this Court, and ordered the parties to provide "an update on the status of proceedings in the district court" by August 28. *Id.* at 4. At that time the Arbitrator would decide whether the Arbitration's schedule—including the October merits hearing—would need to "be adjusted if the status of the federal action so requires." *Id.*

## **ARGUMENT**

Meta's Motion is premature until the Court resolves the pending preliminary injunction motion, because the Severance Agreement containing the arbitration provision Meta seeks to enforce expressly preserves Ms. Wynn-Williams's right to seek a preliminary injunction in a court of competent jurisdiction. Regardless, Ms. Wynn-Williams's claims are not subject to arbitration for at least three independent reasons. First, federal statutes make clear that Ms. Wynn-Williams's Counts I (review of the Interim Award) and VII (invoking the EFAA) cannot be arbitrated under any circumstances, and this Court should deny the Motion at least as to those claims. Second, the EFAA—which Ms. Wynn-Williams has properly invoked—precludes arbitration of her claims. Third, Meta is estopped from forcing Ms. Wynn-Williams to arbitrate her claims. Meta's claim that Ms. Wynn-Williams waived her objections to arbitrability is irreconcilable with the facts. She consistently preserved her objections, took actions only to preserve her rights, and the passage of 15 months since Meta instigated the Arbitration is attributable to prolonged settlement discussions and delays in obtaining substitute counsel, not Ms. Wynn-Williams's assent to arbitration.

**I.      The Severance Agreement Expressly Preserves Ms. Wynn-Williams's Right to Seek a Preliminary Injunction in this Court**

Meta misleadingly excerpts language from the Severance Agreement to argue that Ms. Wynn-Williams "negotiated and agreed to arbitration." Mot. at 8. In fact, the Severance Agreement expressly carves out from the arbitration provision the very form of preliminary relief Ms. Wynn-Williams seeks from this Court: "Notwithstanding the foregoing, this section will not prevent either party from seeking preliminary injunctive relief (or any other provisional remedy) from any court having jurisdiction over the parties and the subject matter of their dispute related to this

Agreement and the agreements incorporated herein by reference." Mot. Ex. A at 7. Ms. Wynn-Williams has an unambiguous contractual right to seek a preliminary injunction from this Court (and therefore to brings claims underlying that injunction). Thus, at a minimum, the Court must consider Ms. Wynn-Williams's preliminary injunction motion before, or at least alongside, Meta's motion to compel arbitration.

Meta's claim that the Court need not address these issues because "the final merits hearing is in October 2026," Mot. at 16, gets this analysis backwards. The question before this Court is whether there should be any merits hearing in the Arbitration at all. Regardless, the Arbitrator has made clear that this Court must resolve these issues before that hearing takes place. And, because of the parties' protracted settlement negotiations (which Meta itself drew out at length), the parties have not engaged in the Arbitration process meaningfully for over a year, leaving significant work left to do before any final merits hearing.

## II.    Ms. Wynn-Williams's Claims Are Not Subject to Arbitration

Meta has failed to carry its burden to establish that "(i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable." *Echeverria-Corzan v. Michaels Stores, Inc.*, 2026 WL 668533, at *2 (N.D. Cal. Feb. 6, 2026). In assessing Meta's burden to establish these conditions, the Court "construes all facts and reasonable inferences in the light most favorable to" Ms. Wynn-Williams as "the non-moving party." *Molchanoff v. SOLV Energy, LLC*, 2024 WL 899384, at *2 (S.D. Cal. Mar. 1, 2024).

Meta has failed to carry its burden for at least three separate reasons. First, a motion to compel arbitration must be considered claim-by-claim, and Meta completely disregards federal statutes establishing that at least two of Ms. Wynn-Williams's claims cannot be arbitrated under any circumstances. Second, the EFAA applies to this case, Ms. Wynn-Williams has properly invoked that statute, and the arbitration provision in the Severance Agreement is therefore invalid and unenforceable as to every claim raised in the Complaint. Third, Meta is estopped by its own conduct and public statements from enforcing the arbitration provision in the Severance Agree-

ment.  The Severance Agreement does not delegate that question to the Arbitrator, and this Court should resolve it now in Ms. Wynn-Williams's favor.

### A. Federal Statutes Grant Ms. Wynn-Williams the Right to Bring Counts I and VII in Court

The Court should deny Meta's Motion at least as to Counts I and VII because federal statutes unambiguously establish that these claims cannot be arbitrated.  Count I asserts a claim for judicial review of the Interim Award under 9 U.S.C. § 10.  This is an expressly judicial form of relief.  *See In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 737 F.3d 1262, 1267 (9th Cir. 2013) (holding that availability of federal court review of arbitral award under 9 U.S.C. § 10 cannot be waived or otherwise eliminated by contract).  Ms. Wynn-Williams needs immediate relief from the unlawful Interim Award—relief she seeks in her motion to vacate the Interim Award, ECF 42—which continues to impair her First Amendment rights, as illustrated at the recent Hay Festival appearance and discussed more fully in her pending motions.  Similarly, Count VII brings a claim asserting her rights under the EFAA, which statute expressly states:

> The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

9 U.S.C. § 402(b).  This, too, is a claim that cannot be arbitrated (as the Arbitrator also recognized)—even where the parties purport to delegate it to an Arbitrator (which the parties here have not).  Meta fails to contend with these issues, and there is simply no basis to compel arbitration of these claims.  *See Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 703-04 (9th Cir. 2024) (conducting a claim-by-claim analysis to affirm grant of motion to compel arbitration as to some and reverse as to others).

### B. The EFAA Precludes Arbitration of This Dispute

In addition to forming the basis for Count VII, the EFAA also gives Ms. Wynn-Williams the unequivocal right to render the arbitration provision in the Severance Agreement unenforceable as to all of her claims.  The EFAA is an amendment to the FAA, 9 U.S.C. § 1, *et seq.*, that permits

victims of sexual harassment or assault—like Ms. Wynn-Williams—to avoid forced arbitration of cases related to their allegations of sexual harassment or assault. Enacted in March 2022, the EFAA was a response, in the words of Vice President Kamala Harris, to the fact that "[f]orced arbitration silences survivors of sexual assault and harassment. It shields predators instead of holding them accountable and gives corporations a powerful tool to hide abuse and misconduct. And it compels the people of our nation—and most often the women of our nation—to sign away one of their most fundamental rights: the right to seek justice in court." *Remarks by Vice President Harris at Signing of H.R. 4445, "Ending the Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021"*, THE WHITE HOUSE (Mar. 3, 2022) https://bidenwhitehouse.archives.gov/briefing-room/speeches-remarks/2022/03/03/remarks-by-vice-president-harris-at-signing-of-h-r-4445-ending-the-forced-arbitration-of-sexual-assault-and-sexual-harassment-act-of-2021/. Consistent with that message, the EFAA grants such individuals the right to invalidate any "predispute arbitration agreement" in a case "relate[d] to [a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402(a). This case fits squarely within the EFAA's scope and its policy purpose, and this Court should deny the Motion on that basis alone.

### 1. This Is a Case Related to a Sexual Harassment or Sexual Assault Dispute

Meta instigated this dispute because a former employee published a book recounting her experience of sexual harassment and assault at Facebook by senior Facebook executives. The EFAA thus applies to this dispute because it "relat[es] to" allegations of conduct "constitut[ing] sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4), such as "a nonconsensual sexual act or contact," *Polen v. API Grp. Life Safety USA, LLC*, 2025 WL 3251349, at *4 (D. Or. Nov. 21, 2025). Meta's retaliatory action to silence Ms. Wynn-Williams from speaking about the claims of sexual harassment and assault relayed in *Careless People* necessarily "relates to" those claims. *See Polen*, 2025 WL 3251349, at *5-6 (holding claims arising out of employer's response to plaintiff employee's discussion of her status as a sexual assault victim "related to" a sexual assault dispute). This may indeed be (in part) a "contract dispute," but it is a contract dispute related to allegations of sexual harassment and assault.

Ms. Wynn-Williams need not affirmatively "assert[] a cause of action for sexual harassment or hostile work environment" to fall within the protections of the EFAA. *Lee v. Marriott Int'l, Inc.*, 2025 WL 2689263, at *9 (N.D. Cal. Sept. 21, 2025). Thus, it does not matter that Ms. Wynn-Williams's preferred course for seeking justice was to file whistleblower complaints with the SEC and DOJ, testify before the Senate, and share her experiences in her book rather than file a legal complaint; regardless, this dispute "relates to" those experiences. Meta's own response to *Careless People* proves as much. When Ms. Wynn-Williams published the book, Meta's public response focused on rebuttals to her allegations that Mr. Kaplan had sexually harassed her. *See, e.g.*, Wynn-Williams Decl. Ex. J at 5 (Meta spokesperson Andy Stone reposting "I've known Joel Kaplan since 2000, in multiple professional and personal contexts. I've literally never—ever—seen or heard anything remotely like this from or about him.").

As courts in neighboring districts have recognized, "Congress' language and intent" demonstrates that a dispute need only involve "nonfrivolous claims relating to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication, be it a motion to dismiss, motion for judgment on the pleadings, motion for summary judgment, or trial." *Solis v. Prime Comms Retail, LLC*, 2025 WL 1255143, at *3 (C.D. Cal. Apr. 7, 2025) (quoting *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024)). Meta cites *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023), and *Johannessen v. JUUL Labs, Inc.*, 2024 WL 3173286 (N.D. Cal. June 24, 2024), for the proposition that the party resisting arbitration must allege a sexual harassment claim to invoke the EFAA. Mot. at 19. Courts around the country have roundly and rightly rejected this faulty reasoning from *Yost* and *JUUL Labs*. *See, e.g.*, *Diaz-Roa*, 757 F. Supp. 3d at 533; *Solis*, 2025 WL 1255143, at *3; *Butler v. JSerra Catholic High Sch.*, 2025 WL 4057443, at *3-4 (C.D. Cal. Sept. 10, 2025); *Lee*, 2025 WL 2689263, at *10 (discussing that parties need not include a sexual harassment claim to get EFAA protection).

Ms. Wynn-Williams more than pleads nonfrivolous claims related to conduct alleged to constitute sexual harassment.[7] Ms. Wynn-Williams alleges that her whistleblower complaints to

---

[7] Other courts have at times imposed a plausibility standard on the allegations related to sexual harassment. Any concern with plausibility pleading is irrelevant where, as here, Meta, not Ms.

the SEC and DOJ as well as her book *Careless People* detail Mr. Kaplan's and Ms. Sandberg's sexual harassment of Ms. Wynn-Williams, including their nonconsensual sexual acts directed at her. *See* Compl. ¶ 28 (Mr. Kaplan emailed Ms. Wynn-Williams a vulgar reference to a sex act while she was preparing for her citizenship test); *id.* ¶ 32 (Mr. Kaplan called Ms. Wynn-Williams "sultry" and began grinding into her from behind on the dance floor at a corporate offsite); *id.* ¶ 33 (Ms. Sandberg repeatedly told Ms. Wynn-Williams—then seven months pregnant—to "come to bed" on a flight and later stated she "should have got into bed"); *id.* ¶ 41 (Mr. Kaplan logged into a video call from his bed and repeatedly asked if it made Ms. Wynn-Williams "feel uncomforta-ble"); *id.* ¶ 42 (Mr. Kaplan repeatedly asked Ms. Wynn-Williams where she was "bleeding from" regarding her post-surgical complications and became angered when she refused to answer); *id.* ¶ 44 (Mr. Kaplan asked Ms. Wynn-Williams to "explain breastfeeding" to him, questioned her about her breasts and how she would "get the milk out," and sent breast pumps to her home). These acts also "constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Ms. Wynn-Williams's Complaint would (but regardless does not need to) state a claim for sexual harassment under California law—the law of the state in which she was em-ployed at the time. *See Valles v. Victor Valley Wastewater Reclamation Auth.*, 2016 WL 11742789, at *4 (C.D. Cal. June 7, 2016) (denying motion to dismiss California state law sexual harassment claim where supervisor made repeated sex-based and sexual comments to plaintiff);[8]

Wynn-Williams, is the one asserting affirmative claims arising out of the sexual harassment dis-pute. Regardless, for all the reasons to follow, Ms. Wynn-Williams meets that standard as well.

[8] Indeed, the California legislature has codified a low standard for such claims under California law and rejected the higher standard that applies under federal law in this circuit:

> A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment. In that regard, the Legislature hereby de-clares its rejection of ... the 9th Circuit's opinion in *Brooks v. City of San Mateo* (2000) 229 F.3d 917 and states that the opinion shall not be used in determining what kind of conduct is sufficiently se-vere or pervasive to constitute a violation of the California Fair Em-ployment and Housing Act.

Cal. Gov't Code § 12923(b).

*Linkenhoker v. Rupf*, 2007 WL 9810910, at \*1, \*7 (N.D. Cal. Nov. 30, 2007) (denying summary judgment for defendants on allegations that a deputy sheriff sexually harassed an inmate by "grinding on her back" for 8-10 seconds and engaging in a pattern of comments that "could be found by a jury to be a continuous manifestation of sex-based animus").

Meta's argument that this case is unrelated to any sexual harassment dispute thus finds no support in the text of the EFAA or the case law interpreting it. To conclude otherwise, moreover, would punish victims of workplace sexual harassment who opt not to instigate legal battles against their employers (for any of the many good reasons victims choose not to do so) and find themselves nonetheless dragged into a dispute relating to their decision to speak about harassment by the very coercive employment agreements the EFAA was meant to address.

### 2.    The Severance Agreement Is a "Predispute Arbitration Agreement"

The Severance Agreement is a predispute arbitration agreement to which the EFAA applies because it is an "agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). This is so for two independent reasons: First, the dispute Meta seeks to compel to arbitration indisputably did not arise until Ms. Wynn-Williams published *Careless People* and Meta alleged that doing so breached her obligations under the Severance Agreement. That dispute naturally had not arisen at the time the parties executed the Severance Agreement. Second, and regardless, under this circuit's precedent no dispute arose between Ms. Wynn-Williams and Meta in 2017 as to Mr. Kaplan's or Ms. Sandberg's sexual harassment of her.

### a.    This Dispute Arose After the Execution of the Severance Agreement, Rendering that Agreement a Predispute Arbitration Agreement

The EFAA's reference to "predispute arbitration agreements" forecloses any agreement that purports to grant either party a right to compel arbitration of any future-arising dispute, while preserving the option for parties to resolve a live dispute by arbitration if they mutually agree to do so. The question is thus whether the particular dispute before the Court arose before or after the parties executed the agreement to arbitrate. Here, the dispute before the Court arose in March 2025 when Meta initiated a dispute by invoking the Severance Agreement to claim that Ms. Wynn-

Williams must be restrained from speaking about her experience of sexual harassment and assault at Facebook and pay damages for having done so. *See* Linhardt Decl. Ex. D at 3 ("This Demand arises from Respondent Sarah Wynn-Williams' unlawful disparagement of Claimant Meta Platforms, Inc. ... and its employees and executives in a published book entitled *Careless People* ... as well as her misappropriation and misuse of Claimant's confidential information, and her breaches of contract in that regard."). The Severance Agreement is therefore a predispute arbitration agreement under the EFAA.

This understanding flows directly from the text of the EFAA and the keystone provision of the FAA, 9 U.S.C. § 2, which classifies the arbitration agreements it seeks to protect by reference to two categories: (1) "[a] written provision … to settle by arbitration a controversy thereafter arising out of [a] contract or transaction, or the refusal to perform the whole or any part thereof," and (2) "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal." Consistent with this temporal distinction, the EFAA creates an exception to the FAA's guarantee of enforceability for the first type of "predispute" agreement, *id.* § 401(1)—an "agreement to settle by arbitration a controversy thereafter arising"—and excludes only an agreement "to submit to arbitration an existing controversy." *Cf. Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001) (courts have "a duty to construe statutes harmoniously"). There is no argument that the Severance Agreement qualifies as the latter type of arbitration agreement, and thus no basis to claim this dispute falls outside of the EFAA.

Because *this* dispute arose after the Severance Agreement was signed, the question of when or if a sexual harassment dispute between Ms. Wynn-Williams and Meta arose before the Severance Agreement has no bearing on the application of the EFAA to this case. The text and structure of the EFAA demonstrates this was Congress's intended result. Congress specifically defined a "sexual harassment dispute" and a "sexual assault dispute," *see* 9 U.S.C. § 403(3) and (4), but then declined to incorporate those definitions into its definition of a "predispute arbitration agreement," *see* 9 U.S.C. § 401(1) to ensure the broad application of that term. And the operative provision of the EFAA invalidates application of any predispute arbitration agreement not merely to a sexual harassment dispute or sexual assault dispute itself (as those terms are defined) but more broadly to

any case that "relate[s] to" a sexual harassment or sexual assault dispute. Congress did not limit the statute's application to a "sexual harassment dispute" because it anticipated cases just like the one before this Court, in which a victim's decision to address her experience without instigating legal action results in the dispute taking a different form years after the original harassment or assault took place. If Congress meant for the EFAA to apply more narrowly and exclude a case like this one, it would have said so by cabining the statute to cover only its narrower definition of "sexual harassment dispute" and "sexual assault dispute." *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)).

For this reason, the Florida state District Court of Appeal for the Fourth District erred when, in the primary case upon which Meta relies, it held that the EFAA applies only to agreements signed "before any sexual harassment dispute arises." *Richards v. Silver*, 433 So. 3d 433, 440 (Fla. Dist. Ct. App. 2026). The *Richards* court erroneously focused on whether the sexual harassment, and the dispute the plaintiff raised over that harassment, had arisen before the parties signed their agreement to arbitrate and failed to recognize that a separate dispute arose when the moving party sought to compel arbitration of a dispute over whether one of them had breached the terms of their settlement agreement. *Id.* That Congress did not intend that result is evident from the fact that Congress deliberately drafted the EFAA to divorce the two concepts of a "sexual harassment dispute" and a case "related to" a sexual harassment dispute.

Meta's remaining authority is totally inapposite. In each, the court assessed whether the "dispute or claim ... ar[o]se or accrue[d] on or after" the effective date of the EFAA, not whether the agreement was itself a predispute arbitration agreement. *See Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 245 (3d Cir. 2025); *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 407-08 (6th Cir. 2025). Regardless, in each case the only "dispute" between the parties to which the EFAA potentially applied was itself a legal claim of sexual harassment or sexual assault, and the court concluded that those claims had arisen before the effective date of the EFAA. *See, e.g.*, *Cornelius*, 133 F.4th at 248; *Memmer*, 135 F.4th at 408; *see also Combs v. Netflix, Inc.*, 2026 WL

1974172, at *2 (9th Cir. July 8, 2026) (identifying the dispute at issue as Combs's complaint for "various state law claims of discrimination, harassment, and hostile work environment"). None of those cases address the scenario presented here, in which a dispute arises only after the arbitration agreement (and the effective date of the EFAA). *Memmer* is particularly instructive, as is the Ninth Circuit's recent opinion in *Combs*. In each, the court noted that "[t]he relevant question is when the parties became adverse to one another." *Combs*, 2026 WL 1974172, at *4 (quoting *Memmer*, 135 F.4th at 409). As pled here, the parties' adversity arose when Meta contended Ms. Wynn-Williams breached the Severance Agreement—not from any dispute relating to the underlying sexual harassment or sexual assault instigated by Ms. Wynn-Williams—and that adversity did not arise (and necessarily could not have arisen) before the agreement itself came about.

For the same reason, Meta's undeveloped (and therefore waived) argument that "any 'dispute' arose long before the EFAA's effective date," Mot. at 20, ignores the fundamental premise of Meta's own Motion: that this is a dispute which arose, at the earliest, when Ms. Wynn-Williams published *Careless People*, Meta asserted a right against her under the Severance Agreement, and Ms. Wynn-Williams registered her disagreement with that position. This occurred in March 2025 at the earliest. The Severance Agreement therefore contains a predispute arbitration agreement as applied to the dispute at issue here, and the EFAA applies.

          **b.**      **Regardless, no Dispute Existed Between the Parties in 2017, Independently Rendering the Severance Agreement a Predispute Arbitration Agreement**

For purposes of the EFAA, no "dispute" between Ms. Wynn-Williams and Meta arose prior to her termination in 2017. Under Ninth Circuit case law interpreting the EFAA, "in the particular context of an employer-employee relationship ... a 'dispute' arises 'when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, *and* the employer expressly or constructively opposes that position.'" *Combs*, 2026 WL 1974172, at *5 (quoting *Cornelius*, 133 F.4th at 247) (emphasis added). In short, both sides must take up a position adverse to the other to generate a dispute under the EFAA.

There certainly was no dispute between Meta and Ms. Wynn-Williams as to Ms. Sandberg—an entirely separate and distinct source of sexual harassment Ms. Wynn-Williams pleads in her Complaint. Ms. Wynn-Williams never filed a complaint with Meta or otherwise expressed disagreement as to Ms. Sandberg's conduct prior to Ms. Wynn-Williams's SEC whistleblower filing in April 2024 and not publicly until the publication of *Careless People* in 2025, nor does Meta contend that it ever investigated Ms. Sandberg's conduct or disagreed with any position Ms. Wynn-Williams had expressed. Accordingly, there could not have been a dispute between the parties before March 2025 as to Ms. Sandberg's sexual harassment of Ms. Wynn-Williams, *Combs*, 2026 WL 1974172, at *5, and that fact alone means the EFAA applies to this case.

Nor was there any dispute between Meta and Ms. Wynn-Williams as to Mr. Kaplan's sexual harassment either. Ms. Wynn-Williams makes clear in her Complaint and in her own sworn declaration, she meticulously "avoid[ed] reporting [Mr. Kaplan's and Ms. Sandberg's] harassment internally" to Meta because she feared "that Facebook would retaliate against [her] for doing so." Wynn-Williams Decl. ¶ 7. Nevertheless, Meta investigated Mr. Kaplan of its own accord. *Id.* ¶ 8. When Ms. Wynn-Williams learned of this investigation she began compiling documents and information, including a list of witnesses, to submit in support of it and even told Facebook executives she was doing so, but she was fired before she could submit all of that information. *Id.* ¶¶ 9, 11. Thus, when Facebook concluded on July 28, 2017, that "Mr. Kaplan had not engaged in harassment," it did so not in response to any formal complaint from Ms. Wynn-Williams and without the benefit of critical information she had told Facebook she was preparing to submit. Meta may have been investigating Joel Kaplan, but it never had an opportunity to examine or otherwise engage with Ms. Wynn-Williams's own allegations against him and others, because it instead terminated her, allegedly for reasons entirely separate from her intent to gather evidence related to Mr. Kaplan's behavior. There could not have been a "dispute" within the meaning of EFAA until Meta retaliated against Ms. Wynn-Williams for disclosing her experience to public. Meta did that for the first time in March 2025.

Meta's contention that Ms. Wynn-Williams "raised concerns regarding sexual harassment prior to her termination" and Meta "expressly disagreed with her," Mot. at 17-18, is therefore

wrong. Meta's "investigation and conclu[sion]," Mot. at 18, was neither in response to a formal complaint from Ms. Wynn-Williams nor conducted with the benefit of all of the information she was preparing to submit when she was fired. Instead, Meta's position would create the absurd and untenable result that an employer could avoid all application of the EFAA by simply investigating its employees for sexual harassment and declaring a no-harassment finding, thereby establishing a dispute ahead of time with any and all employees who might later complain of harassment by that individual. That cannot be the law.

### C. Meta is Estopped from Compelling Arbitration

Meta also cannot force Ms. Wynn-Williams into arbitration for a separate reason: Meta has made public statements disavowing this very application of an arbitration provision. Meta's statements amount to a clear and unambiguous promise on which Ms. Wynn-Williams reasonably and foreseeably relied to her detriment and Meta is estopped from forcing her into arbitration in violation of it. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012).

This issue is for a court to decide. An arbitration provision does not delegate questions of waiver (or the related doctrine of estoppel) to the arbitrator unless the arbitration provision (or the arbitration rules incorporated into it by reference) specifically and unambiguously say so, and the Ninth Circuit has found this delegation lacking in contracts with far more sweeping delegation language than the Severance Agreement. *Martin v. Yasuda*, 829 F.3d 1118, 1123-24 (9th Cir. 2016) (holding no delegation of waiver question where the arbitration provision stated, "All determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court."); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008) (holding no delegation of waiver question even where arbitration agreement incorporated AAA rules); *Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1237 (E.D. Cal. 2024) (holding no delegation of waiver question even where the arbitration provision stated, "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision" and incorporated the AAA rules). These cases recognize that the doctrine of waiver is a "first category" question "presumptively for a court and not an arbitrator to decide," *Martin*, 829 F.3d at 1123, because these issues raise the question of whether there is any agreement to arbitrate at

all, or whether, on the contrary, one party has "revoked the clause through ... waiver of the agreement to arbitrate," *Cox*, 533 F.3d at 1121.  Here, there is no clear and unambiguous delegation in the arbitration provision or the AAA rules.

Meta's 2018 press statement that it would "make arbitration an option, but not a requirement, for employees reporting a sexual harassment claim," Wynn-Williams Decl. Ex. B at 4, estops it from forcing Ms. Wynn-Williams into arbitration now for claims related to sexual harassment.

*First*, Meta made a clear and unambiguous promise that it was ending its policy of forcing arbitration of such claims.  Meta's 2018 press release was "definite enough that a court can determine the scope of the duty," and Meta's "limits of performance [were] sufficiently defined to provide a rational basis for the assessment of damages." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (Cal. Ct. App. 2011) (quotations omitted).  This Court can easily determine whether Meta is forcing arbitration of claims related to sexual harassment.  *Cf. Sateriale*, 697 F.3d at 792 (concluding that a publicly disseminated promise akin to an advertisement was sufficiently clear and definite to support a promissory estoppel claim).

*Second*, Ms. Wynn-Williams's reliance on Meta's promise was both reasonable and foreseeable.  *See Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1041 (Cal. Ct. App. 2010) (holding homeowner reasonably and foreseeably took out high interest and burdensome loan after bank employee told him they would delay foreclosure sale).  Ms. Wynn-Williams began speaking publicly about the sexual harassment she experienced at the hands of Mr. Kaplan and Ms. Sandberg only after Meta announced in 2018 that it would no longer enforce arbitration provisions in those circumstances and reconfirmed this in response to the shareholder resolution Ms. Wynn-Williams and her colleagues put to Meta's Board of Directors in 2022.  *See* Wynn-Williams Decl. ¶¶ 22-25; *id.* Ex. D at 70-71.  Ms. Wynn-Williams reasonably understood this policy change to mean that she could elect to have any dispute arising out of her sexual harassment revelations heard in open court rather than before an arbitrator.  Wynn-Williams Decl. ¶ 18.  Meta publicly lauded this very interpretation of its policy, claiming this policy change was a "pivotal moment for our industry" and "the right thing to do."  Wynn-Williams Decl. Ex. B at 2.  Ms. Wynn-Williams's reliance not "misguided belief or guileless action."  *Aceves*, 192 Cal. App. 4th at 227 (quotation omitted).

When Meta made this public statement, it was foreseeable that a former employee—who Meta knew had at one point been compiling evidence of Mr. Kaplan's harassing conduct—would rely on this new policy about the company's arbitration policies. *See Goffman v. Bank of Am., N.A.*, 2012 WL 6011906, at *5 (Cal. Ct. App. Nov. 29, 2012) (holding plaintiff's reliance reasonably foreseeable where the defendant bank knew from prior communications that the plaintiff was seeking to preserve an interest and had pursued earlier relief consistent with that goal).

*Finally*, Ms. Wynn-Williams has been injured as a result. Promissory estoppel "generally entitles a plaintiff to the damages [that would be] available on a breach of contract claim." *Aceves*, 192 Cal. App. 4th at 231. Forced arbitration amounts to irreparable injury. *Empros Cap. LLC v. Rosenbach*, 2020 WL 6684854, at *9 (N.D. Cal. Nov. 12, 2020) ("Being compelled to arbitrate claims without having agreed to arbitrate them is an irreparable injury."). Ms. Wynn-Williams has been injured because she has been forced to arbitrate this sexual harassment dispute in private rather than in the public arena of a courtroom. Ms. Wynn-Williams has also suffered damages, as she has not been able to promote *Careless People*, attend paid speaking engagements, or speak at some of the engagements she has participated in, all as a result of the injunction stemming from the improper arbitration. *See* Wynn-Williams Decl. ¶¶ 72-76.

## III.    Ms. Wynn-Williams Has Consistently Objected to the Arbitration and Has Participated Only to Preserve Her Rights

Ms. Wynn-Williams has objected to the arbitrability of this dispute from its earliest moments and meticulously preserved that objection at every step. She originally moved to vacate Meta's *ex parte* Interim Award on the grounds that Meta had failed to establish a likelihood of success on the merits, including because jurisdiction was improper. She recorded these objections in a formal statement of objection filed shortly thereafter, and she has expressly preserved that objection countless times, including in her April 22 counter-demand for arbitration filed to preserve her rights as to her own breach claim against Meta, Linhardt Decl. Ex. J at 1; again in a June 3 email to the Arbitrator sent just five days after his appointment in which she stated her intent to seek injunctive relief against the Arbitration, July 13, 2026, Stoughton Decl. Ex. 10, ¶ 13; again at the July 9, 2025, status conference before the Arbitrator as recorded in the July 28, 2025, Proce-

dural Order 1, *id.* ¶ 29; again in her July 21, 2025, letter brief to the Arbitrator in which she expressly referenced her intent to seek injunctive relief if settlement talks failed (as they now have), Linhardt Decl. Ex. L at 1, n.1; again in her September 12, 2025, discovery requests to Meta, July 13, 2026, Stoughton Decl. ¶ 7; again in her May 6, 2026, letter to the Arbitrator, Linhardt Decl. Ex. T at 1, n.1; again in the Protective Order entered in the Arbitration on June 15, 2026, Linhardt Ex. V at 1, n.1; and again in her June 26, 2026, responses and objections to Meta's discovery requests, July 20, 2026, Stoughton Decl. ¶ 4. In short, Meta's statement that Ms. Wynn-Williams only "just recently stated in a footnote to a letter that she preserves her objections to the arbitrator's jurisdiction" in a "late-timed attempt at preservation" because she has now "changed her mind," Mot. at 14-15 & n.5, is categorically false. Ms. Wynn-Williams has raised these objections and her intent to bring an action in court consistently and conspicuously.

Under binding *en banc* Ninth Circuit precedent, Ms. Wynn-Williams therefore has not waived those objections. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277-80 (9th Cir. 2002). Such a waiver requires "intentional relinquishment or abandonment of a known right." *Id.* at 1278-79 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Here, as in *Nagrampa*, Ms. Wynn-Williams "forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits of the contract claim. Thus, she did not waive her right to challenge the arbitrability of the dispute." *Id.* at 1280. In a terse footnote, Meta brushes off *Nagrampa* as inapposite, but this could not be further from the truth. Mot. at 15, n.5. Like the plaintiff in *Nagrampa*, Ms. Wynn-Williams participated in conference calls related to issues like scheduling orders and filed a "counter-demand and discovery requests ... to avoid losing her right to do so in the event the" parties' settlement negotiations failed.[9] *Nagrampa,* 469 F.3d at 1278. Indeed, many of Ms. Wynn-Williams's filings—like her July 21, 2025, letter brief to the Arbitrator and her September 12, 2025, discovery requests—expressly invoked a preservation of Ms. Wynn-Williams's rights pending settlement, *e.g.*, Linhardt Ex. V at 1, n.1; and Ms. Wynn-Williams's has intentionally preserved these objections and "never

---

[9] That the arbitral tribunal rejected Nagrampa's counter-demand for failure to pay the required fee made no difference in the Ninth Circuit's analysis. *Id.* at 1278.

withdr[awn] her original objections to the arbitration agreement," nor has she proceeded to an adjudication of the Arbitration on its merits, *Nagrampa*, 469 F.3d at 1278. Meta's authority for the idea that a party waives the right to object to arbitration by filing a counterclaim is inapposite.[10]

Meta relies extensively on Ms. Wynn-Williams's statements about the jurisdictional objections of her publisher Macmillan, whom Meta had also improperly named as a respondent in its arbitration demand. Mot. at 12-13. Macmillan is not and has never been a party to the Severance Agreement and objected to its inclusion in the Arbitration on that basis (and only that basis). July 20, 2026, Stoughton Decl. Ex. B. The resolution of Macmillan's objection to the Arbitrator's jurisdiction over it would have had no bearing at all on the Arbitrator's jurisdiction over Ms. Wynn-Williams. Ms. Wynn-Williams thus requested the Arbitrator address her own concerns— including Ms. Wynn-Williams's argument that Meta had failed to demonstrate a likelihood of success in support of the Interim Award—before proceeding to address her publisher's objections.

Meta does not cite a single case that supports its contention that a party can intentionally relinquish a known right despite re-invoking that right repeatedly while the parties discuss settlement—because that is not the law. *Nagrampa*'s distinction of Meta's own leading case is particularly instructive: "[I]n *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355 (9th Cir.1983) (per curiam), on which [Meta] bases its waiver argument, the plaintiff objected to arbitration after attending two hearings on the merits and after his employer had presented all of its evidence." *Nagrampa,* 469 F.3d at 1279; *see also* Mot. at 11-12 (citing *Fortune* for the proposition that "when a party has 'voluntarily participated' in arbitration 'over a period of several months,' let alone over a year, it should be estopped from 'deny[ing] the authority of the arbitrator'"). Meta's other authorities fare no better. In *George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*, 722 F.2d 1471, 1475 (9th Cir. 1984), the Ninth Circuit noted that its authority allows an individual to "preserve[] the jurisdictional question for judicial determination by making an ap-

---

[10] In *Sobremonte v. Superior Ct. (Bank of Am. Nat. Tr. & Sav. Ass'n)*, 61 Cal. App. 4th 980, 992 (Cal. Ct. App. 1998), *as modified* (Feb. 26, 1998), the California Court of Appeal noted, in *dicta* that filing a counterclaim is one of six factors courts consider under California arbitration law to assess waiver. And in *The Amalgamated Sugar Co. LLC v. Agri-Sys.*, 2021 WL 1093612 (D. Idaho Mar. 22, 2021), the party resisting arbitration had "never raised an objection" to the arbitration while nevertheless filing a counterclaim.

propriate reservation in conjunction with" participation—something *Nagrampa* re-affirms and Ms. Wynn-Williams expressly did. In *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725 (9th Cir. 1991), the party resisting arbitration made clear that it would seek judicial intervention only "in the event the arbitrator" first ruled against it on the jurisdictional question, which amounted to waiver of the right for a judicial determination. *Id.* at 725-26. And *Yu v. Gao*, 2026 WL 1180470 (9th Cir. Apr. 30, 2026), and *Law Offices of Richard E. Wilson, LLC v. Smith*, 2022 WL 16647769 (9th Cir. Nov. 3, 2022), are each unpublished and non-precedential decisions. *See* Ninth Circuit Local Rule 36-3(a). Regardless, in *Yu* the party resisting arbitration had himself "initiat[ed]" it. *Yu*, 2026 WL 1180470, at *1. In *Wilson*, the party's objection "was equivocal at best." *Wilson*, 2022 WL 16647769, at *1.

Perhaps most paradoxically, Meta asserts that Ms. Wynn-Williams's own "object[ions] to the arbitrability of Meta's claims" amounted to waiver because she included in those objections a request that the arbitrator "dismiss" Meta's claims as a result. Mot at 13. Meta contends (wrongly) that this objection means Ms. Wynn-Williams "submitted the question of arbitrability to the arbitrator for decision" and therefore waived her rights. *See id.* (quoting *Orion*, 946 F.2d at 725-26). Setting aside the absurd consequences of Meta's contention—no party could successfully object to arbitration if, by doing so, the party waived the right to object to arbitration—*Orion* does not stand for that proposition for all the reasons discussed above. Because Ms. Wynn-Williams objected to the arbitrability of this matter at the outset, has never withdrawn that objection, and has never proceeded to arbitration of this matter on the merits, she has not waived her objections to arbitrability or her right to have those objections heard in this forum.

## CONCLUSION

For the reasons set forth above, the Court should deny Meta's motion to compel arbitration.

Dated:    July 20, 2026                              Respectfully submitted,


                                                     */s/ Corey Stoughton*

ZEITGEIST LAW                                        SELENDY GAY PLLC
Marcia Hofmann                                       Philippe Z. Selendy*
505 Montgomery Street                                Jennifer M. Selendy*
San Francisco, CA 94111                              Claire E. O'Brien*
Telephone: 415-830-6664                              Corey Stoughton*
Email: marcia@zeitgeist.law                          Drake Reed*
                                                     1290 Avenue of the Americas
                                                     New York, NY 10104
                                                     Tel: 212-390-9000
                                                     pselendy@selendygay.com
                                                     jselendy@selendygay.com
                                                     cobrien@selendygay.com
                                                     cstoughton@selendygay.com
                                                     dreed@selendygay.com

                                                     * Admitted *pro hac vice.*
                                                     *Attorneys for Plaintiff Sarah Wynn-Williams*