Mathew S. Rosengart (SBN CA 255750)
Mark D. Kemple (SBN CA 145219)
Alex Linhardt (SBN CA 303669)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
rosengartm@gtlaw.com
kemplem@gtlaw.com
linhardta@gtlaw.com

Jonathan F. Cohn (DC 476551) (admitted *pro hac vice*)
Mary Elizabeth Miller (DC 252694) (admitted *pro hac vice*)
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
William T. Thompson (TX 24088531) (admitted *pro hac vice*)
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
LEHOTSKY COHN LLP
Telephone: (512) 693-8350
Facsimile: (512) 727-4755
jon@lehotskycohn.com
mary@lehotskycohn.com
will@lehotskycohn.com

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| SARAH WYNN-WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 4:26-cv-06341<br><br>**META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD**<br><br>Complaint Filed Date: June 25, 2026<br><br>Judge: Hon. Araceli Martínez-Olguín<br>Date: August 20, 2026<br>Time: 2:00 PM<br>Courtroom: Courtroom 5, 2nd Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    Wynn-Williams negotiated, executed, and breached the Severance Agreement.... 2

    B.    Wynn-Williams elected to arbitrate this contract dispute. ..................................... 3

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    THE COURT SHOULD DENY THE PRELIMINARY INJUNCTION MOTION. .......... 7

    A.    Wynn-Williams has not established a likelihood of success on the merits. ........... 7

        1.    The EFAA does not bar the arbitration. ......................................................... 7

        2.    The arbitration is not estopped. .................................................................. 15

    B.    Wynn-Williams has not established irreparable harm. ........................................ 16

    C.    Wynn-Williams has not established the other preliminary injunction factors. ...... 19

II.    THE COURT SHOULD DENY THE MOTION TO VACATE ..................................... 20

CONCLUSION ................................................................................................................. 25

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abernathy v. S. Cal. Edison*,
  885 F.2d 525 (9th Cir. 1989) ........................................................................................... 18

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ........................................................................................................... 23

*Baldwin v. TMPL Lexington LLC*,
  2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) ................................................................. 14

*Benisek v. Lamone*,
  585 U.S. 155 (2018) .......................................................................................................... 16

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,
  671 F.3d 635 (7th Cir. 2011) ........................................................................................ 6, 20

*Bosack v. Soward*,
  586 F.3d 1096 (9th Cir. 2009) .......................................................................................... 21

*Bushley v. Credit Suisse First Bos.*,
  360 F.3d 1149 (9th Cir. 2004) .......................................................................................... 19

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
  915 F.2d 1333 (9th Cir. 1990) .......................................................................................... 18

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
  2009 WL 1766595 (N.D. Cal. June 22, 2009) ...................................................... 18, 19, 20

*Combs v. Netflix, Inc.*,
  2026 WL 1974172 (9th Cir. July 8, 2026) ........................................................ 11, 12, 13, 15

*Cornelius v. CVS Pharmacy Inc.*,
  133 F.4th 240 (3d Cir. 2025) ............................................................................................ 12

*Corrales Law PC v. Equal Access Just. Fund LP*,
  2025 WL 2816789 (S.D. Cal. Sept. 5, 2025) .................................................................... 18

ii

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

*Ctr. for Food Safety v. Vilsack*,

    636 F.3d 1166 (9th Cir. 2011) ................................................................................................ 6

*Dan's City Used Cars, Inc. v. Pelkey*,

    569 U.S. 251 (2013)................................................................................................................ 11

*Diaz-Roa v. Hermes L., P.C.*,

    757 F. Supp. 3d 498 (S.D.N.Y. 2024)................................................................................... 12

*Dilts v. Penske Logistics, LLC*,

    769 F.3d 637 (9th Cir. 2014) ................................................................................................ 11

*Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*,

    822 F.2d 833 (9th Cir. 1987) ................................................................................................ 23

*Fisher v. Biozone Pharms., Inc.*,

    2017 WL 1097198 (N.D. Cal. Mar. 23, 2017)...................................................................... 23

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,

    724 F.2d 1355 (9th Cir. 1983) ................................................................................................ 9

*Gal v. Meta Platforms, Inc.*,

    2026 WL 1864073 (N.D. Cal. June 29, 2026) ..................................................................... 11

*Garcia v. Google, Inc.*,

    786 F.3d 733 (9th Cir. 2015) ................................................................................................ 17

*Gathers v. K&K Fam. Ventures, LLC*,

    2025 WL 1032252 (D.S.C. Feb. 19, 2025)........................................................................... 14

*GRK Fasteners Ltd. v. Bennett*,

    2004 WL 1211919 (D. Or. May 14, 2004) ........................................................................... 23

*Idaho v. Coeur d'Alene Tribe*,

    794 F.3d 1039 (9th Cir. 2015) .............................................................................................. 18

*ITT Telecom Prods. Corp. v. Dooley*,

    214 Cal. App. 3d 307 (1989) ................................................................................................ 22

iii

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

*J.H. v. Lawrenceville Sch.*,

    2026 WL 217593 (N.J. Super. Ct. App. Div. Jan. 28, 2026) ...................................................... 14

*Johannessen v. JUUL Labs, Inc.*,

    2024 WL 3173286 (N.D. Cal. June 24, 2024) ........................................................................... 11

*Kleist v. Credit Suisse (USA) LLC*,

    2026 WL 1507831 (N.D. Cal. May 29, 2026) ...................................................................... 16, 17

*Laks v. Coast Fed. Sav. & Loan Assn.*,

    60 Cal. App. 3d 885 (1976) ....................................................................................................... 16

*Lewis v. Tesla, Inc.*,

    2025 WL 2653639 (N.D. Cal. Sept. 16, 2025) ..................................................................... 7, 15

*Lorentzen v. Levolor Corp.*,

    746 F. Supp. 1228 (S.D.N.Y. 1990) .......................................................................................... 17

*Malem Med., Ltd. v. Theos Med. Sys.*,

    761 F. App'x 762 (9th Cir. 2019) .............................................................................................. 22

*Manhattan Cmty. Access Corp. v. Halleck*,

    587 U.S. 802 (2019) ................................................................................................................... 23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,

    571 F.3d 873 (9th Cir. 2009) ..................................................................................................... 16

*Mazurek v. Armstrong*,

    520 U.S. 968 (1997) ..................................................................................................................... 6

*Memmer v. United Wholesale Mortg., LLC*,

    135 F.4th 398 (6th Cir. 2025) .................................................................................................... 12

*Millennial Plastic Surgery PLLC v. James*,

    2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021) .......................................................................... 23

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,

    514 U.S. 645 (1995) .............................................................................................................. 11, 12

iv

*Nagrampa v. MailCoups, Inc.*,

469 F.3d 1257 (9th Cir. 2006) ............................................................................................ 9

*Naoko Ohno v. Yuko Yasuma*,

723 F.3d 984 (9th Cir. 2013) ............................................................................................ 23

*NCR Corp. v. Goh*,

2016 WL 9331287 (W.D. Wash. Feb. 4, 2016) ................................................................ 20

*Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*,

2006 WL 1428319 (M.D. Fla. May 17, 2006) .................................................................. 21

*Oakland Trib., Inc. v. Chronicle Publ'g Co.*,

762 F.2d 1374 (9th Cir. 1985) .......................................................................................... 17

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*,

935 F.2d 1019 (9th Cir. 1991) ............................................................................... 7, 20, 21

*Polen v. API Grp. Life Safety USA, LLC*,

2025 WL 3251349 (D. Or. Nov. 21, 2025)........................................................................ 11

*Postmates Inc. v. 10,356 Individuals*,

2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ................................................................... 19

*Powell v. SEC*,

149 F.4th 1029 (9th Cir. 2025) .......................................................................................... 23

*Ramirez v. Domino's Pizza Supply Chain*,

2024 WL 5452684 (D. Colo. Nov. 8, 2024) ........................................................................ 8

*Richards v. Silver*,

433 So. 3d 433 (Fla. Dist. Ct. App. 2026) ........................................................................ 14

*Roe v. Critchfield*,

137 F.4th 912 (9th Cir. 2025) .............................................................................................. 6

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,

679 F. App'x 33 (2d Cir. 2017) ......................................................................................... 23

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

*Sampson v. Murray*,

   415 U.S. 61 (1974) ................................................................................................ 18

*Sanchart Sec. Int'l, Inc. v. Gavaldon*,

   2012 WL 5471933 (S.D. Cal. Nov. 9, 2012) ...................................................... 19

*Scoggins v. Menard, Inc.*,

   2025 WL 1369010 (6th Cir. May 12, 2025) .......................................................... 8

*In re Sussex*,

   781 F.3d 1065 (9th Cir. 2015) ............................................................................ 20

*Swenson v. Bushman Inv. Props., Ltd.*,

   870 F. Supp. 2d 1049 (D. Idaho 2012) .............................................................. 21

*Thorup v. Dean Witter Reynolds, Inc.*,

   180 Cal. App. 3d 228 (1986) ............................................................................. 16

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,

   591 F.3d 1167 (9th Cir. 2010) .............................................................................. 6

*Winter v. Nat. Res. Def. Council, Inc.*,

   555 U.S. 7 (2008) ............................................................................................ 6, 16

*Yost v. Everyrealm, Inc.*,

   657 F. Supp. 3d 563 (S.D.N.Y. 2023) ............................................................... 10

**Statutes & Rules**

9 U.S.C. § 12 ............................................................................................................ 7, 21

9 U.S.C. § 401 ..................................................................................................... 10, 12, 14

9 U.S.C. § 402 ............................................................................................. 7, 10, 11, 12, 14

Cal. Civ. Proc. Code § 335.1 ......................................................................................... 10

Cal. Gov't Code § 12960 ............................................................................................... 10

Fed. R. Civ. P. 65 .......................................................................................................... 24

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

**Other Authorities**

Douglas MacMillan, *Facebook to End Forced Arbitration for Sexual-Harassment Claims*, Wall Street J. (Nov. 9, 2018), https://perma.cc/ZKC9-4XV2 .................................................... 15

Sarah Wynn-Williams, *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism* (2025) ............................................................................................................. 13

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

**INTRODUCTION**

After participating in arbitration for over 15 months, Plaintiff Sarah Wynn-Williams filed this lawsuit seeking extraordinary and unwarranted relief: an order vacating an interim arbitral award entered long ago ("Interim Award," *see* Decl., Ex. A) and a preliminary injunction halting arbitration proceedings that will conclude in October. Her requests are foreclosed by waiver, the unambiguous terms of her binding contract ("Severance Agreement," *see* Decl., Ex. B), and federal law. This Court should therefore deny both her motion to vacate the Interim Award and her motion for a preliminary injunction.

*First*, Wynn-Williams waived her ability to challenge the arbitration and Interim Award in this forum. She participated in the arbitration for over 15 months, filing a counterclaim for breach of contract, propounding over 140 discovery requests, and repeatedly seeking relief from the arbitrator. At no point during that time did she seek to move this case to court. To the contrary, she made clear that she wanted the arbitrator (not a court) to rule on the issues she raised, including arbitrability. She cannot now, after receiving unfavorable rulings in the arbitration, change tactics.

*Second*, Wynn-Williams and Meta agreed nearly a decade ago that any disputes relating to her Severance Agreement would be resolved in arbitration. In exchange, Wynn-Williams (represented by experienced counsel) agreed not to disparage Meta and received $780,000 plus other benefits—all of which she has retained since negotiating and signing her Severance Agreement. She cannot now evade the contractual obligations she agreed to, including the parties' agreement to arbitrate contractual disputes. And her estoppel arguments fail as a matter of law.

*Finally*, Wynn-Williams contends the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") and the First Amendment bar the arbitration, but her late-breaking arguments fail at every turn. Even setting aside her repeated waivers and election to proceed in arbitration, neither the EFAA nor the First Amendment is remotely implicated. Wynn-Williams ignores binding Ninth Circuit authority. Ultimately, this is a contract dispute concerning Wynn-Williams' flagrant violations of her Severance Agreement. It has nothing to do with sexual harassment, nor the Constitution. The Court should deny both motions.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

## BACKGROUND

**A.      Wynn-Williams negotiated, executed, and breached the Severance Agreement.**

Wynn-Williams is a former Director of Global Public Policy at Meta. She was terminated in 2017 for performance reasons. She retained experienced employment counsel and negotiated a lucrative Severance Agreement, under which she received $780,000 and other benefits, including payment of her attorneys' fees. *See* Severance Agreement § 2. As part of the intensive contract negotiations, her counsel substantively revised the Severance Agreement, including the arbitration and non-disparagement provisions at issue. Dkt. 28-2 ¶¶ 3-5.

In exchange for the substantial benefits she received, Wynn-Williams agreed to arbitrate "any and all disputes" arising out of the Severance Agreement, and agreed "not to make disparaging, critical or otherwise detrimental comments to any person or entity concerning the Company, its officers, directors or employees." Severance Agreement §§ 9, 16(d). The Severance Agreement, however, allows Wynn-Williams to communicate with government agencies and to testify under oath. *Id.* § 4. Wynn-Williams did exactly that multiple times, filing complaints with the Securities and Exchange Commission in April 2024 and the Department of Justice in March 2025, and testifying before the Senate in April 2025. Dkt. 41 at 6, 9.

For seven years after she negotiated her Severance Agreement, Wynn-Williams never contended that it was void or unenforceable. But, on March 5, 2025, Meta learned that Wynn-Williams intended to imminently release a book about Meta called *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*. *See* Decl., Ex. C at 5. The 382-page book, published less than a week later, is replete with false and disparaging statements about Meta and its current and past employees—plain violations of Wynn-Williams' Severance Agreement.[1] *See* Decl., Ex. D at 5-6 (sampling such disparaging statements). Wynn-Williams did not tell Meta she was doing this. She did not assert that the Severance Agreement was void before publishing her book. Nor did she offer to return the $780,000 (plus attorneys' fees) in severance pay that she had negotiated and

---

[1]    Although many statements in the book are false, falsity is not at issue. This breach of contract case turns on Wynn-Williams' breach of the Severance Agreement's non-disparagement clause.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

received. She instead decided to willfully breach her contract—publishing a book that is themed around disparaging Meta—while keeping all the money and benefits provided by her contract.

**B.      Wynn-Williams elected to arbitrate this contract dispute.**

On March 7, 2025, shortly after learning of the book and Wynn-Williams' breach of the Severance Agreement, Meta filed a demand for arbitration and an application for emergency relief with the American Arbitration Association/International Centre for Dispute Resolution against Wynn-Williams and her publisher. *See* Decl., Exs. C, E; *see* Decl., Ex. D. The emergency arbitrator held a hearing, which Wynn-Williams' publisher attended. Wynn-Williams did not attend, despite having (at minimum) constructive notice. *See* Dkt. 28 at 4 n.3. Following the hearing, the arbitrator issued an Interim Award, finding Meta was likely to succeed on the merits of its breach of contract claim. *See* Interim Award at 3-4. Pursuant to the carefully negotiated terms of the Severance Agreement to which Wynn-Williams agreed, the Interim Award prohibits Wynn-Williams and those under her control from making "any 'disparaging, critical or otherwise detrimental comments to any person or entity concerning [Meta], its officers, directors or employees,'" from "further promoting *Careless People*," and (to the extent within her control) from "further publishing or distributing *Careless People*" or "amplifying or repeating" previous disparaging statements. *Id.*

On March 18, 2025, Wynn-Williams, represented by counsel, moved in the arbitration to vacate the Interim Award. In the filing, she challenged the enforceability of the Severance Agreement, including the non-disparagement and arbitration provisions that her own counsel had negotiated and revised in 2017. *See* Decl., Ex. F. She did not, however, argue that the Interim Award violated the First Amendment. Nor did she contest the emergency arbitrator's authority to rule on the arbitrability question. To the contrary, she specifically sought a ruling *from the arbitrator* regarding whether the arbitration clause was valid. *See generally id.*; *see also* Decl., Ex. G at 3-4 (asking arbitrator to defer ruling on publisher's challenge to arbitrator's jurisdiction, including objection to arbitrator's authority to decide arbitrability). After providing her counsel ample opportunity to brief and orally argue the issues, the emergency arbitrator addressed all the arguments Wynn-Williams raised. Unpersuaded, the emergency arbitrator again ruled for Meta on

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

March 31, 2025, denying Wynn-Williams' motion in a 16-page decision. *See* Decl., Ex. H.

Wynn-Williams subsequently filed an answer, counterclaim, and objections to arbitrability in the arbitration, contending that Meta had breached the contract she now contends is void. Her filings rehashed her prior arguments that the Severance Agreement and its arbitration provision are unenforceable. Notably, yet again, she did not object to the arbitrator's authority to decide questions of arbitrability. *See* Decl., Ex. I. To the contrary, Wynn-Williams again specifically asked *the arbitrator* to rule on her "object[ion]s to the arbitrability of Meta's claims" by ordering that "Meta's Amended Demand for Arbitration be dismissed." Decl., Ex. J at 20.

The parties selected a merits arbitrator in May 2025, and for the next year, Wynn-Williams actively participated on the merits in the arbitration—without electing to seek judicial relief or preserving any right to do so. Through a succession of five law firms, she attended hearings, met and conferred with opposing counsel, and submitted briefs seeking resolution of issues the parties could not resolve, including on discovery. *See* Decl. ¶ 27 & Ex. K. Nearly a year ago, Wynn-Williams' prior counsel informed the arbitrator that she was considering filing a motion in court to enjoin the arbitration. Decl., Ex. L ¶ 22. Counsel ultimately elected not to do so. The parties participated in mediation, but they continued to engage in discovery during that time. *See* Dkt. 48-1 ¶ 7. Wynn-Williams propounded voluminous discovery requests on Meta (including 73 requests for admission, 59 requests for production, and 11 interrogatories). *See* Decl. ¶ 28. Earlier this year, Wynn-Williams' counsel withdrew due to a conflict, but the parties and arbitrator continued to move the proceedings forward. The arbitrator specifically rejected Wynn-Williams' request for a stay. *See* Decl., Ex. O at 5, 11. After status conferences and other communications with the arbitrator, Wynn-Williams secured new counsel. Her new counsel communicated with Meta's counsel regarding the status of written responses. *See* Decl. ¶ 30.

In March 2026, Wynn-Williams again breached her Severance Agreement while keeping the money and benefits. Specifically, and in direct violation of the Interim Award, she participated as a guest speaker in a series of events at Waterstones (a U.K. national bookstore chain) to promote and sell her book. Decl., Ex. N at 1-3. The tour was a violation of the Interim Award, which

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

prohibited Wynn-Williams from disparaging Meta and its current and former employees by "promoting *Careless People* … on a book tour or otherwise." Interim Award at 4. Meta moved for sanctions.

In an email to the arbitrator on March 6, 2026, Wynn-Williams acknowledged she had participated in speaking engagements at the bookstores but represented she had "no further public speaking engagements." Decl., Ex. O at 1. One business day later, the Hay Festival in Wales (an international book festival) announced that Wynn-Williams would be participating in an event with other Meta critics. Decl., Ex. P at 1. And on May 31, 2026, she appeared as advertised, sitting on stage between two notorious Meta critics while they praised her book in a promotional stunt that resulted in substantial book sales to Wynn-Williams' benefit, all based on her breach of the Severance Agreement and Interim Award. Decl., Ex. P at Exs. C, E.

The parties briefed the merits of Meta's sanctions application in the arbitration. *See* Decl., Exs. M, X. On April 3, 2026, Wynn-Williams' current counsel of record appeared in the arbitration. Decl., Ex. Q at 2. The next month, after a status conference, the parties submitted reports concerning procedural issues and potential motion practice in the arbitration. Meta requested that the arbitrator accelerate the merits hearing date currently scheduled for October 2026. Decl., Ex. R at 1. Wynn-Williams, meanwhile, "strongly oppose[d] any acceleration of the merits hearing." Decl., Ex. S at 2. Instead, she sought leave to file a motion to dismiss the arbitration demand nearly 14 months after the demand was filed. *Id.* at 1. She also suggested that Meta's "sanctions application [was] inextricably intertwined with the merits," meaning any determinations by the arbitrator as to whether she had violated the Interim Award would be "improper and premature." *Id.* at 2. The arbitrator ultimately concluded that the merits hearing should proceed in October 2026 as scheduled, denied Wynn-Williams' request for leave to file a motion to dismiss, and deferred ruling on Meta's sanctions application as Wynn-Williams requested. Decl., Ex. T at 1.

Meanwhile, the parties continued to actively negotiate discovery. Wynn-Williams negotiated a protective order for seven weeks, exchanging redlines and submitting disputed issues

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

to the arbitrator twice before the arbitrator entered the protective order on June 15, 2026. Decl. ¶ 29 & Ex. U. The parties further communicated about the timing of discovery responses and agreed to a mutual exchange of written discovery responses and objections. Meta served its responses and its document production. *Id.* ¶ 30. One day after filing this lawsuit, Wynn-Williams served responses and objections to Meta's discovery requests in the arbitration. *Id.*

On June 25, 2026, after more than 15 months of participating in the arbitration, Wynn-Williams filed this lawsuit. Among other claims, she seeks declaratory relief on the same bases already articulated and repeatedly rejected in the arbitration proceedings, namely an order declaring that numerous provisions in the Severance Agreement are void and staying or vacating the Interim Award previously entered in the arbitration proceedings. *See* Dkt. 1 at 56-57.

## LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). That burden requires Wynn-Williams to satisfy four factors: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Likelihood of success on the merits is the most important" factor. *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) (citation omitted). "In the absence of 'serious questions going to the merits,' the court need not consider the other factors." *Id.* (citation omitted). Likewise, where the movant has "failed to show that they are 'likely to suffer irreparable harm,'" a court "need not address … the remaining elements of the preliminary injunction standard." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (citation omitted).

The "exclusive grounds for vacating an arbitration award" are set forth in 9 U.S.C. § 10(a). *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 U.S. 1167, 1173 (9th Cir. 2010). Judicial review in arbitration "comes at the beginning or the end, but not in the middle." *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638-39 (7th Cir. 2011). Mid-arbitration review is the

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

rare exception and should be "indulged" only in "extreme cases." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*, 935 F.2d 1019, 1022 (9th Cir. 1991) (citation omitted). A party seeking vacatur of "an award" must move for vacatur "within three months after the award is filed or delivered." 9 U.S.C. § 12.

**ARGUMENT**

**I.      THE COURT SHOULD DENY THE PRELIMINARY INJUNCTION MOTION.**

This Court should deny Wynn-Williams' motion for a preliminary injunction because she cannot satisfy a single one of the preliminary injunction factors, let alone all four.

**A.      Wynn-Williams has not established a likelihood of success on the merits.**

The likelihood-of-success factor begins and ends the preliminary injunction analysis here. Wynn-Williams seeks relief from this Court because supposedly "the EFAA bars [the arbitration] as a matter of law" and that "Meta's own public disavowal independently estops" the arbitration. Dkt. 41 at 2. She is wrong on both fronts and disregards binding Ninth Circuit precedent.

**1.      The EFAA does not bar the arbitration.**

Wynn-Williams "bears the burden of establishing that [the] arbitration agreement may be invalidated pursuant to the EFAA." *Lewis v. Tesla, Inc.*, 2025 WL 2653639, at *2 (N.D. Cal. Sept. 16, 2025). That statute provides that, "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, … no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Wynn-Williams argues that the EFAA bars the arbitration because the Severance Agreement predates "her dispute with Meta about *Careless People*," and *Careless People* contains "sexual harassment allegations." Dkt. 41 at 17. As previously detailed in Meta's motion to compel, *see* Dkt. 28 at 17-20, Wynn-Williams is wrong for four primary reasons.

*First*, Wynn-Williams waived her "election" under 9 U.S.C. § 402(a). She actively participated in the arbitration proceedings for 15 months, never invoking the EFAA or claiming the parties' dispute belonged in federal court. Instead, she consistently demanded rulings *from the*

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

*arbitrator*, including on arbitrability questions. *See* Decl., Exs. F, G, I, J, S, X. Even in this Court, she concedes she "requested *the Arbitrator* address her own concerns." Dkt. 49 at 24 (emphasis added). Wynn-Williams "exercised [her] election when [s]he chose to pursue [her] claims in arbitration." *Ramirez v. Domino's Pizza Supply Chain*, 2024 WL 5452684, at *6 (D. Colo. Nov. 8, 2024), *rep. & rec. adopted*, 2025 WL 414381 (D. Colo. Feb. 6, 2025). And in doing so, she waived any EFAA argument. *See Scoggins v. Menard, Inc.*, 2025 WL 1369010, at *1 (6th Cir. May 12, 2025) (per curiam) (holding it was an abuse of discretion to override the plaintiff's "deliberate waiver" of EFAA argument).

Only now, after over a year of participating and receiving unfavorable rulings in arbitration, does she turn to this Court. But that is not how the EFAA operates. It does not, as Wynn-Williams claims, grant her a free-wheeling right to "void the arbitration clause in Meta's Severance Agreement" whenever she chooses. Dkt. 41 at 13. And it certainly does not permit her to bide her time, waste the parties' and the arbitrator's resources, and file in federal court after concluding the arbitration is not going her way. *See Ramirez*, 2024 WL 5452684, at *6 (refusing to allow a party to "switch[] tactics and file[] [a] case once he did not like the way the arbitration process was playing out"). That is especially so when Wynn-Williams first raised the possibility she might ask a court to enjoin the arbitration nearly a year before seeking emergency relief in this Court. Having "made [her] election," Wynn-Williams "cannot now change that decision." *Id.*

Wynn-Williams previously asserted there was a "functional stay" in arbitration justifying her lengthy delay. Dkt. 48 at 2. But there was no such thing. Although discovery deadlines were pushed back for a few months due to settlement discussions, Wynn-Williams subsequently agreed to a discovery schedule without a stay or reservation related to arbitrability. *Compare* Dkt. 49-4 ¶ 7 (Procedural Order No. 2 setting evidence-disclosure request deadline on March 16, 2026, "[p]ursuant to the Parties' agreement"), *with* Ex. L ¶ 47 (Procedural Order No. 1 setting the same deadline on December 19, 2025). When Wynn-Williams later sought to stay the arbitration, she did not succeed. *See supra* p.4. Further, as she concedes, she continued to participate in discovery during the purported stay. Dkt. 48 at 2. And in any event, Wynn-Williams elected to arbitrate well

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

before any settlement discussions began. *See supra* pp.3-4.

Wynn-Williams further insists she "preserved" an objection to arbitrability, *see* Dkt. 48 at 3 n.2; Dkt. 49 at 22-23, but every objection she cites was submitted to the arbitrator for decision. Wynn-Williams thereby waived any claim that a court, not the arbitrator, must decide these issues. She specifically asked the arbitrator to rule on arbitrability, *see, e.g.*, Decl., Exs. F, I, J, and cannot reverse course now. Wynn-Williams also relies on *Nagrampa v. MailCoups, Inc.*, but that case involved a plaintiff whose "'participation' in the arbitration proceedings … was minimal" and who "never participated in any proceedings which even touched the merits." 469 F.3d 1257, 1278-79 (9th Cir. 2006). By contrast, Wynn-Williams "voluntarily participated" extensively in arbitration "over a period of" 15 months and changed her mind only after receiving unfavorable rulings on the merits. *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983). She cannot now "deny the authority of the arbitrator." *Id.*[2]

Wynn-Williams has elsewhere pointed to language in the Severance Agreement saying the arbitration provision "'will not prevent either party from seeking preliminary injunctive relief' in court." Dkt. 48 at 5 (quoting Severance Agreement § 16(d)). But that provision is not an "election" to litigate in court under the EFAA. It simply authorizes a party to seek injunctive relief in court at the *outset* of an arbitration if such relief is necessary to preserve the status quo *before* a merits arbitrator can be assigned. Here, there was no need for such relief because the emergency arbitrator promptly granted Meta's request to preserve the status quo. *See supra* p.3. Wynn-Williams cannot reasonably claim an unrestrained right to pursue relief in court when she has participated in the

---

[2] Wynn-Williams' counsel misleadingly argues the arbitrator stated her participation in discovery "[wa]s not a waiver"—tellingly altering the quote to be in the past tense. Dkt. 49 at 8; *see also* Dkt. 49-1 ¶ 2. That is a deliberate misrepresentation. As her counsel well knows, on July 9, 2026, the arbitrator ordered the parties to continue to participate in discovery. In making that statement, he was responding to Wynn-Williams' counsel's concern that being ordered to do so would constitute *further* waiver. In order to proceed, Meta subsequently stipulated that Wynn-Williams' conduct *after July 9, 2026*, would not be the basis for its waiver arguments. It did not need to be, because, as discussed above, *see supra* pp. 3-5, Wynn-Williams waived any argument against arbitration long before July 9, 2026.

9

arbitration for 15 months and previously considered (but ultimately decided against) seeking to enjoin the arbitral proceedings.

Because Wynn-Williams waived her election under Section 402(a), her reliance on Section 402(b) is likewise misplaced. That provision states that "applicability" of the EFAA "shall be determined by a court." 9 U.S.C. § 402(b). But it would be improper to determine applicability when the plaintiff waived her election to invoke the EFAA at all under Section 402(a). That is the case here. *See supra* pp.7-8. Wynn-Williams' own argument confirms her waiver. She contends she "exercised her right" under the EFAA by "objecting to the arbitrability of Meta's dispute with her and by filing her Complaint." Dkt. 41 at 14. Wynn-Williams *did* file objections to arbitrability—15 months ago, on April 22, 2025. *See* Decl., Ex. J. Tellingly, she did not even reference the EFAA. Moreover, she asked the arbitrator to rule on her objections, thus acknowledging that arbitrability was a question for the arbitrator to decide. *See id.* at 20. At most, the Court should conclude that Wynn-Williams waived her election under the EFAA and end its analysis.

*Second*, the EFAA does not apply because this is a contract dispute, not a "sexual harassment dispute." 9 U.S.C. § 402. Wynn-Williams has not alleged "a dispute relating to conduct that is alleged to constitute sexual harassment *under applicable Federal, Tribal, or State law*." *Id.* § 401(4) (emphasis added). Neither her Complaint nor her counterclaim in the arbitration alleges any *claims* related to sexual harassment. *See* Dkt. 1 ¶¶ 141-47 (Count I (review of Interim Award)); *id.* ¶¶ 148-84 (Counts II-VI (declaratory judgment regarding enforceability of the Severance Agreement)); *id.* ¶¶ 195-205 (Count VIII (California Unfair Competition Law)); *id.* ¶¶ 206-22 (Counts IX-X (tortious interference claims)); *see also* Decl., Ex. I at 5. That is unsurprising: Not only would such claims be meritless, but the statutes of limitations long ago expired. *See, e.g.*, Cal. Gov't Code § 12960 (three years); Cal. Civ. Proc. Code § 335.1 (two years). No such claim still exists, if it ever did. That precludes application of the EFAA because "describing conduct" as sexual harassment without asserting a sexual harassment claim is not enough. *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 584-85 (S.D.N.Y. 2023) (rejecting a reading of the statute where a

10

plaintiff "merely by describing conduct" as sexual harassment "could neutralize an arbitration agreement" and instead requiring a "plaintiff to assert that the conduct violated" an applicable Federal, Tribal, or State law); *see also Johannessen v. JUUL Labs, Inc.*, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024) ("The EFAA does not apply in the absence of a plausible sexual harassment claim.").[3]

To be sure, courts dispute whether a plaintiff must formally assert a cause of action *labeled* as sexual harassment (as opposed to, say, a tort claim that is premised on underlying conduct that is sexual harassment), but they recognize that a plaintiff must bring some "claim[] involving sexual harassment or sexual assault." *Combs v. Netflix, Inc.*, 2026 WL 1974172, at *3 (9th Cir. July 8, 2026); *see also Gal v. Meta Platforms, Inc.*, 2026 WL 1864073, at *5 (N.D. Cal. June 29, 2026). Wynn-Williams has not done that. Her claims arise out of the Severance Agreement, not any purported sexual harassment.

To patch over this deficiency, Wynn-Williams latches onto the statutory phrase "relates to." Dkt. 41 at 16-17. While that phrase has some breadth, courts consistently refuse to "extend [it] to the furthest stretch of its indeterminacy." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *see Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("[T]he breadth of the words 'related to' does not mean the sky is the limit."). As Wynn-Williams' own authority recognizes, the phrase "relates to" requires "a connection with or reference to." *Polen v. API Grp. Life Safety USA, LLC*, 2025 WL 3251349, at *4 (D. Or. Nov. 21, 2025) (citation omitted). "[A] 'tenuous, remote, or peripheral' connection" will not suffice. *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (citation omitted).

Wynn-Williams' contract claims do not "relate[] to" any purported sexual harassment. 9 U.S.C. § 402. Those claims do not have any "connection with or reference to" sexual harassment. *Polen*, 2025 WL 3251349, at *4.[4] No claim rests on any allegations of sexual harassment. No claim

---

[3]   The only claim referring at all to sexual harassment is one seeking a declaratory judgment that the EFAA applies. *See* Dkt. 1 ¶¶ 185-94.

[4]   The employment claims in *Polen* plainly related to sexual assault because the alleged "negative employment repercussions" were "because of her sexual assault." 2025 WL 3251349, at *5.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

turns on whether any purported sexual harassment occurred. And no claim asserts that any purported sexual harassment violated any applicable law. The truth or falsity of her allegations are irrelevant to this contract case. To say that contract claims "relate to" purported sexual harassment that has no bearing on those claims "would be to read Congress's words of limitation as mere sham." *Travelers*, 514 U.S. at 655.

*Third*, the Severance Agreement is not a "predispute arbitration agreement" within the meaning of the EFAA. 9 U.S.C. § 402(a). The EFAA applies only to "predispute arbitration agreement[s]" and not to agreements executed after the purported "sexual harassment dispute" arose. *Id*. It defines a "predispute arbitration agreement" as "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." *Id*. § 401(1). And as the Ninth Circuit recently explained—in a case Wynn-Williams ignored in her motions—"a 'dispute' arises 'when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position.'" *Netflix*, 2026 WL 1974172, at *5 (quoting *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 247 (3d Cir. 2025)); *see also Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025) ("The relevant question is when the parties became adverse to one another.").

The Ninth Circuit in *Netflix* held "[w]hen an employee complains to her employer about the actions of co-employees," a "dispute" within the meaning of the EFAA "arises once the employer responds negatively, or constructively so, to the employee's complaints." 2026 WL 1974172, at *6. The Ninth Circuit relied on the "ordinary meaning of the word 'dispute,'" which "requires 'some aspect of opposition or disagreement' between the parties as to a particular issue." *Id.* at *4 (citations omitted). The Ninth Circuit therefore concluded that the dispute in *Netflix* arose "at the latest" when the employee "complained to Netflix" about sexual harassment and "Netflix

---

Likewise, in *Diaz-Roa v. Hermes L., P.C.*, the plaintiff's claims plainly related to sexual harassment because they were sexual harassment claims under New York law. 757 F. Supp. 3d 498, 518 (S.D.N.Y. 2024).

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

then allegedly failed to take any corrective action." *Id.* at \*6.

Under *Netflix*, any sexual harassment dispute here arose at the latest when Wynn-Williams raised her allegations internally to Meta, Meta investigated the allegations, and Meta concluded that the allegations were baseless—all before Wynn-Williams voluntarily agreed to the Severance Agreement on September 6, 2017, *see* Severance Agreement at 9. Wynn-Williams alleges in her Complaint that she raised concerns regarding sexual harassment prior to her termination, Dkt. 1 ¶ 61; engaged in a discussion with supervisors prior to her termination, *id.* ¶¶ 61, 62; requested a transfer to a different department prior to her termination, *id.* ¶ 65; and was ultimately told that the subject of the sexual harassment investigation was cleared of any misconduct prior to her termination, *id.* ¶ 66. Her submissions in the arbitration further underscore that Meta's investigation was based on her complaints, *see* Decl., Ex. I at 2, as does her book, *see, e.g.*, Sarah Wynn-Williams, *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism* 300 (2025) (contending that when Wynn-Williams worked for Meta, she made allegations of sexual harassment); *id.* at 368 ("Heidi Swartz, [Meta's] chief employment lawyer, t[old Wynn-Williams] that [Meta was] opening an investigation into [Wynn-Williams'] experience with Joel."); *id.* at 369-70 (noting that the "investigation ha[d] cleared Joel" and that HR and company attorneys "closed out the investigation"). Meta's formal investigation is even more plainly a "dispute" than the informal "complaints" that the employer in *Netflix* did not act upon. 2026 WL 1974172, at \*2.

Disregarding *Netflix*, Wynn-Williams suggests that the purported sexual harassment dispute here "arose no earlier than March 2025, when Meta learned of the publication of *Careless People* and asserted a claim that the book violated the non-disparagement provision of the Severance Agreement." Dkt. 41 at 15. That position cannot be reconciled with *Netflix* and would render the EFAA's "predispute" limitation meaningless. If the relevant "dispute" were simply whatever contract controversy happens to be before the arbitral tribunal, then *every* arbitration clause in *every* employment agreement would qualify as "predispute" as to *every* future breach, because by definition one cannot breach a contract before it exists. Under that reading, there would be no such thing as a "postdispute" arbitration agreement in the employment context—eliminating

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

a category Congress expressly recognized. *See* 9 U.S.C. §§ 401(1), 402(a) (distinguishing "predispute" agreements from those executed after a dispute arises).

The EFAA's structure confirms this. Section 402(a) activates the EFAA only in a "case which … relates to the sexual harassment dispute." Section 401(1) then asks whether the agreement predates that qualifying dispute—*i.e.*, the *sexual harassment dispute* to which the case relates, not the generic breach claim being litigated. Any other reading would permit a plaintiff to circumvent an arbitration clause simply by characterizing any subsequent controversy as a "new dispute" that "relates to" historical harassment allegations, precisely the "absurd result" courts have rejected. *See Richards v. Silver*, 433 So. 3d 433, 440 (Fla. Dist. Ct. App. 2026) (holding parties cannot "evade valid arbitration clauses in settlement agreements simply by characterizing any dispute arising out of the settlement as a new or retaliatory dispute that 'relates to'" sexual harassment, as this "would frustrat[e] Congress's intent to draw a clear distinction between predispute and postdispute arbitration agreements").

None of the unpublished, out-of-circuit cases Wynn-Williams relies upon involved, as here, a formal investigation before the agreement was reached. *See Baldwin v. TMPL Lexington LLC*, 2024 WL 3862150, at *3 (S.D.N.Y. Aug. 19, 2024) (no formal "investigat[ion]" prior to the agreement); *Gathers v. K&K Fam. Ventures, LLC*, 2025 WL 1032252, at *8 (D.S.C. Feb. 19, 2025) ("dispute did not arise until Plaintiff filed her Charge" with the EEOC), *rep. & rec. adopted in part*, 2025 WL 892773 (D.S.C. Mar. 24, 2025); *J.H. v. Lawrenceville Sch.*, 2026 WL 217593, at *1 (N.J. Super. Ct. App. Div. Jan. 28, 2026) (no mention of any internal investigation). And all involved, unlike here, sexual harassment claims. *See Baldwin*, 2024 WL 3862150, at *1 ("violation of the Gender Motivated Violence Protection Act"); *Gathers*, 2025 WL 1032252, at *1 ("sexual harassment pursuant to Title VII"); *J.H.*, 2026 WL 217593, at *1 ("violation of the Child Sex Abuse Act"). In any event, the Ninth Circuit's recent decision in *Netflix* controls.

*Fourth*, the EFAA does not apply retroactively. In a statutory note, Congress provided that the EFAA "shall apply with respect to any dispute or claim that arises or accrues *on or after* the date of enactment of this Act," which was March 3, 2022. 9 U.S.C. § 401 note (emphasis added).

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

"Although not part of the U.S. Code, this statutory note is congressionally enacted and is binding law." *Netflix*, 2026 WL 1974172, at *3. Because any "dispute" arose long before March 3, 2022, *see supra* pp.12-14, the EFAA is inapplicable, *see, e.g.*, *Lewis*, 2025 WL 2653639, at *3 (rejecting EFAA argument where plaintiff "failed to show a sexual harassment dispute arose after the EFAA's enactment").

### 2.    The arbitration is not estopped.

Wynn-Williams argues "Meta's 2018 public disavowal of forced arbitration estops it from enforcing the arbitration clause." Dkt. 41 at 13. She points to a 2018 article announcing that Meta would "end[] its policy of requiring employee *sexual-harassment claims* to be settled in private arbitration." *Id.* at 18 (citation omitted).[5] Wynn-Williams' argument fails for four primary reasons.

*First*, this is an issue for the arbitrator. *See* Severance Agreement § 16(d) (providing that "*any and all disputes* arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, *shall be subject to arbitration*" and that the parties "WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW" (emphasis added)).

*Second*, Wynn-Williams already presented this issue to the arbitrator and lost. *See* Decl., Ex. F at 2, 12-13 (raising same argument); *id.*, Ex. H at 14 (Meta's "general public statements regarding not requiring sexual harassment victims to arbitrate sexual harassment claims does not establish that [Meta] waived its rights to pursue this arbitration against [Wynn-Williams]."). She does not get another bite at the apple just because she does not like the arbitrator's decision.

*Third*, the Severance Agreement "may not be changed, amended, modified, altered or rescinded" absent express written consent by Meta's CEO and Wynn-Williams. Severance Agreement § 16(a). Wynn-Williams has identified no such consent. The Severance Agreement further clarifies that even if Meta decided not to "exercise [its] right" to compel arbitration of

---

5    Wynn-Williams purports to quote from a *New York Times* article, but this language does not appear in that article. *See generally* Dkt. 41-29. It instead appears in a *Wall Street Journal* article. *See* Douglas MacMillan, *Facebook to End Forced Arbitration for Sexual-Harassment Claims*, Wall Street J. (Nov. 9, 2018), https://perma.cc/ZKC9-4XV2.

15

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

sexual harassment claims under that agreement, that decision would "not operate as a waiver" of that right, much less "a waiver of such right with respect to any other occurrence." *Id.* § 16(i).

*Fourth*, this case has nothing to do with sexual harassment claims. *See supra* pp.10-12. Even if the Court construes a quote in a 2018 article as a promise regarding sexual harassment claims (and there is no basis to do so), that promise did not "clear[ly] and unambiguous[ly]" encompass contract claims like Wynn-Williams'. *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890 (1976). And it certainly would not be "reasonable and foreseeable" for Wynn-Williams to rely on statements that do not encompass her claims. *Id.* In any event, Wynn-Williams cannot satisfy her "heavy burden" to show Meta waived "in light of the strong policy favoring arbitration." *Thorup v. Dean Witter Reynolds, Inc.*, 180 Cal. App. 3d 228, 234 (1986).

## B.  Wynn-Williams has not established irreparable harm.

Even if Wynn-Williams could show a likelihood of success, she cannot show "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. Because she seeks to disrupt the status quo of an ongoing arbitration that has been pending for more than 15 months, she must show that "extreme or very serious damage will result" and that her purported injury is not "capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted); *see Kleist v. Credit Suisse (USA) LLC*, 2026 WL 1507831, at *6 (N.D. Cal. May 29, 2026) (making clear the standard is "high"). She cannot.

Wynn-Williams' long delay forecloses her irreparable harm arguments. Again, for more than 15 months, even Wynn-Williams did not believe the arbitration, which began in March 2025, posed irreparable harm warranting emergency relief in federal court. Instead, she and five different law firms participated in every aspect of the arbitration—pleadings, motion practice, discovery, and multiple pre-hearing conferences—before she filed this lawsuit in June 2026. Even after Wynn-Williams retained her current counsel, she continued to participate in discovery and motion practice in the arbitration and waited almost three months to file the present preliminary injunction motion. That delay, too, is fatal. *See Benisek v. Lamone*, 585 U.S. 155, 159 (2018) ("[A] party requesting a preliminary injunction must generally show reasonable diligence."); *Garcia v.*

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

*Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) ("The district court did not abuse its discretion by finding [months of] delay undercut Garcia's claim of irreparable harm."); *Oakland Trib., Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").

As this Court recently noted, a request to halt an arbitration that "has been the status quo" for months requires "evidence that extreme or very serious damage will result [and] cannot be compensated in damages." *Kleist*, 2026 WL 1507831, at \*6. When a movant fails to file the request for more than 15 months, "any emergency posed by potentially participating in the … arbitration appears to be self-manufactured," and there is no irreparable harm. *Id.*

*Lorentzen v. Levolor Corp.*, 746 F. Supp. 1228 (S.D.N.Y. 1990), is also illustrative. There, the parties were compelled to arbitrate, and the plaintiff waited 17 months to seek a preliminary injunction from a federal court staying the arbitration proceedings. *Id.* at 1230. The plaintiff blamed this long delay on "ongoing settlement negotiations" and alleged difficulty in finding new counsel to file his lawsuit. *Id.* The district court rejected those excuses, holding it was not plausible that the plaintiff would wait 17 months "to realize that he might require the assistance of a federal court if he were to avoid arbitration," or that "a person with [his] resources could not find a lawyer willing and able to file an already prepared federal complaint." *Id.* The court found "that the real motive behind the delay was a desire thoroughly to test the waters in [the arbitration] before pulling the plug." *Id.* The delay was therefore "wholly unjustified" and "defeat[ed] any claim of irreparable harm." *Id.* at 1231. Wynn-Williams' playbook is the same: She waited more than 15 months to seek a preliminary injunction, received numerous adverse rulings from the arbitrator, and changed course only when her counsel decided to try its hand with a different audience—blaming intermittent settlement negotiations which delayed discovery by only approximately three months. *See supra* pp.7-10. None of this shows irreparable harm.

Unable to explain away her long delay, Wynn-Williams tries to manufacture irreparable harm. She contends that the Interim Award and Meta's unresolved sanctions motion are "suppressing" her First Amendment rights. Dkt. 41 at 21. Those arguments are baseless, *see infra*

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

pp.22-25, and numerous courts have issued preliminary injunctions to *enforce* non-disparagement provisions because no First Amendment issues are implicated, *see infra* p.23. Furthermore, any "uncertainty about the scope of the Interim Award," Dkt. 41 at 21, is of Wynn-Williams' own making, as she specifically urged the arbitrator not to expedite the final merits hearing, *see* Decl., Ex. S at 2 ("Ms. Wynn-Williams strongly opposes any acceleration of the merits hearing."). Further, the arbitrator can address her First Amendment arguments, and if Wynn-Williams has a viable federal claim that can be brought in federal court, she can raise it after the arbitration.

Wynn-Williams next argues that she will lose money as a result of the arbitration, either because she will be unable to attend some paid "speaking engagements and public appearances" or because she will "expend significant resources" in arbitration. Dkt. 41 at 21-22. But "[p]urely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."). And, again, if she was concerned about timing, she should not have opposed expedition in the arbitration.

Nor does an alleged risk of unnecessary arbitration proceedings constitute irreparable harm. *See Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury."); *Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 (9th Cir. 1989) ("[I]t seems clear that an order compelling arbitration does not ordinarily harm the losing party irreparably."); *Corrales Law PC v. Equal Access Just. Fund LP*, 2025 WL 2816789, at *6 (S.D. Cal. Sept. 5, 2025) ("[T]he cost of defending an arbitration is typically not adequate to yield irreparable harm for purposes of obtaining temporary injunctive relief." (citation omitted)); *In re Cintas Corp. Overtime Pay Arb. Litig.*, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) (similar). Wynn-Williams suggests she may be injured by the outcome of the arbitration, but any such injury would not be irreparable. *See Sanchart Sec. Int'l, Inc. v. Gavaldon*, 2012 WL

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

5471933, at *2 (S.D. Cal. Nov. 9, 2012) ("If it turns out that the award improperly decides non-arbitrable issues and is adverse to Plaintiffs, they … may have it vacated.").

Regardless, Wynn-Williams' argument that "ongoing arbitration is permanently damaging [her] career," Dkt. 41 at 21, fails on its own terms. She contends the Interim Award has forced her to "decline invitations to speak" at gala events and that some of her "sponsors, organizers, and prospective clients have curtailed or withdrawn engagements." *Id*. But even she concedes that "she has been *able to accept*" speaking invitations "because the subject of the event is not *Careless People*." *Id*. (emphasis added). And she has scheduled two more prominent speaking engagements since filing her motion. *See* Decl., Exs. V, W.

**C.    Wynn-Williams has not established the other preliminary injunction factors.**

The Court need not analyze the remaining two preliminary injunction factors because Wynn-Williams has shown no likelihood of success and no irreparable harm. *See supra* p.6. But in any event, both factors also weigh against her.

*First*, the balance of equities is in Meta's favor. In a Severance Agreement negotiated by her own counsel, Meta paid Wynn-Williams more than $780,000, and the parties agreed to an arbitration provision designed to provide both parties with an efficient resolution of any breaches. Meta has a clear and justifiable interest in holding Wynn-Williams to the benefit of the bargain she sought and obtained. *See Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302, at *8 (C.D. Cal. Apr. 15, 2020) (balance of equities tipped against injunction where defendants had "an interest in being permitted to pursue their … claims in arbitration, which 'is supposed to be a speedy and inexpensive alternative to litigation,' and which the agreement they entered into and [the movant] drafted expressly requires" (citation omitted)); *see also Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The [FAA] represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" (citation omitted)); *Cintas*, 2009 WL 1766595, at *5 ("Imposing a stay of the arbitration would serve only to delay conclusion of the dispute further, which is antithetical to the spirit and intent of the arbitration process."). This is especially true because Wynn-Williams refuses to return the money,

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

insisting the contract is valid when it helps her and unenforceable only when it imposes burdens upon her. She cites no authority supporting her contrary positions.

*Second*, the public interest weighs against an injunction for similar reasons. *See Cintas*, 2009 WL 1766595, at *5 ("public interest militates against staying the arbitration" because a "'prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results'" (citation omitted)); *see also NCR Corp. v. Goh*, 2016 WL 9331287, at *4 (W.D. Wash. Feb. 4, 2016) (public interest "would not be served by suspending an arbitration that has been pending for more than six months"). Although Wynn-Williams argues "[t]he public is … clearly interested in hearing [her] speak," she primarily refers to congressional testimony. Dkt. 41 at 24. The Severance Agreement and Interim Award allow her to communicate with government agencies and testify under oath, which she has done repeatedly without issue. Severance Agreement § 4; Interim Award at 4-5; *see supra* p.2.

## II.    THE COURT SHOULD DENY THE MOTION TO VACATE.

Wynn-Williams argues that the Court "should vacate the Interim Award under 9 U.S.C. § 10 and the First Amendment." Dkt. 42 at 15. But review of the Interim Award is either premature or time-barred, and it is for the arbitrator to rule on the meritless First Amendment arguments Wynn-Williams now presses.

**A.** This Court should not intervene because the Interim Award is not final and mid-arbitration intervention is disfavored. *See, e.g.*, *In re Sussex*, 781 F.3d 1065, 1072-73 (9th Cir. 2015) ("[P]ermit[ting] what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate th[e] purpose" of arbitration. (citation omitted)); *BCS*, 671 F.3d at 638-39 ("Review comes at the beginning or the end, but not in the middle."). Courts "refuse[] to review awards that decided only part of the substantive issues submitted to arbitration." *Pac. Reinsurance*, 935 F.2d at 1022. "[O]nly in the most extreme cases" where a final award would otherwise be "meaningless" should "judicial review of non-final arbitration awards … be indulged." *Id.* at 1022-23 (citation modified); *see Sussex*, 781 F.3d at 1072 n.2 (limiting this exception to interim awards that are "final as to a distinct issue"). Those extreme cases involve circumstances where, for example, such

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

review would be "essential to preserve assets or enforce performance." *See Pac. Reinsurance*, 935 F.2d at 1022.

Wynn-Williams once again fails to acknowledge this high bar for mid-arbitration judicial intervention. *Cf.* Dkt. 28 at 15-16. Her reason is obvious: She cannot clear it. This is not a "most extreme case[]" in which mid-arbitration review should be "indulged." *Pac. Reinsurance*, 935 F.2d at 1022. The final award will not "be[] meaningless" absent review. *Id.* To the contrary, in a matter of months, that final award will fully resolve the issues in dispute and will render obsolete the Interim Award Wynn-Williams asks this Court to revisit based on the same recycled, meritless arguments she previously raised in the arbitration. Wynn-Williams has identified no extraordinary circumstances warranting extraordinary review in this Court, and there are none.

**B.** If the Court considers the Interim Award final for purposes of review now instead of at the conclusion of the arbitration, Wynn-Williams' motion to vacate is time-barred. The FAA requires that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Courts apply this three-month limitations period both to final awards and to the narrow set of interim awards that are final. *See, e.g.*, *Swenson v. Bushman Inv. Props., Ltd.*, 870 F. Supp. 2d 1049, 1054 (D. Idaho 2012) ("Ninth Circuit law is clear on this point. An interim award 'may be deemed final for *functus officio* purposes if the award states it is final, and if the arbitrator intended the award to be final.'" (citing *Bosack v. Soward,* 586 F.3d 1096, 1103 (9th Cir. 2009))); *Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*, 2006 WL 1428319, at *4 (M.D. Fla. May 17, 2006) (deeming an "Interim Award … a final arbitration award, subject to the three month statutory time limit for serving notice of motion to vacate").

Wynn-Williams argues that the FAA's "three-month limitations period for review" is not "trigger[ed]" because "the Interim Award has not yet merged into a final award." Dkt. 42 at 16 n.6. But she cannot have it both ways. Either the Interim Award is final and her challenge falls outside the three-month limitations period *or* it is not final and her challenge is premature because the arbitration is ongoing. Either way, Wynn-Williams' motion to vacate should be denied.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

**C.** The First Amendment provides no basis for vacatur. Wynn-Williams voluntarily agreed that any First Amendment argument she might have would be resolved in arbitration. *See* Severance Agreement § 16(d). Indeed, Wynn-Williams acknowledges that this argument *will* be resolved in the arbitration at the final merits hearing. *See* Dkt. 42 at 15. And it will be resolved then because that is what Wynn-Williams requested. *See* Decl., Ex. S at 2 ("[T]he sanctions application is inextricably intertwined with the merits—reaching the merits of that application would be an improper and premature determination of this case."). Wynn-Williams cannot ask the arbitrator to delay ruling on whether the First Amendment allows her to violate the Interim Award until the final merits hearing and then turn around and seek a ruling from this Court because the arbitrator will not rule "until the full merits hearing." Dkt. 42 at 15.

**D.** Wynn-Williams' First Amendment arguments are meritless for at least four reasons.

*First*, Wynn-Williams waived any First Amendment arguments she may have. She failed to raise such arguments initially in her emergency motion to vacate the Interim Award in the arbitration. Decl., Ex. F. And she also voluntarily agreed to the non-disparagement clause in the Severance Agreement, which the Interim Award is designed to enforce. *See* Severance Agreement § 9. As Wynn-Williams concedes, "First Amendment rights can be waivable by contract." Dkt. 42 at 20; *see also ITT Telecom Prods. Corp. v. Dooley*, 214 Cal. App. 3d 307, 319 (1989) ("[I]t is possible to waive even First Amendment free speech rights by contract."). Wynn-Williams waived her rights when—after retaining experienced employment counsel and negotiating a lucrative Severance Agreement under which she received $780,000 and other benefits—she voluntarily agreed to the non-disparagement clause. *See Malem Med., Ltd. v. Theos Med. Sys.*, 761 F. App'x 762, 764 (9th Cir. 2019) (recognizing that by signing a non-disparagement agreement, a defendant "clearly 'voluntarily and knowingly' waived its First Amendment rights").[6]

---

[6]   Wynn-Williams notes that "Meta has never asserted … that the non-disparagement provision of Meta's Severance Agreement was a knowing, voluntary, and intelligent waiver of Ms. Wynn-Williams's First Amendment rights." Dkt. 42 at 20. But that is only because Wynn-Williams did not raise her First Amendment argument for the first time until three months ago (despite ample opportunity to do so), in a submission for which the arbitrator did not expressly allow a reply. *See* Decl., Ex. X.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

Contrary to Wynn-Williams' suggestions, *see* Dkt. 42 at 16-18, it is "commonplace" for courts to "enforce[] non-disclosure and non-disparagement agreements" as the arbitrator did here. *Powell v. SEC*, 149 F.4th 1029, 1039 (9th Cir. 2025); *see, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 679 F. App'x 33, 36 (2d Cir. 2017) (defendant's First Amendment challenge to injunction failed "because the injunction's prohibition on speech that is false, misleading, defamatory, or disparaging effectively enforces defendants' own covenant not to engage in such speech"); *Millennial Plastic Surgery PLLC v. James*, 2021 WL 5988322, at *2 n.2, *4 (S.D.N.Y. Dec. 16, 2021) (granting injunctive relief to enforce non-disparagement clause because defendant waived First Amendment rights); *Fisher v. Biozone Pharms., Inc.*, 2017 WL 1097198, at *7 (N.D. Cal. Mar. 23, 2017) ("The court enjoins the plaintiff from making any further disparaging comments about the defendants."); *GRK Fasteners Ltd. v. Bennett*, 2004 WL 1211919, at *3 (D. Or. May 14, 2004) (granting preliminary injunction to enforce settlement agreement's non-disparagement clause and ordering sanctions for circulation of disparaging letter).

*Second*, "the Free Speech Clause prohibits only *governmental* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). An interim award entered in *private* arbitration about the terms of a *private* contract does not constitute *governmental* action. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998-99 (9th Cir. 2013) (explaining that enforcement of private contracts has "not ordinarily been considered state action"); *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987) ("[W]e do not find in private arbitration proceedings the state action requisite for a constitutional due process claim."). Put simply, government "permission of a private choice cannot support a finding of state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999).

Wynn-Williams suggests that "the prospect of judicial enforcement" is enough to create state action. Dkt. 42 at 17-18. That suggestion is misguided. Meta is not seeking judicial enforcement of the Interim Award. Wynn-Williams cannot manufacture state action based on hypothetical enforcement that is not sought and may not occur.

*Third*, the Interim Award is consistent with and does not exceed the scope of the non-

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

disparagement clause to which Wynn-Williams voluntarily agreed. *See* Severance Agreement § 9 ("[Y]ou agree not to make disparaging, critical or otherwise detrimental comments to any person or entity concerning the Company, its officers, directors or employees."). The Interim Award does not purport to restrict Wynn-Williams' ability to make *non-disparaging* statements about Meta. The problem is that Wynn-Williams published a 382-page book full of disparaging statements in violation of her contractual obligations. *See supra* pp.2-3. Her suggestions that she might somehow promote her disparaging book without being "disparaging," Dkt. 42 at 22, is nonsensical.

Her remaining scope arguments are similarly baseless. Wynn-Williams argues that the Interim Award also exceeds the Severance Agreement because of the parties it covers. She suggests that the Interim Award "layers an affirmative obligation on [her] to police the conduct of third parties … she does not control." Dkt. 42 at 23. But the Interim Award says the opposite. It expressly applies to her and to "person(s) or entities *for which she controls*." Interim Award at 3; *see also id.* at 4 (stating that the award applies "to the extent *within Respondent Wynn-Williams' control*"). Wynn-Williams also suggests that the Interim Award prohibits "agents" like her attorneys from disparaging Meta. Dkt. 42 at 23. The motions her attorneys drafted make clear that they do not genuinely fear any liability for disparaging Meta. *See* Dkt. 41, 42. And the language of the Interim Award simply tracks Federal Rule of Civil Procedure 65(d)(2). *Compare* Interim Award at 3 ("The Emergency Arbitrator grants the Claimant's application for emergency relief and enjoins Respondent Wynn-Williams, her agents, servants, employees, attorneys, and any other person(s) or entities for which she controls."), *with* Fed. R. Civ. P. 65(d)(2) ("Every injunction and restraining order" binds the parties and "the parties' officers, agents, servants, employees, and attorneys" to the extent they have "actual notice."). If Wynn-Williams were correct, virtually every federal injunction involving speech would be a *per se* unconstitutional prior restraint.

*Fourth*, the Interim Award is not "unconstitutionally vague." Dkt. 42 at 20 (citation omitted). Although her argument hinges on the Interim Award's purportedly "vague terms," *id.*, Wynn-Williams fails to quote or analyze those terms—no doubt because they accurately reflect her contractual obligations not to disparage Meta and are narrowly tailored to enforcing them.

There can be no serious dispute that Wynn-Williams' book—titled *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*—is replete with statements disparaging Meta and its employees. *See supra* p.2. Unsurprisingly, the Interim Award prohibits Wynn-Williams "from further promoting *Careless People*." Interim Award at 4. Wynn-Williams now contends that prohibition means she "must avoid appearing anywhere she suspects books may be sold—like bookshops, libraries, or even the supermarket—lest her presence next to a copy of *Careless People* be interpreted as promoting it." Dkt. 42 at 21. No reasonable person would interpret the Interim Award as Wynn-Williams proposes. Obviously, she may enjoy bookshops and libraries; what she was not allowed to do was go on a multi-stop book tour to promote and sell copies of her disparaging book to make money, violating both the Severance Agreement and Interim Award. *See supra* pp.4-5, 19. Her arguments are frivolous.

Wynn-Williams pretends the arbitrator refused to provide adequate "guidance" on how the Interim Award should be construed. Dkt. 42 at 21. But she neglects to mention that the arbitrator declined to rule on Meta's sanctions request (and her First Amendment argument) because *Wynn-Williams* urged him to defer that ruling until the final merits hearing. *See* Decl., Ex. S at 2 ("[T]he sanctions application is inextricably intertwined with the merits—reaching the merits of that application would be an improper and premature determination of this case."). In any event, Wynn-Williams is an "accomplished diplomat and public policy expert" who regularly participates in "speaking engagements and public appearances." Dkt. 41 at 4, 21. She understands what it means to "promot[e]," "publish[]," or "distribut[e]" a book. Interim Award at 4. And she was advised by experienced employment counsel when she agreed not to make "disparaging, critical or otherwise detrimental comments" about Meta in a provision that counsel helped revise. *Id.* at 3-4; *see supra* p.2. Any purported confusion about whether she should or will be sanctioned for her prior acts is a problem of Wynn-Williams' own making.

## CONCLUSION

For the foregoing reasons, this Court should deny Wynn-Williams' motion for a preliminary injunction and motion to vacate the interim arbitration award.

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341

DATED: July 23, 2026                              Respectfully submitted,

                                                  /s/ Mathew S. Rosengart
Jonathan F. Cohn* (DC 476551)                     Mathew S. Rosengart (SBN CA 255750)
Mary Elizabeth Miller* (DC 252694)                Mark D. Kemple (SBN CA 145219)
200 Massachusetts Ave., NW, Suite 700             Alex Linhardt (SBN CA 303669)
Washington, DC 20001                              GREENBERG TRAURIG, LLP
William T. Thompson* (TX 24088531)                1840 Century Park East, Suite 1900
7500 Rialto Blvd., Suite 1-250                    Los Angeles, California 90067-2121
Austin, TX 78735                                  Telephone: 310.586.7700
LEHOTSKY COHN LLP                                 Facsimile: 310.586.7800
Telephone: (512) 693-8350                         rosengartm@gtlaw.com
Facsimile: (512) 727-4755                         kemplem@gtlaw.com
jon@lehotskycohn.com                              linhardta@gtlaw.com
mary@lehotskycohn.com
will@lehotskycohn.com                             *Attorneys for Defendant Meta Platforms,
                                                  Inc.*

*Attorneys for Defendant Meta Platforms,
Inc.*

* Admitted *pro hac vice*.

26

META'S OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION
AND TO VACATE INTERIM ARBITRATION AWARD, CASE NO. 4:26-cv-06341