Mathew S. Rosengart (SBN CA 255750)
Mark D. Kemple (SBN CA 145219)
Alex Linhardt (SBN CA 303669)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
rosengartm@gtlaw.com
kemplem@gtlaw.com
linhardta@gtlaw.com

Jonathan F. Cohn (DC 476551) (admitted *pro hac vice*)
Mary Elizabeth Miller (DC 252694) (admitted *pro hac vice*)
200 Massachusetts Ave., NW, Suite 700
Washington, DC 20001
William T. Thompson (TX 24088531) (admitted *pro hac vice*)
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
LEHOTSKY COHN LLP
Telephone: (512) 693-8350
Facsimile: (512) 727-4755
jon@lehotskycohn.com
mary@lehotskycohn.com
will@lehotskycohn.com

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| SARAH WYNN-WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | CASE NO. 4:26-cv-06341<br><br>**META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS UNDER 9 U.S.C. §§ 3, 4**<br><br>Complaint Filed Date: June 25, 2026<br><br>Judge: Hon. Araceli Martínez-Olguín<br>Date: August 20, 2026<br>Time: 2:00 PM<br>Courtroom: Courtroom 5, 2nd Floor |

META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION, CASE NO. 4:26-cv-06341

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.       THIS COURT SHOULD COMPEL ARBITRATION....................................................... 2

         A.       Wynn-Williams waived any objection to arbitration............................................ 2

         B.       Wynn-Williams voluntarily agreed to arbitration................................................ 9

         C.       There is no basis for mid-arbitration judicial intervention. ................................ 10

II.      THE COURT SHOULD STAY ALL PROCEEDINGS PENDING ARBITRATION. .. 15

CONCLUSION ............................................................................................................................ 15

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amalgamated Sugar Co. LLC v. Agri-Sys.*,
2021 WL 1093612 (D. Idaho Mar. 22, 2021) .................................................................4, 5

*Butler v. JSerra Cath. High Sch.*,
2025 WL 4057443 (C.D. Cal. Sept. 10, 2025) ....................................................................12

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ................................................................................................10

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
265 F. Supp. 3d 1196 (D. Or. 2017) ....................................................................................4

*Combs v. Netflix, Inc.*,
2026 WL 1974172 (9th Cir. July 8, 2026).....................................................................13, 14

*Diaz-Roa v. Hermes L., P.C.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024)................................................................................12

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................................................................................9, 10

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983) ............................................................................................5

*George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*,
722 F.2d 1471 (9th Cir. 1984) .........................................................................................4, 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)..............................................................................................................3

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457 (9th Cir. 2023) ...............................................................................................4

*Infogation Corp. v. HTC Corp.*,
2017 WL 2869717 (S.D. Cal. July 5, 2017) ........................................................................4

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

*L. Offs. of Richard E. Wilson, LLC v. Smith*,

2022 WL 16647769 (9th Cir. Nov. 3, 2022)............................................................................5, 6

*Laks v. Coast Fed. Sav. & Loan Ass'n*,

60 Cal. App. 3d 885 (1976) ...................................................................................................15

*Lee v. Marriott Int'l, Inc.*,

2025 WL 2689263 (N.D. Cal. Sept. 21, 2025) .......................................................................12

*Lewis v. Tesla, Inc.*,

2025 WL 2653639 (N.D. Cal. Sept. 16, 2025) .......................................................................11

*Morgan v. Sundance, Inc.*,

596 U.S. 411 (2022)..................................................................................................................3

*Nagrampa v. MailCoups, Inc.*,

469 F.3d 1257 (9th Cir. 2006) ..................................................................................................5

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*,

946 F.2d 722 (9th Cir. 1991) ....................................................................................................6

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*,

935 F.2d 1019 (9th Cir. 1991) ................................................................................................15

*Polen v. API Grp. Life Safety USA, LLC*,

2025 WL 3251349 (D. Or. Nov. 21, 2025)..............................................................................11

*Richards v. Silver*,

433 So. 3d 433 (Fla. Dist. Ct. App. 2026) ..............................................................................12

*Rutledge v. Pharm. Care Mgmt. Ass'n*,

592 U.S. 80 (2020)..................................................................................................................11

*Simula, Inc. v. Autoliv, Inc.*,

175 F.3d 716 (9th Cir. 1999) ..................................................................................................10

*Sobremonte v. Superior Ct. (Bank of Am. Nat'l Tr. & Sav. Ass'n)*,

61 Cal. App. 4th 980 (Cal. Ct. App. 1998) ...............................................................................5

*Solis v. Prime Comms Retail, LLC,*

    2025 WL 1255143 (C.D. Cal. Apr. 7, 2025) ............................................................................12

*Yu v. Gao,*

    2026 WL 1180470 (9th Cir. Apr. 30, 2026) ..............................................................................6

**Statutes**

9 U.S.C. § 3 ................................................................................................................................15

9 U.S.C. § 12 ..............................................................................................................................15

9 U.S.C. § 401 ............................................................................................................................12

9 U.S.C. § 402 ..............................................................................................................11, 12, 15

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

**INTRODUCTION**

Plaintiff Wynn-Williams cannot dispute that she asked the arbitrator to decide arbitrability and that she repeatedly submitted issues to the arbitrator for decision. Indeed, she concedes that she "requested *the Arbitrator* address her own concerns," and asked *him* to address the "likelihood of success on the merits." Dkt. 49 at 5, 22, 24 (emphasis added). She also has no cogent response to the clear and unambiguous language of the arbitration provision in the Severance Agreement, which, through her own retained counsel, she negotiated, reviewed, and signed and which governs "any and all" disputes arising out of that contract. Those uncontested facts resolve this motion.

In her opposition, Wynn-Williams relies primarily on three meritless arguments. *First*, she contends that her extensive, 15-month participation in the arbitration is irrelevant because—*while she participated*—she also objected to the arbitration and the enforceability of the Severance Agreement. But she asked *the arbitrator* to decide these arbitrability issues and to assess "the merits." *Id.* at 22. Regardless, objections do not insulate a party from waiver when she actively engages in the arbitration and does not seek court relief for over 15 months. Otherwise, a party could have two bites at the apple—arbitrating issues while "objecting," and then, depending on the results, running off to court at the eleventh hour in search of a more favorable result.

Likewise, settlement discussions (which Wynn-Williams misstates in her brief) do not negate a waiver or allow a party to get a second bite. Wynn-Williams admits that she "continued to participate" in the arbitration during the negotiations, *id.* at 2—which, in any event, were focused on two mediation sessions over a brief period last fall, Linhardt Decl. ¶¶ 8-9. The only stay Wynn-Williams requested from the arbitrator was denied. *Id.* ¶ 13.

*Second*, she erroneously relies on language in the arbitration provision permitting either party to seek preliminary injunctive relief. But as Ninth Circuit and blackletter contract law make clear, that language serves a limited purpose: to allow a party to seek preliminary relief at the outset of the arbitration to maintain the status quo. Under Wynn-Williams' reading, that commonly used provision authorizes her to seek judicial review any time she chooses. Adopting this position would vitiate the Federal Arbitration Act ("FAA") and distort the parties' contract.

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

*Third*, Wynn-Williams argues this Court must entertain her mid-arbitration challenge based on federal law and certain Meta "statements" about "'sexual harassment claim[s].'" Dkt. 49 at 21 (citation omitted). Those arguments fail at every turn. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") does not preclude arbitration because (1) Wynn-Williams elected to participate in arbitration for 15 months before changing her mind; (2) none of Wynn-Williams' claims relate to sexual harassment but only to a contract she signed; and (3) the EFAA applies only to "predispute" arbitration agreements, not arbitration agreements signed after an employee raises sexual harassment allegations that are investigated by the company. Additionally, the FAA does not permit mid-arbitration review of this type of interim award. Even if it did, Wynn-Williams' challenge (over a year after the Award issued) is time-barred. Finally, Wynn-Williams' baseless estoppel arguments are for the arbitrator to decide and otherwise fail as a matter of law.

## ARGUMENT

### I.    THIS COURT SHOULD COMPEL ARBITRATION.

Meta's opening brief establishes three independent bases for compelling arbitration, *see* Dkt. 28 at 8-20, and Wynn-Williams' opposition fails to overcome them.

#### A.    Wynn-Williams waived any objection to arbitration.

This Court should compel arbitration because Wynn-Williams long ago waived her objection to it. She specifically sought rulings *from the arbitrator* regarding arbitrability. In addition, she actively participated in the arbitration for 15 months—including by selecting a merits arbitrator, seeking relief from the emergency and merits arbitrators, filing a counterclaim, attending status conferences and hearings, agreeing to a schedule for litigating the merits, meeting and conferring with opposing counsel, negotiating a protective order, propounding over 140 discovery requests, and responding to Meta's discovery requests. *See id.* at 3-7, 11-15. And she has separately waived any objection to the arbitrator's authority to decide arbitrability, instead specifically seeking rulings *from the arbitrator* on arbitrability. That conduct is "inconsistent[]"

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

with any claimed right to now litigate in court. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 415 (2022). Wynn-Williams' attempts to patch over her waiver fail for two primary reasons.

*First*, Wynn-Williams' opposition confirms she waived any objection to the arbitrator's authority to decide the question of arbitrability. She does not identify *any* objection she raised in the arbitration regarding the threshold question of "who decides" arbitrability. To the contrary, Wynn-Williams repeatedly pressed the arbitrator to decide arbitrability. *See* Dkt. 44-8 at 1 (asking the emergency arbitrator to vacate the Interim Award because the arbitration provision is unenforceable); Dkt. 44-9 at 3-4 (arguing "[r]esolving Ms. Wynn-Williams's Motion to Vacate should be the top priority" and opposing the arbitrator's resolution of Macmillan's jurisdictional objections because it could "result in a suspension of the arbitration proceedings"); Dkt. 44-11 at 2, 5 (submitting to the arbitrator affirmative defenses, including that "Meta has asserted claims for relief that exceed the Arbitrator's jurisdiction," that "Meta has waived its right to arbitrate all its asserted claims," and that the Severance Agreement is unenforceable); Dkt. 44-12 at 2, 20 (arguing to the arbitrator that "Meta's claims are not arbitrable" and asking the arbitrator to dismiss Meta's amended demand for arbitration.); Dkt. 44-18 at 19 (asking the arbitrator to vacate the Interim Award because "Meta has waived its right to force arbitration of these claims"); Dkt. 44-21 at 2 (asking the arbitrator's permission to "raise threshold legal arguments [to the arbitrator] about the enforceability of the severance agreement forming the jurisdictional basis for this arbitration").

Having repeatedly invited the arbitrator to decide arbitrability, waiver precludes her from changing course now. Her response is a *non sequitur*: She contends that "no party could successfully object to arbitration if, by doing so, the party waived the right to object to arbitration." Dkt. 49 at 25. Despite Wynn-Williams' contrary contention, a party can object to arbitration *and object to the arbitrator deciding arbitrability*. The Supreme Court has long recognized that "the arbitrability question" and "the question of who decides arbitrability" are distinct concepts. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) (citing cases). Wynn-Williams was entirely capable of lodging not only objections to arbitrability itself, but also an objection to the arbitrator's authority to decide those objections. Doing so is not "absurd" or a

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

"paradox[]"; it is standard practice. Dkt. 49 at 25. And her failure to do so is particularly glaring here, where her publisher did exactly what Wynn-Williams could and should have done if she sought to object to the arbitrator's authority. Dkt. 28 at 4 (objecting both to the arbitration and the arbitrator's "*jurisdiction to rule on its own jurisdiction*"). Instead of doing the same, Wynn-Williams asked the arbitrator to defer ruling on her publisher's objections to *avoid* a court filing and the potential delay of the arbitral proceedings. *Id.* at 12-13. Her opposition further demonstrates her waiver: Because her publisher's objection "would have had no bearing at all" on her, she "thus requested the Arbitrator *address her own concerns*." Dkt. 49 at 24. In other words, she concedes she submitted her issues to the arbitrator for resolution.

*Second*, even if she "objected to the arbitrability," *id.* at 22, that is not enough, given the breadth of her participation in the arbitration. "[F]iling an initial … objection does not preclude subsequent waiver of the objection." *Infogation Corp. v. HTC Corp.*, 2017 WL 2869717, at *3 (S.D. Cal. July 5, 2017). "Even if a [party] initially files an objection," their "conduct may nevertheless waive the defense." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1202 (D. Or. 2017) (collecting cases); *see also Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023) ("A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."). Otherwise, a party could game the system, getting two bites at the apple by objecting while arbitrating for over a year. Here, Wynn-Williams' "consent to grant the arbitrator … authority [to decide this dispute] may be implied from [her] conduct … in the arbitration setting," despite any pro forma objections she may have submitted. *George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. 354*, 722 F.2d 1471, 1475 (9th Cir. 1984).

Wynn-Williams' active participation in the arbitration speaks louder than her purported objection. She concedes that she filed a counterclaim. Dkt. 49 at 6; *see Amalgamated Sugar Co. LLC v. Agri-Sys.*, 2021 WL 1093612, at *3 (D. Idaho Mar. 22, 2021). She concedes that she engaged in merits discovery. Dkt. 49 at 7; *see Amalgamated Sugar*, 2021 WL 1093612, at *3 ("continu[ing] to seek discovery in the arbitration proceeding" indicated waiver of right to litigate

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

in court). She concedes that she sought relief from the arbitrator, multiple times—including that the Interim Award be vacated. Dkt. 49 at 5-7; *see* Dkt. 44-1 ¶ 29 (describing parties' submission of disputes over the protective order to the arbitrator). Having "voluntarily participated" in arbitration for well over a year, Wynn-Williams cannot now "challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983); *see also See L. Offs. of Richard E. Wilson, LLC v. Smith*, 2022 WL 16647769, at \*1 (9th Cir. Nov. 3, 2022) ("Because of Appellants' active participation in the arbitration until receiving the unfavorable ruling, Appellants waived the right to object to arbitrability.").[1]

Wynn-Williams' reliance on *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), is misplaced. In that case, the plaintiff's attorney "clearly stated" at the outset, "We are not ready or willing to proceed with arbitration." *Id.* at 1265. Wynn-Williams did no such thing. The *Nagrampa* plaintiff's "'participation' in the arbitration proceedings" was otherwise "minimal;" she "never participated in any proceedings which even touched the merits." *Id.* at 1278. But Wynn-Williams *did* "voluntarily participate[]" extensively in the arbitration "over a period of" 15 months, *Fortune*, 724 F.2d at 1357, and she received unfavorable rulings, including on arbitrability and the likelihood of success on the merits. Her numerous requests to the arbitrator to vacate the Interim Award were not to "avoid losing her right to do so." Dkt. 49 at 23. Nor was her other participation: She *sua sponte* served over 140 discovery requests on Meta. *See* Dkt. 44-1 ¶ 28. She cannot now "deny the authority of the arbitrator." *Fortune*, 724 F.2d at 1357. If she thought she had a viable claim in this Court, she could have filed it well over a year ago—instead of repeatedly seeking relief from the arbitrator and changing her mind only after seeing his rulings.

---

[1]    Wynn-Williams' attempt to distinguish *Amalgamated Sugar* fails, as she "never raised an objection" sufficient to overcome her extended participation in the arbitration. 2021 WL 1093612, at \*3. As explained above, any formalistic "objections" are insufficient. *See supra* pp.4-5. Wynn-Williams' reading of *Sobremonte v. Superior Court (Bank of America National Trust & Savings Association)*, 61 Cal. App. 4th 980 (Cal. Ct. App. 1998), is similarly flawed. The court's discussion of the relevance of a counterclaim to the question of waiver was not "*dicta*." Dkt. 49 at 24 n.10. Rather, it was part of the reasoning underlying the court's holding that "the Bank waived its right to arbitrate." *Sobremonte*, 61 Cal. App. 4th at 992.

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

Wynn-Williams fails to meaningfully engage with the post-*Nagrampa* Ninth Circuit cases Meta cites. She claims *Law Offices of Richard E. Wilson, LLC v. Smith* is inapplicable because appellants' objection was "equivocal at best." Dkt. 49 at 25. So was hers, but even setting that aside, the exact conduct that constituted waiver in *Wilson* occurred here: "Appellants [] agreed to an arbitration schedule, actively participated in pre-arbitration discovery regarding documents related to the merits of the contract dispute, and submitted a discovery dispute to the arbitrator." 2022 WL 16647769, at *1. And although the plaintiff in *Yu v. Gao* initiated the arbitration before changing course, it was also relevant to the Ninth Circuit that he "proceed[ed] with arbitration," including by "working to select an arbitrator" and participating in the "ongoing arbitration proceeding for over a year." 2026 WL 1180470, at *1 (9th Cir. Apr. 30, 2026). Wynn-Williams did exactly that, and she has no substantive response to these cases.

Wynn-Williams' attempts to distinguish Meta's other cited cases are similarly meritless. She claims *George Day* supports her because the Ninth Circuit recognized that a party *could* preserve jurisdictional objections for judicial review. Dkt. 49 at 24-25. But the Ninth Circuit made clear that, to preserve such an objection, the party would have to "*refuse[] to argue the arbitrability issue before him*," or make "an objection as to jurisdiction" of the arbitrator to decide arbitrability as well as "an express reservation of the question on the record." *George Day*, 722 F.2d at 1475 (emphasis added). Wynn-Williams did not do that but instead "requested the Arbitrator address her own concerns" and repeatedly asked the arbitrator to rule on arbitrability and her challenges to the Severance Agreement. Dkt. 49 at 24. As in *George Day*, it is "readily apparent" the parties "have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability." 722 F.2d at 1475. Wynn-Williams' description of *Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722 (9th Cir. 1991), only confirms that case precludes her arguments here. As she concedes, waiver occurs when a party seeks judicial review only "in the event the arbitrator" rules against her. Dkt. 49 at 25. That is what Wynn-Williams did.

Nor do any of the other cases Wynn-Williams cites speak to the circumstances here, where an emergency arbitrator issued an interim award, ruled on the likelihood of success on the merits,

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

and the party later seeking judicial relief repeatedly challenged that award on the merits *in the arbitration*. *See, e.g.*, Dkt. 44-8 at 1 (moving to vacate Interim Award because "Meta cannot establish a likelihood of success on the merits"); Dkt. 44-9 at 3 ("Resolving Ms. Wynn-Williams's Motion to Vacate should be top priority."); Dkt. 44-18 at 21 (requesting the arbitrator "dissolve the Interim Award"); Dkt. 44-19 at 2 ("this tribunal should lift the Interim Award"); Dkt. 44-25 at 1 (the "Tribunal should immediately dissolve" the Interim Award given its "constitutional error").

Faced with her obvious waiver, Wynn-Williams resorts to misrepresentations to this Court. Twice, she asserts that the arbitrator concluded that Wynn-Williams' participation in discovery "[wa]s not a waiver"—tellingly altering the quote to be in the past tense. Dkt. 49 at 2, 8; *see also* Dkt. 49-1 ¶ 2. As her counsel well knows, during a July 9, 2026, hearing, the arbitrator ordered the parties to continue to participate in discovery. In making the statement about waiver Wynn-Williams purports to quote, the arbitrator was responding to Wynn-Williams' counsel's concern that Meta would argue that continued participation would constitute *further* waiver, prospectively. In other words, the arbitrator noted that upcoming, further participation in discovery "is not a waiver," and he asked Meta to stipulate that Wynn-Williams' conduct *after July 9, 2026*, would not be the basis for its waiver arguments. The arbitrator's July 10, 2026, order memorializes this:

> Meanwhile, the Parties are encouraged to continue to move forward with discovery in the arbitration—contingent on Meta expressly stipulating that it will not raise any such *future*, voluntary participation by Ms. Wynn-Williams as *further* grounds for its argument that she has waived her right to proceed in court. (Any such stipulation would not preclude Meta's argument that Ms. Wynn-Williams's *earlier* participation in discovery already constitutes a waiver.).

Linhardt Decl., Ex. F at 3 (first emphasis added). While reserving its rights, Meta subsequently stipulated "that it will not, under the circumstances, argue that Respondent's *further* participation in discovery will constitute a *further* waiver." *Id.* at 1 (emphases added). Meta made clear it "maintains and does not abandon any and all arguments concerning Respondent's waiver." *Id.*

Wynn-Williams also misrepresents the record when she claims there was a "stay" pending "prolonged settlement discussions." Dkt. 49 at 7, 9. The parties did have settlement discussions, including two mediation sessions on September 25 and November 6, 2025. But in the meantime,

7

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

they also continued to actively participate in the arbitration. In July 2025, Wynn-Williams negotiated and submitted to the arbitrator agreed-upon case management dates, and in September 2025, she served (despite no deadline or order from the arbitrator) over 140 discovery requests on Meta. Dkt. 44-1 ¶ 28; *see* Linhardt Decl. ¶ 7. After the November 6, 2025, mediation, the parties reached an impasse. Linhardt Decl. ¶ 9. The next week, Wynn-Williams submitted agreed-upon adjusted case management dates to the arbitrator. *Id.* ¶ 10. Meta served its discovery requests later that month. *Id.* ¶ 11. Significantly, Wynn-Williams agreed to the modified discovery schedule without a stay or reservation related to arbitrability. *Compare* Dkt. 49-4 ¶ 7 (Procedural Order No. 2 setting evidence-disclosure request deadline on March 16, 2026, "[p]ursuant to the Parties' agreement"), *with* Dkt. 51-13 at 20 (Procedural Order No. 1 setting the deadline on December 19, 2025).

In December 2025, Wynn-Williams further asked Meta for an extension until February 6, 2026 to respond to Meta's discovery requests, representing that she had a personal family emergency requiring international travel. *See* Linhardt Decl. ¶ 12. Meta stipulated to a reciprocal extension, and the parties agreed to a standstill of filings from December to February 6. *Id*. Her assertion that the ultimate mutual extension on discovery responses was due to any stay or ongoing settlement negotiations is inaccurate, and her need to ask Meta for an extension confirms she understood there was no stay. Wynn-Williams did ask the arbitrator for a stay of the arbitration in February of this year, but she was unsuccessful. *See* Dkt. 44-15 at 5, 11.

Wynn-Williams contends that "the parties have not engaged in the Arbitration process meaningfully for over a year," Dkt. 49 at 10, but that is simply not true. In the past year, the parties have spent more than seven weeks negotiating a comprehensive protective order, exchanged multiple rounds of redlines, twice presented disputes to the arbitrator, and then proceeded with written discovery after the arbitrator entered the order. *See* Dkt. 44-1 ¶ 29; Dkt. 44-23. The parties at the same time communicated about the deadlines for discovery responses and agreed to a mutual exchange of written discovery responses and objections. Dkt. 44-1 ¶ 30. Meta responded to Wynn-Williams' 143 written discovery requests and produced thousands of pages of documents that

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

include various party communications, Wynn-Williams' performance reviews, personnel records, Meta employee policies, and other documents concerning her employment, the Severance Agreement, and the claims and defenses in the arbitration. *See id.* ¶ 28. On June 26, the day after filing this lawsuit, Wynn-Williams served her verified responses and objections to Meta's discovery requests in the arbitration as well. *Id.* ¶ 30. The parties further briefed and argued Meta's application for sanctions. Dkts. 44-14, 44-15, 44-17, 44-18. Finally, regardless when Wynn-Williams first "contemplat[ed]" or threatened an improper court filing, Dkt. 49 at 6, she waited over a year and filed nothing in court until after receiving multiple unfavorable rulings including on arbitrability and the likelihood of success on the merits.

### B.    Wynn-Williams voluntarily agreed to arbitration.

This Court should compel arbitration because Wynn-Williams knowingly and unmistakably agreed to arbitration—and to have the arbitrator decide arbitrability—in her Severance Agreement, which was heavily negotiated, edited, and revised by her experienced employment counsel. *See* Dkt. 28 at 8-11. The parties agreed that "*any and all disputes* arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration." Severance Agreement § 16(d) (emphasis added). Wynn-Williams makes no attempt to respond to this clear language. Dkt. 49 at 9-10.

Unable to get around the parties' unambiguous agreement to arbitrate this dispute, Wynn-Williams argues the arbitration provision "expressly preserves" her ability to seek a preliminary injunction in court at *any time* that suits her. Dkt. 49 at 9-10. Her distorted reading of the Severance Agreement is wrong. The provision permits "either party" to "seek[] preliminary injunctive relief (or any other provisional remedy) from any court having jurisdiction over the parties and the subject matter of their dispute relating to this Agreement." Severance Agreement § 16(d). Her interpretation of this provision is contrary to Ninth Circuit law. Properly understood, that language authorizes a party to seek preliminary injunctive relief in court at the *outset* of an arbitration if such relief is necessary to preserve the status quo *before* a merits arbitrator can be assigned. *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (reversing district court's denial

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

of motion to compel and interpreting similar language to "only permit[] the district court to issue equitable relief in aid of arbitration, not determine the merits of an arbitrable dispute"); *see also Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 867 (9th Cir. 2021) (recognizing that "a district court may issue interim injunctive relief on arbitrable claims *if* interim relief is necessary to *preserve the status quo and the meaningfulness of the arbitration process*—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied" (emphasis added)); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming denial of preliminary injunctive relief where all the claims were arbitral and arbitrator had authority to grant same relief). Here, there was no need for Meta to seek such relief because the emergency arbitrator promptly granted Meta's request to preserve the status quo; Wynn-Williams, represented by counsel, chose not to seek such relief herself. Wynn-Williams' reading of Section 16(d) would hinder rather than facilitate the parties' agreement to arbitrate. *See, e.g.*, *Dohrmann*, 823 F. App'x at 484.

Even if Section 16(d) could be read as Wynn-Williams suggests, her argument still fails. According to her, Section 16(b) permits her to seek "preliminary injunctive relief." Dkt. 49 at 9. But she seeks far more than that in this Court. She asks this Court to "[a]ward [her] compensatory and punitive damages," "vacat[e] the Interim Award," "declar[e]" both the Interim Award and the Severance Agreement "unenforceable," and permanently "enjoin[] Meta's arbitration against [her]." Dkt. 1 at 56-57. The agreement she signed does not authorize any of that.

###### C.    There is no basis for mid-arbitration judicial intervention.

Mid-arbitration intervention is otherwise not warranted. In three months, the arbitrator will conduct the final merits hearing and issue a final order that may obviate the need for this Court's review. The arbitrator could have resolved the dispute even sooner, but Wynn-Williams opposed a more expedited schedule, despite now claiming she needs this immediate injunctive relief from the Court. Wynn-Williams' contrary arguments are meritless.

*First*, Wynn-Williams contends the EFAA "precludes arbitration of her claims." Dkt. 49 at 9. To invoke the EFAA, she must establish that (1) she "elect[ed]" to proceed in court rather than arbitration, (2) this case "relates to … the sexual harassment dispute," and (3) the Severance

Agreement is a "predispute arbitration agreement." 9 U.S.C. § 402(a); *see Lewis v. Tesla, Inc.*, 2025 WL 2653639, at *2 (N.D. Cal. Sept. 16, 2025) ("A plaintiff bears the burden of establishing that [the] arbitration agreement may be invalidated pursuant to the EFAA."). She fails on all three.

Wynn-Williams fails entirely to grapple with the EFAA's requirement that a party "elect[]" to proceed in court rather than in arbitration. 9 U.S.C. § 402(a). Here, Wynn-Williams elected to arbitrate. *See* Dkt. 28 at 17; Dkt. 51 at 7-10. Before ever invoking a federal forum, she spent 15 months participating in the arbitration—seeking a ruling on arbitrability and the likelihood of success on the merits, filing a counterclaim for breach of contract, propounding over 140 discovery requests, and repeatedly seeking relief from the arbitrator. Wynn-Williams exercised her election when she chose to pursue claims in arbitration.

Attempting to bring this breach of contract case under the EFAA, Wynn-Williams asserts that this case "relates to … the sexual harassment dispute," 9 U.S.C. § 402(a), because "her whistleblower complaints and her book *Careless People* detail … sexual harassment of Ms. Wynn-Williams," Dkt. 49 at 13-14.[2] To begin, Meta has never sought any relief in the arbitration relating to her complaints to the SEC or DOJ. And the claims Wynn-Williams raises in this Court sound in contract, not sexual harassment. *See* Dkt. 28 at 19-20; Dkt. 51 at 10-12. Those contract claims do not "relate[] to" any sexual harassment dispute because they have no "connection with or reference to" sexual harassment. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020). Nor does a contract dispute "relate to" sexual harassment merely because the content of the allegedly breaching speech discusses purported harassment—among dozens of other topics. Whether any sexual harassment occurred is completely irrelevant to the contract claims at issue.

At bottom, Wynn-Williams' position is that any case at all can "relate to" a sexual harassment dispute so as long as the plaintiff alleges some sexual harassment occurred at some time—even if the alleged harassment has absolutely nothing to do with any of the plaintiff's claims. None of the cases she cites endorses that boundless reading of the EFAA. *See Polen v. API*

---

[2]   It is not true that Wynn-Williams' "Complaint would … state a claim for sexual harassment under California law." Dkt. 49 at 14. The statutes of limitations lapsed long ago. *See* Dkt. 28 at 20. And she does not even attempt to argue the elements of any of those long-expired claims.

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

*Grp. Life Safety USA, LLC*, 2025 WL 3251349, at *5 (D. Or. Nov. 21, 2025) (EFAA applied where plaintiff claimed discrimination based on her status as a victim of sexual violence); *Lee v. Marriott Int'l, Inc.*, 2025 WL 2689263, at *1 (N.D. Cal. Sept. 21, 2025) (EFAA applied where plaintiff's "main claims" were discrimination "on the basis of pregnancy, pregnancy disability, and gender"); *Butler v. JSerra Cath. High Sch.*, 2025 WL 4057443, at *2 (C.D. Cal. Sept. 10, 2025) (EFAA applied where plaintiff claimed "sexual harassment"); *Solis v. Prime Comms Retail, LLC*, 2025 WL 1255143, at *3 (C.D. Cal. Apr. 7, 2025) (EFAA applied where plaintiff brought "sexual harassment claims"); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 516 (S.D.N.Y. 2024) (EFAA applied where plaintiff brought "sexual harassment claims under the New York State Human Rights Law … and the New York City Human Rights Law"). No court has held that a breach-of-contract claim "relates to" sexual harassment simply because the underlying speech mentioned harassment. This Court should not be the first.

Wynn-Williams next contends that the Severance Agreement is a "predispute arbitration agreement," 9 U.S.C. § 402(a), because it was necessarily executed before she "published *Careless People* and Meta alleged that doing so breached her obligations under the Severance Agreement." Dkt. 49 at 15. This argument misapprehends the relevant "dispute" for purposes of the EFAA. The EFAA's text makes clear that the relevant dispute is not, as Wynn-Williams suggests, "the particular dispute before the Court." Dkt. 49 at 15, but rather the alleged "sexual harassment dispute," 9 U.S.C. § 402(a). The EFAA is triggered if a person "alleg[es] conduct constituting *a sexual harassment dispute*" and the "case … relates to *the sexual harassment dispute*." *Id*. (emphasis added). To determine if an arbitration agreement is pre*dispute*, the EFAA naturally asks whether the agreement predates that qualifying "dispute"—*i.e.*, the alleged *sexual harassment dispute* to which the case relates. *Id.* § 401(1). Any other reading would permit plaintiff to "evade valid arbitration clauses" simply by characterizing any subsequent controversy as a "new dispute" that "relates to" historical harassment allegations, precisely the "absurd result" courts have rejected. *Richards v. Silver*, 433 So. 3d 433, 440 (Fla. Dist. Ct. App. 2026) (such a reading of the EFAA "would … frustrat[e] Congress's intent"). Wynn-Williams' opposition appears to recognize

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

that her reading would render the EFAA an exception that swallows the rule. *See* Dkt. 49 at 18 (suggesting that a dispute "necessarily could not have arisen[] before the agreement itself came about"). And she identifies not a single court that has adopted her atextual reading of the statute.

As with the statutory text, Wynn-Williams disregards the Ninth Circuit's reasoning in *Combs v. Netflix, Inc.*, 2026 WL 1974172 (9th Cir. July 8, 2026). Wynn-Williams says "the dispute at issue [w]as Combs's complaint for 'various state law claims of discrimination, harassment, and hostile work environment.'" Dkt. 49 at 18. That misstates the Ninth Circuit's holding. The Ninth Circuit was clear that the dispute in that case arose "at the latest" when the employee "complained to Netflix" about sexual harassment and "Netflix then allegedly failed to take any corrective action." *Netflix*, 2026 WL 1974172, at *6. It explained that "[w]hen an employee complains to her employer about the actions of co-employees," a "dispute" within the meaning of the EFAA "arises once the employer responds negatively, or constructively so, to the employee's complaints." *Id.*

Under *Netflix*, any sexual harassment dispute here arose at the latest when Wynn-Williams raised her allegations internally to Meta, Meta investigated, and Meta concluded the allegations were baseless—all before Wynn-Williams' termination. *See* Dkt. 28 at 17-19; Dkt. 51 at 12-14. Wynn-Williams contends she and Meta were not "adverse" when she complained and Meta investigated because her complaint was not "formal." Dkt. 49 at 18-19. That defies both common sense and Wynn-Williams' book, which makes clear she and Meta were very much adverse at the time of the investigation. *See* Dkt. 51 at 13. It is also inconsistent with *Netflix*, which confirms that a "sexual harassment dispute" does not require a "formal complaint." 2026 WL 1974172, at *4.

In a last-ditch effort to conjure some sexual harassment dispute postdating her Severance Agreement, Wynn-Williams indicates that she did not "publicly" complain of the alleged 2016 harassment from Sheryl Sandberg "until the publication of *Careless People*," and that she has other allegations against Joel Kaplan that she had not presented to Meta before her termination. Dkt. 49 at 19. But broadening allegations of sexual harassment after signing an agreement to arbitrate (and which she chose not to raise for eight years) does not make the agreement disappear or somehow inoperative. If it did, Congress's distinction between "predispute" and postdispute agreements

would be meaningless. A former employee could belatedly raise or even fabricate additional allegations not previously presented, and the arbitration agreement would be null and void. Here, the relevant dispute arose in 2017; Meta addressed, investigated, and rejected the allegations of sexual harassment that Wynn-Williams had raised. Wynn-Williams then negotiated and signed her Severance Agreement, with full knowledge of the events she now claims (8 or 9 years later) warrant application of the EFAA. Under *Netflix*, the agreement is postdispute.

For all these reasons, Wynn-Williams' attempt to invoke the EFAA fails under a plain reading of the statute. It also fails because any sexual harassment dispute arose in 2017, *see supra* p.13; the EFAA was enacted on March 3, 2022; and, under Ninth Circuit precedent and "binding law," the EFAA is not retroactive. *Netflix*, 2026 WL 1974172, at *3; *see also* Dkt. 28 at 20. Meta's position is not "undeveloped," Dkt. 49 at 18; it is simple.

*Second*, Wynn-Williams argues this Court should intervene because "Meta is estopped from" seeking arbitration based on a Meta "2018 press statement" indicating arbitration would be optional for "employees reporting a *sexual harassment claim*." Dkt. 49 at 9, 21 (emphasis added). But this is an issue for the arbitrator, *see* Severance Agreement § 16(d), and the arbitrator already decided it against Wynn-Williams, *see* Dkt. 44-6 at 14 (Meta's "general public statements regarding not requiring sexual harassment victims to arbitrate sexual harassment claims does not establish that [Meta] waived its rights to pursue this arbitration against [Wynn-Williams]."). The cases Wynn-Williams relies upon in attempting to persuade this Court to decide this issue despite the parties' clear agreement are inapposite. Dkt. 49 at 20. None involved the circumstances here, where Wynn-Williams herself submitted her estoppel argument to the arbitrator for decision, and none involved agreements that delegated arbitrability to the arbitrator.

Wynn-Williams' argument also fails on its merits. The Severance Agreement "may not be changed, amended, modified, altered or rescinded" absent express written consent by Meta's CEO and Wynn-Williams. Severance Agreement § 16(a). A public statement on a different issue is not sufficient. Furthermore, this case does not involve any sexual harassment claims. *See supra* pp.11-12. Wynn-Williams has not identified any promise from Meta that "clear[ly] and

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341

unambiguous[ly]" encompassed contract claims like hers. *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976). It is implausible that she "relied" on a statement from 2018 when she published her book in 2025. *Id.* And any reliance would not be "reasonable," as her contract claims are not sexual harassment claims. *Id.*

*Third*, Wynn-Williams argues that, at the very least, "two of [her] claims cannot be arbitrated under any circumstances." Dkt. 49 at 10. She is wrong as to both. Wynn-Williams argues that Count I ("9 U.S.C. § 10—Review of a Temporary Equitable Award") cannot be arbitrated pursuant to the FAA. *See* Dkt. 49 at 11. But under the FAA, judicial review of interim awards "should be indulged, *if at all*, only in the most extreme cases." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance*, 935 F.2d 1019, 1022 (9th Cir. 1991) (emphasis added). Wynn-Williams' opposition does not even try to explain how she satisfies this standard. *See generally* Dkt. 49 (failing to cite *Pacific Reinsurance*). She cannot. *See* Dkt. 28 at 15-16; Dkt. 51 at 20-21. But even if the Interim Award were considered final enough for judicial review, such review would still be foreclosed by the FAA's three-month time bar. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate … an award must be served … within three months after the award is filed or delivered."). Wynn-Williams also argues that Count VII ("Declaratory Judgment—Ending Forced Arbitration Act") cannot be arbitrated pursuant to the EFAA, 9 U.S.C. § 402(b). *See* Dkt. 49 at 11. That statute provides that, where the EFAA is invoked, its "applicability … shall be determined by a court." 9 U.S.C. § 402(b). But because Wynn-Williams elected to arbitrate rather than invoke the EFAA, *see supra* p.11, her reliance on Section 402(b) is misplaced. *See also* Dkt. 28 at 17, Dkt. 51 at 10. In any event, the EFAA has no applicability in this breach of contract case. *See supra* pp.11-12.

## II.    THE COURT SHOULD STAY ALL PROCEEDINGS PENDING ARBITRATION.

Wynn-Williams concedes that, if this matter is arbitrable, then this Court "*shall* … stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3 (emphasis added).

## CONCLUSION

For the foregoing reasons, this Court should grant Meta's motion to compel arbitration and stay all proceedings concerning Wynn-Williams' complaint.

DATED: July 27, 2026                              Respectfully submitted,

                                                  /s/ Alex Linhardt
Jonathan F. Cohn* (DC 476551)                     Mathew S. Rosengart (SBN CA 255750)
Mary Elizabeth Miller* (DC 252694)                Mark D. Kemple (SBN CA 145219)
200 Massachusetts Ave., NW, Suite 700             Alex Linhardt (SBN CA 303669)
Washington, DC 20001                              GREENBERG TRAURIG, LLP
William T. Thompson* (TX 24088531)                1840 Century Park East, Suite 1900
7500 Rialto Blvd., Suite 1-250                    Los Angeles, California 90067-2121
Austin, TX 78735                                  Telephone: 310.586.7700
LEHOTSKY COHN LLP                                 Facsimile: 310.586.7800
Telephone: (512) 693-8350                         rosengartm@gtlaw.com
Facsimile: (512) 727-4755                         kemplem@gtlaw.com
jon@lehotskycohn.com                              linhardta@gtlaw.com
mary@lehotskycohn.com
will@lehotskycohn.com                             *Attorneys for Defendant Meta Platforms,
                                                  Inc.*

*Attorneys for Defendant Meta Platforms,
Inc.*

* Admitted *pro hac vice*.

META'S REPLY IN SUPPORT OF MOTION TO COMPEL, CASE NO. 4:26-cv-06341