**SELENDY GAY PLLC**
Philippe Z. Selendy*
Jennifer M. Selendy*
Claire E. O'Brien*
Corey Stoughton*
Drake Reed*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
cstoughton@selendygay.com
dreed@selendygay.com

* Admitted *pro hac vice.*
*Attorneys for Plaintiff Sarah Wynn-Williams*

**ZEITGEIST LAW**
Marcia Hofmann (SBN 250087)
505 Montgomery Street
San Francisco, CA 94111
Tel: 415-830-6664
marcia@zeitgeist.law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

SARAH WYNN-WILLIAMS,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Case No.: 4:26-cv-06341-AMO

SARAH WYNN-WILLIAMS'S REPLY IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AND TO VACATE INTERIM ARBITRATION AWARD

Date: August 20, 2026
Time: 2:00 pm
Judge: Hon. Araceli Martínez-Olguín
Courtroom: 5, 2nd Floor

**TABLE OF CONTENTS**


**Page**

INTRODUCTION ....... 1

I. The Court Should Enjoin the Arbitration, and Meta's Contrary Arguments Fail ....... 1

A. The EFAA Requires the Court to Enjoin the Arbitration ....... 1

1. Ms. Wynn-Williams Did Not Waive Her Election to Proceed in Court ....... 1

2. This Case Relates to a Sexual Harassment Dispute ....... 4

3. The Severance Agreement is a Predispute Arbitration Agreement, and Application of the EFAA to this Dispute is Not Retroactive ....... 7

B. Meta is Estopped from Compelling Arbitration ....... 9

C. Ms. Wynn-Williams Is Suffering Irreparable Harm ....... 9

D. The Equities and the Public Interest Favor Relief ....... 11

II. The Court Should Vacate the Interim Award ....... 11

A. Meta's Procedural Objections Fail ....... 11

B. The Interim Award Violates the First Amendment ....... 13

CONCLUSION ....... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. S. Cal. Edison*,
885 F.2d 525 (9th Cir. 1989) ....................10

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ....................9

*Benisek v. Lamone*,
585 U.S. 155 (2018)....................10

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,
671 F.3d 635 (7th Cir. 2011) ....................12

*Bushley v. Credit Suisse First Bos.*,
360 F.3d 1149 (9th Cir. 2004) ....................11

*Butler v. JSerra Catholic High Sch.*,
2025 WL 4057443 (C.D. Cal. Sept. 10, 2025) ....................6

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
915 F.2d 1333 (9th Cir. 1990) ....................10

*Chevron USA Inc. v. Plaquemines Par.*,
146 S. Ct. 1052 (2026)....................5

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
2009 WL 1766595 (N.D. Cal. June 22, 2009)....................10

*Combs v. Netflix*,
180 F.4th 1201 (9th Cir. 2026) ....................6, 7, 8

*Cornelius v. CVS Pharmacy, Inc.*,
133 F.4th 240 (3d Cir. 2025) ....................7

*Corrales Law PC v. Equal Access Just. Fund LP*,
2025 WL 2816789 (S.D. Cal. Sept. 5, 2025)....................10

*Diaz-Roa v. Hermes L., P.C.*,
757 F. Supp. 3d 498 (S.D.N.Y. 2024)....................6

*DVD Copy Control Ass'n, Inc. v. Bunner*,
31 Cal. 4th 864 (Cal. 2003)....................15

*Elrod v. Burns*,
427 U.S. 347 (1976)....................9

*Empros Cap. LLC v. Rosenbach*,
2020 WL 6684854 (N.D. Cal. Nov. 12, 2020) ....................9

*Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*,
822 F.2d 833 (9th Cir. 1987) ....................15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................2

*Fisher v. Biozone Pharms., Inc.*,
2017 WL 1097198 (N.D. Cal. Mar. 23, 2017) ....................13

*Fortune, Alsweet & Eldridge, Inc. v. Daniel*,
724 F.2d 1355 (9th Cir. 1983) ....................2

*Gal v. Meta Platforms, Inc.*,
2026 WL 1864073 (N.D. Cal. June 29, 2026) ....................6

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ....................10

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174 (1988) ....................7

*GRK Fasteners Ltd. v. Bennett*,
2004 WL 1211919 (D. Or. May 14, 2004) ....................13

*Idaho v. Coeur d'Alene Tribe*,
794 F.3d 1039 (9th Cir. 2015), Opp. 18 ....................10

*Island Creek Coal Sales Co. v. City of Gainesville*,
729 F.2d 1046 (6th Cir. 1984) ....................12

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) ....................13, 15

*Johannessen v. JUUL Labs, Inc.*,
2024 WL 3173286 (N.D. Cal. June 24, 2024) ....................6

*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert*,
194 Cal. App. 4th 519 (Cal. Ct. App. 2011) ....................15

*Kleist v. Credit Suisse (USA) LLC*,
2026 WL 1507831 (N.D. Cal. May 29, 2026) ....................10

*Lee v. Marriott Int'l Inc.*,
2025 WL 2689263 (N.D. Cal. Sept. 21, 2025) ....................6

*Leonard v. Clark*,
12 F.3d 885 (9th Cir. 1993) ....................14

*Lorentzen v. Levolor Corp.*,
746 F. Supp. 1228 (S.D.N.Y. 1990) .......... 10

*Malem Med., Ltd. v. Theos Med. Sys.*,
761 F. App'x 762 (9th Cir. 2019) .......... 13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .......... 10

*Memmer v. United Wholesale Mortg., LLC*,
135 F.4th 398 (6th Cir. 2025) .......... 1, 7

*Millennial Plastic Surgery PLLC v. James*,
2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021) .......... 13

*Morgan Stanley & Co. v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015) .......... 9, 10

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 15

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257 (9th Cir. 2006) .......... 1, 2

*Naoko Ohno v. Yuko Yasuma*,
723 F.3d 984 (9th Cir. 2013) .......... 15

*NCR Corp. v. Goh*,
2016 WL 9331287 (W.D. Wash. Feb. 4, 2016) .......... 11

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1071 (C.D. Cal. 2003) .......... 15

*Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*,
2006 WL 1428319 (M.D. Fla. May 17, 2006) .......... 12

*Oakland Trib., Inc. v. Chronicle Publ'g Co.*,
762 F.2d 1374 (9th Cir. 1985) .......... 10

*Pacific Reinsurance Management Corp.*,
935 F.2d 1019 (9th Cir. 1991) .......... 12, 15

*Postmates Inc. v. 10,356 Individuals*,
2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) .......... 11

*Powell v. United States Sec. & Exch. Comm'n*,
149 F.4th 1029 (9th Cir. 2025) .......... 13

*Ramirez v. Domino's Pizza Supply Chain*,
2024 WL 5452684 (D. Colo. Nov. 8, 2024) .......... 2

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ....................10

*Richards v. Silver*,
433 So. 3d 433 (Fla. Dist. Ct. App. 2026) ....................8

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
2016 WL 815205 (S.D.N.Y. Feb. 29, 2016) ....................13

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
679 F. App'x 33 (2d Cir. 2017) ....................13

*Russello v. United States*,
464 U.S. 16 (1983) ....................4

*Sanchart Sec. Int'l, Inc. v. Gavaldon*,
2012 WL 5471933 (S.D. Cal. Nov. 9, 2012) ....................10

*Scoggins v. Menard, Inc.*,
2025 WL 1369010 (6th Cir. May 12, 2025) ....................2

*Shelley v. Kraemer*,
334 U.S. 1 (1948) ....................15

*Solis v. Prime Comms Retail, LLC*,
2025 WL 1255143 (C.D. Cal. Apr. 7, 2025) ....................6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ....................14

*In re Sussex*,
781 F.3d 1065 (9th Cir. 2015) ....................12

*Swenson v. Bushman Investment Properties, Ltd.*,
870 F. Supp. 2d 1049 (D. Idaho 2012) ....................12

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,
591 F.3d 1167 (9th Cir. 2010) ....................3

*Univ. of Haw. Pro. Assembly v. Cayetano*,
183 F.3d 1096 (9th Cir. 1999) ....................11

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
10 Cal. App. 5th 56 (2017) ....................9

*Yasuda Fire & Marine Ins. Co. of Eur., Ltd v. Cont'l Cas. Co.*,
37 F.3d 345 (7th Cir. 1994) ....................12

*Yost v. Everyrealm, Inc.*,
657 F. Supp. 3d 563 (S.D.N.Y. 2023) ....................6

**Statutes & Rules**

U.S. Const. amend. I ........ 9, 13, 14

9 U.S.C. § 2 ........ 7

9 U.S.C. § 9 ........ 13, 14

9 U.S.C. § 12 ........ 12

9 U.S.C. § 401 ........ 4, 5, 7

9 U.S.C. § 402 ........ 2, 3, 4, 5

Cal. Civ. Code § 1698(d) ........ 9

## INTRODUCTION

Meta's[1] opposition to Ms. Wynn-Williams's motions exists in a state of denial. Denial that Meta created this dispute by dragging Ms. Wynn-Williams into an arbitration she has consistently opposed. Denial that the arbitration relates to Meta's effort to silence allegations of sexual harassment. Denial that the EFAA prohibits compelled arbitration of employer-initiated disputes relating to allegations of sexual harassment. Denial that the time between Meta's initiation of the arbitration and the filing of this action was spent solely on settlement discussions, delays caused by an unexpected conflict of counsel, and limited preliminary proceedings. Denial that Emergency Arbitrator issued a prior restraint on speech without ever adjudicating whether Ms. Wynn-Williams waived her right to engage in that speech. Denial that Meta only recently began exploiting the vagueness of the Interim Award to threaten sanctions for actions far beyond anything prohibited by the Severance Agreement's non-disparagement clause. Denial that the Interim Award, and Meta's sanctions threats, have coercive effect because they are backed by state judicial power.

Yet all of these things are true, and are the reasons the Court should vacate the unconstitutional Interim Award and enjoin the unlawful arbitration.

## ARGUMENT

### I. The Court Should Enjoin the Arbitration, and Meta's Contrary Arguments Fail

#### A. The EFAA Requires the Court to Enjoin the Arbitration

##### 1. Ms. Wynn-Williams Did Not Waive Her Election to Proceed in Court

Meta's contention that Ms. Wynn-Williams waived or forfeited her EFAA right to elect to challenge compelled arbitration is incorrect. Opp. 7-10. Because the "EFAA is directly codified as a limitation upon the court's power to compel arbitration under the FAA," it is "doubtful that a party opposing arbitration can forfeit proper application of the statute." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 406 n. 3 (6th Cir. 2025). Meta cites no authority to the contrary.

Regardless, Meta's failure to establish any "intentional relinquishment or abandonment of a known right" is fatal to its waiver argument. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1278-79 (9th Cir. 2006) (en banc); *see also* Opp. Mot. Compel. 5-9 (recounting Ms. Wynn-

[1] Undefined terms herein have the meaning assigned in Ms. Wynn-Williams's Complaint, Dkt. 1.

Williams's limited participation in the arbitration). Meta, not Ms. Wynn-Williams, initiated arbitration. That alone distinguishes most of Meta's cases. Meta does not cite any case holding that a party waives a right to challenge arbitration by re-invoking the challenge repeatedly while taking solely defensive measures. That is not the law. The Court should reject Meta's "attempts to twist ... limited participation in preliminary matters—while she maintained her objection to proceeding by way of arbitration at all—into conduct that would constitute a waiver." *Nagrampa*, 469 F.3d at 1279. *Nagrampa* makes clear that a party does not waive an objection to arbitration by filing a "counter-demand and discovery requests" and participating in "preliminary hearing conferences" to "preserve her rights." *Id*. at 1277-78. Meta cannot distinguish *Nagrampa* on the facts.

Meta argues that a party dragged into arbitration must make an "election" under the EFAA prior to any initial objection to arbitrability before an arbitrator, but that is not the law either. *Cf. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995) ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue."). Meta's scant, out-of-circuit, unpublished authority does not suggest otherwise. Meta treats *Ramirez v. Domino's Pizza Supply Chain* as a smoking gun but ignores that the plaintiff there had "initiated arbitration against Defendants" then sued in federal court before invoking the EFAA. 2024 WL 5452684, at *2, *6 (D. Colo. Nov. 8, 2024), *R&R adopted*, 2025 WL 414381 (D. Colo. Feb. 6, 2025). Similarly, in *Scoggins v. Menard, Inc.*, the Sixth Circuit found abuse of discretion when a district court *sua sponte* invoked the EFAA to override the plaintiff's affirmative agreement that her case should be arbitrated. 2025 WL 1369010, at *1 (6th Cir. May 12, 2025) (per curiam). Meta invokes *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983) (per curiam), which is unpersuasive because, as the *Nagrampa* court observed, "the plaintiff objected to arbitration after attending two hearings on the merits and after his employer had presented all of its evidence." *Nagrampa,* 469 F.3d at 1279 (citing *Fortune*, 724 F.2d at 1356-57).

Having faulted Ms. Wynn-Williams for raising arbitrability with the arbitrator, Meta then faults her for *failing* to raise EFAA arbitrability with the arbitrator. Opp. 7-8. But that argument makes no sense, as the EFAA requires that its applicability be "determined by a court," 9 U.S.C. § 402(b), so there was no reason to raise it with the arbitrator. And there is no automatic stay

under the EFAA, so Ms. Wynn-Williams was right to both object to arbitrability before the arbitrator and seek to enforce the EFAA in court.

Unable to reconcile its theory with the facts or the law, Meta supplies a motive. It repeatedly accuses Ms. Wynn-Williams of “changing tactics” “after receiving unfavorable rulings” and “concluding the arbitration is not going her way.” Opp. 1, 8, 9, 17. This is categorically false.

*First*, there have been no merits rulings, nor have the Arbitrator’s rulings been “unfavorable.” Meta wishes to create the impression that its victory before the Arbitrator is guaranteed, but there is no basis for such hubris. Other than procedural rulings that have favored Ms. Wynn-Williams at least as much as Meta, the rulings to date are an *ex parte* emergency award issued without opposition, the denial of vacatur by the same Emergency Arbitrator who issued it, and multiple denials of Meta’s requests to immediately impose sanctions. *See* Dkts. 41-4, 41-8, 41-22, 41-26 (O’Brien Decl. Exs. C, G, U, Y). Not one resolves the merits, and the most recent denial suggests that Meta’s merits claims are less clear-cut than Meta believes them to be. *See id*.

*Second*, the 15-month span of arbitration reflects Ms. Wynn-Williams’s attempts to find the best path out of the arbitration; not one second was spent “bid[ing] her time” or “try[ing her] hand.” *Contra* Opp. 8, 17. She scrambled to respond to Meta’s demand and the *ex parte* Interim Award; participated in settlement discussions and formal mediation while discovery was stayed; exchanged initial discovery demands to preserve rights; struggled with the withdrawal of predecessor counsel due to an undisclosed, unwaivable conflict involving Meta; responded to Meta’s aggressive demands for sanctions; and consistently objected to arbitrability, including by stating her intent to initiate “parallel court proceedings” from the outset. *See* Opp. Mot. Compel. 5-9.

*Third*, the relief Ms. Wynn-Williams seeks is the opposite of forum-shopping a loss. *Contra* Opp. 8. The EFAA does not offer a second forum after arbitration; it prevents forced arbitration from happening at all and commits that question to a court “irrespective of whether the agreement purports to delegate such determinations to an arbitrator.” 9 U.S.C. § 402(b). Post-award review would be no substitute. Section 10 of the FAA supplies “the exclusive grounds for vacating an arbitration award” and requires a posture of deference bearing no resemblance to the adjudication Congress guaranteed in the EFAA. *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167,

1173 (9th Cir. 2010). Rather than seeking a better audience for a case she is losing, Ms. Wynn-Williams is asking this Court to ensure that merits questions—which have not yet been addressed by the Arbitrator and which Ms. Wynn-Williams has never asked the Arbitrator to address—are resolved in the forum Congress intended.

### 2. This Case Relates to a Sexual Harassment Dispute

The EFAA applies because this case "relates to" a "sexual harassment dispute." 9 U.S.C. § 402(a). That is all the statute requires. The EFAA expressly is *not* limited to cases seeking direct legal redress for sexual harassment. Meta's accusation that Ms. Wynn-Williams is "latch[ing] onto the statutory phrase 'relates to,'" Opp. 11, reveals only that her argument is grounded in the statutory text, which broadly covers cases in which employers seek to silence accusers by channeling disputes that implicate accusations of sexual harassment into private arbitration.

Meta argues that (1) the EFAA only applies where plaintiffs bring sexual harassment claims, excluding claims related to an employer's retaliatory reaction to sexual harassment allegations, Opp. 10; and (2) the relationship between this case and the underlying sexual harassment dispute is so "tenuous, remote or peripheral" that it cannot satisfy the EFAA's "relates to" requirement, *id*. 11. Both points rest on an indefensible reading of the statute. Congress could have limited the EFAA to cases seeking direct redress for sexual harassment under applicable Federal, Tribal, or State law. But it did not. Instead, recognizing that sexual harassment disputes arise in a diversity of formats and wishing to be comprehensive, Congress used intentionally capacious language that sweeps in any "case" that "relates to" a "sexual harassment dispute." 9 U.S.C. § 402(a). It further defined "sexual harassment dispute" broadly to cover any "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," and did not restrict the definition to formal legal claims of sexual harassment. *Id*. § 401(4).

Several aspects of this language bear emphasis. *First*, Congress used the word "dispute" instead of "claim" to avoid specifying the type of claim that must be at issue. Congress knew how to write "claim." It used "claim" in the effective-date note, *id*. § 401 note, but not in § 401(4) or § 402(a). That choice is presumed deliberate. *Russello v. United States*, 464 U.S. 16, 23 (1983).

*Second*, the EFAA confers rights on a *person alleging conduct*, not a plaintiff pleading a

count. 9 U.S.C. § 402(a). "[A]pplicable ... law" supplies the standard for determining whether that conduct is "alleged to constitute" harassment, *id*. § 401(4); it does not require that the pleading assert a violation of that law and is intended only to prevent the EFAA from becoming an escape hatch from arbitration of claims that have no legitimate relationship to sexual harassment. Here, the sexual harassment alleged in the Complaint and in *Careless People* would state a claim for sexual harassment under California law,[2] and thus "constitute[s] sexual harassment under applicable Federal, Tribal, or State law" under § 401(4). *See* Opp. Mot. Compel. 14-15 & n.8.

*Third*, Congress used the phrases "relates to" and "relating to" twice, clearly sweeping in cases distinct from the sexual harassment dispute. Meta's reading would make these phrases surplusage, since a harassment dispute necessarily relates to itself. "The phrase 'relating to' sweeps broadly," and "means to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1060 (2026) (cleaned up). Both the arbitration and this action "refer" and are in "association with or connection with" Ms. Wynn-Williams's sexual harassment dispute with Meta. *Id.*; *see also* Mot. Prelim. Inj. at 16-17. The arbitration is meant to silence her from speaking about that harassment and this action challenges Meta's retaliation in response to her publicizing it.

Recognizing this meaning does not stretch the statute to "indeterminacy." *Contra* Opp. 11. On the contrary, it stays true to Congress's intentional use of capacious language to end forced arbitration even where powerful corporations like Meta might deploy the practice in creative ways to silence victims of sexual harassment. The House Report on the EFAA emphasizes that victims subject to compelled arbitration "are often unable to seek justice in a court of law, enforce their rights under state and federal legal protections, or even simply share their experiences," that "[t]he secretive nature of arbitration … prevents victims from sharing their stories," and that "forced arbitration clauses in employment contracts are often coupled with non-disclosure agreements, ensuring minimal scrutiny of corporate misconduct." H.R. Rep. No. 117-234 (2022). Congress understood that legal disputes about harassment often arise, as this one does, not from victim-

[2] Meta's rejoinder that such a claim would be untimely, Mot. Compel at 20, misses the point. The EFAA looks to allegations of sexual harassment "conduct," not claims. 9 U.S.C. § 401(4).

initiated claims but from employer-initiated forced arbitration in retaliation for a victim speaking out. The Report recognized that "employers that use arbitration clauses in their employment contracts can retaliate against a victim—rather than confront the harasser or the attacker—without fear of their actions becoming public through the courts." *Id.* Congress heard testimony from Tatiana Spottiswoode, who described how the executive who had harassed and assaulted her initiated secret arbitration proceedings; it was thus aware that initiating forced arbitration against victims is a means for perpetrators of sexual harassment to continue their abuse "in secret." *Silenced: How Forced Arbitration Keeps Victims of Sexual Violence and Sexual Harassment in the Shadows*: Hearing Before the H. Comm. on the Judiciary, 117th Cong. (2021).

The case law does not compel a different conclusion. *Combs v. Netflix*, 180 F.4th 1201 (9th Cir. 2026), does not hold that a plaintiff must bring a claim of sexual harassment. The court framed the question of EFAA applicability as "whether the allegations in the complaint sound in sexual harassment or sexual assault," and the parties agreed that the answer was yes. *Id.* at 1204. *Gal v. Meta Platforms, Inc.*, 2026 WL 1864073, at *4-5 (N.D. Cal. June 29, 2026), did not impose such a requirement either; the plaintiff affirmatively "argue[d] her allegations support[ed] a plausible sexual harassment dispute," and the court disagreed because they were "[p]ersonnel actions" related to "gender discrimination" rather than "sexual harassment." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023), and *Johannessen v. JUUL Labs, Inc.*, 2024 WL 3173286 (N.D. Cal. June 24, 2024), did impose an extratextual requirement that a plaintiff plead a sexual harassment claim. But that conclusion is wrong and a majority of courts have rejected it, as explained above and in the opposition to Meta's cross-motion. Opp. Mot. Compel. 13 (citing *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024); *Solis v. Prime Comms Retail, LLC*, 2025 WL 1255143, at *3 (C.D. Cal. Apr. 7, 2025); *Butler v. JSerra Catholic High Sch.*, 2025 WL 4057443, at *3-4 (C.D. Cal. Sept. 10, 2025); *Lee v. Marriott Int'l Inc.*, 2025 WL 2689263, at *10 (N.D. Cal. Sept. 21, 2025)). To accept Meta's position would punish victims of workplace sexual harassment who opt not to instigate legal battles yet find themselves dragged into arbitration by the very coercive employment agreements that the EFAA was meant to address. That is not the statute Congress wrote.

### 3. The Severance Agreement is a Predispute Arbitration Agreement, and Application of the EFAA to this Dispute is Not Retroactive

The Severance Agreement is a predispute arbitration agreement to which the EFAA applies because it is an "agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(1). Under *Combs v. Netflix*, the question of when a dispute arises asks "when the parties became adverse to one another." 180 F.4th at 1205 (quoting *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025)). Meta's arbitration demand answers this question: this dispute "arises from Respondent Sarah Wynn-Williams'[s] unlawful disparagement of Claimant Meta Platforms, Inc. … in a published book entitled *Careless People*." Dkt. 51-5 (Linhardt Decl. Ex. D) at 4. That adversity arose eight years after the Severance Agreement and could not have arisen before the contract Meta says she breached even existed.

Meta's authorities are not relevant. Each involved an employee's direct complaint of sexual harassment, where the case the employer sought to arbitrate and the "sexual harassment dispute" to which that case related were one and the same; none addresses the scenario presented here, in which a case arises later, instigated by an employer's retaliatory reaction to an employee making public accusations of harassment. *See Netflix*, 180 F.4th at 1205; *Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 248 (3d Cir. 2025); *Memmer*, 135 F.4th at 408-09.

Meta protests that this reading would mean "there would be no such thing as a 'postdispute' arbitration agreement in the employment context." Opp. 13-14. Not so. The FAA classifies arbitration agreements as either agreements "to settle by arbitration a controversy thereafter arising," or agreements "to submit to arbitration an existing controversy." 9 U.S.C. § 2. The EFAA applies only to the first category, leaving the second category of "postdispute" agreements fully enforceable. *Id.* § 401(1). Reading the EFAA as mapping onto the FAA's pre-existing two categories of arbitration agreement reflects the well-settled presumption "that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988). Meta's Severance Agreement simply is not in that second category—it applies to *future* disputes, including the dispute that arose around *Careless People*. The parties remain free to form a "postdispute" agreement to submit this dispute to arbitration; the EFAA allows that.

The Court should not follow Meta's sole authority on this point, *Richards v. Silver*, to

conclude that the EFAA applies only to agreements signed "before any sexual harassment dispute arises." 433 So. 3d 433, 440 (Fla. Dist. Ct. App. 2026). In that decision, a state intermediate court wrongly held that the EFAA did not apply to a defendant's post-settlement retaliation against a harassment victim because the settlement post-dated the harassment, reasoning that to conclude otherwise would "frustrat[e] Congress's intent to draw a clear distinction between predispute and postdispute arbitration agreements." *Id*. But in reaching that conclusion, the *Richards* court did not engage with the statutory analysis presented above, including the specific language covering disputes that "relate to" sexual harassment but may be downstream of the harassment itself.

Regardless, this case is distinguishable because, unlike the plaintiff in *Richards*, Ms. Wynn-Williams never had a "dispute" with Meta within the meaning of the EFAA prior to the Severance Agreement. In the Ninth Circuit, an EFAA "dispute" requires bilateral adversity "between the parties." *Netflix*, 180 F.4th at 1206. In *Richards*, the plaintiff "filed a charge of discrimination with the EEOC, asserting claims of sexual harassment," 433 So.3d at 436, satisfying this requirement. Ms. Wynn-Williams did not initiate any complaint and strained to avoid even an internal investigation. Compl. ¶ 43, *see also* ¶¶ 59-60. Meta says that it unilaterally conducted an investigation into Mr. Kaplan's conduct, Opp. 13, but that is not bilateral adversity within the meaning of *Netflix*; if it were, employers could avoid the EFAA by claiming to have concluded investigations that pre-date arbitration agreements imposed as a condition of continued employment or severance. In any case, Meta never claimed to have investigated allegations against Ms. Sandberg, which Meta continues to ignore. Unlike in *Richards,* therefore, the Severance Agreement—which does not even reference any claims of sexual harassment—is not the settlement of a bilateral sexual harassment dispute. Instead, it is a contract governing the end of an employment relationship, which contained a pre-dispute arbitration agreement that Meta now seeks to use to compel arbitration of a dispute related to sexual harassment, which Meta initiated in March 2025. The EFAA forbids that.

Relatedly, Meta asserts that the EFAA does not apply because this dispute arose prior to its March 3, 2022, effective date. For the reasons already stated, this dispute arose when Meta initiated arbitration in March 2025, regardless of when the harassment took place. That conclusion

makes sense, because Meta was on notice of the EFAA when it made the decision to initiate this dispute. *Cf. Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187 (9th Cir. 2016) (explaining the rationale for effective-date provisions is so "actors may adjust their behavior to conform to the new legislation"). Meta's retroactivity argument therefore fails.

**B. Meta is Estopped from Compelling Arbitration**

Meta is also estopped from forcing Ms. Wynn-Williams into arbitration because of its 2018 statements. *See* Prelim. Inj. Mot. at 17-21. This is not an issue for the arbitrator. Meta does not respond to points already made regarding why the boilerplate language in the Severance Agreement is not a clear and unambiguous delegation of waiver and estoppel questions to the arbitrator. *See* Opp. Mot. Compel. 20-21 (citing cases). Meta cites no authority for the proposition that the Emergency Arbitrator's decision on this question changes that conclusion. The no-modification and no-waiver provisions of the Severance Agreement, §§ 16(a), 16(i), are of no relevance to the estoppel question under California law. *See, e.g.*, *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 82-83 (2017); *see also* Cal. Civ. Code § 1698(d). Regardless, they do not speak to estoppel. Finally, for the reasons explained in Part I.A.2, *supra*, this case is about sexual harassment, and to suggest otherwise would leave victims who speak out about sexual harassment at Meta and other companies in reliance on disavowals of compelled arbitration vulnerable to facing compelled arbitration when those companies retaliate with contract or tort claims.

**C. Ms. Wynn-Williams Is Suffering Irreparable Harm**

Ms. Wynn-Williams has established irreparable harm in at least three ways: the ongoing suppression of her First Amendment rights; the permanent damage to a career as a public policy expert that depends upon regular public appearances; and the *per se* injury of being compelled to arbitrate a dispute Meta has no right to arbitrate. *See* Mot. Prelim. Inj. at 21-22; *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1235-36 (E.D. Cal. 2015); *Empros Cap. LLC v. Rosenbach*, 2020 WL 6684854, at *9 (N.D. Cal. Nov. 12, 2020).

Meta does not seriously dispute that these are irreparable harms. It is no response to point out that Ms. Wynn-Williams has been able to speak at some public events and is considering speaking at others. Opp. 19. Meta's assertion that "[p]urely economic harms are generally not

irreparable," *id*. at 18, is no answer to Ms. Wynn-Williams's claim of "intangible injuries" to her professional goodwill that are irreversible and thus "qualify as irreparable harm," *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).[3] Meta argues that "unnecessary arbitration proceedings" do not "constitute irreparable harm," Opp. 18, but that is contrary to the weight of the caselaw, *see Morgan Stanley*, 134 F. Supp. 3d at 1235 & n.21 (collecting cases). Meta's cases on this point, *see* Opp. 18-19, involve either radically different procedural postures[4] or plaintiffs whose only alleged harm was the cost of arbitration.[5]

Meta answers principally with delay, an argument addressed in Part I.A.1, *supra*. Yet its cases turn on facts that undermine its argument. In *Lorentzen v. Levolor Corp.*, 746 F. Supp. 1228, 1229-31 (S.D.N.Y. 1990), the plaintiff ignored a court order compelling arbitration, causing a delay of 531 days before filing suit; the court found "the real motive behind the delay was a desire thoroughly to test the waters in [the arbitration] before pulling the plug." In *Kleist v. Credit Suisse (USA) LLC*, 2026 WL 1507831, at *6 (N.D. Cal. May 29, 2026), the plaintiff inexplicably waited months after filing his *complaint* before seeking a preliminary injunction, and the only irreparable harm he asserted—that he might lose in the arbitration—amounted to "speculation and hyperbole." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) involved a delay of six years. *Garcia v. Google, Inc.*, 786 F.3d 733, 744-46 (9th Cir. 2015) and *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) merely affirm that a plaintiff's delay can undercut an irreparable harm argument, but turn on the plaintiffs' overall failure to show any irreparable harm. And *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009), establishes the standard for injunctions in trademark cases, a doctrine totally inapplicable here.

Meta is wrong that denying the preliminary injunction merely maintains a long-established "status quo." Opp. 17. Meta only began exploiting the Interim Award's vagueness to threaten sanctions in March 2026, triggering an escalating series of actions in the arbitration that continue

[3] Meta also cites *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015), Opp. 18, but there the Ninth Circuit affirmed a finding of irreparable harm based on economic injuries.

[4] *See Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990); *Sanchart Sec. Int'l, Inc. v. Gavaldon*, 2012 WL 5471933, at *2 (S.D. Cal. Nov. 9, 2012).

[5] *See Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 (9th Cir. 1989); *Corrales Law PC v. Equal Access Just. Fund LP*, 2025 WL 2816789, at *5 (S.D. Cal. Sept. 5, 2025); *In re Cintas Corp. Overtime Pay Arb. Litig.*, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009).

to chill Ms. Wynn-Williams's speech—evidenced by her silence at the Hay Festival—and threaten her ability to participate in public events, including next month's Edinburgh International Book Festival. Mot. Prelim. Inj. at 7-12; Wynn-Williams Decl. ¶¶ 3-4. Moreover, though the arbitration has been pending for months, there has been no merits proceeding; the risk of compelled arbitration of claims that should be heard in this Court arises in the imminent future, not the status quo. Incredibly, Meta suggests that Ms. Wynn-Williams could address her irreparable harm by accelerating the very hearing that constitutes that harm. Opp. 18.

### D. The Equities and the Public Interest Favor Relief

Ms. Wynn-Williams has established the remaining equitable factors. Meta's balance of the equities argument ignores the irreparable harm Ms. Wynn-Williams is suffering and mischaracterizes this dispute as one between contractual equals when it is a lopsided fight by a single person accusing one of the planet's most powerful corporations of sexual harassment. *See Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999) (court must "identify" each party's hardships and weigh them "against one another"). Meta emphasizes that Ms. Wynn-Williams negotiated severance pay when she was terminated, but that has nothing to do with the balance of equities. Meta does not and cannot explain how any purported interest in enforcing the Severance Agreement, Opp. 19, tips the equities in its favor and relies on distinguishable cases, for instance where the proponent of an arbitration provision resisted its applicability, *Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302, at *8 (C.D. Cal. Apr. 15, 2020), and where it was undisputed the action was arbitrable and the only dispute was as to forum, *see Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1151, 1153-54 (9th Cir. 2004); *NCR Corp. v. Goh*, 2016 WL 9331287, at *4 (W.D. Wash. Feb. 4, 2016). Meta's remaining points, including its public interest arguments, are nonresponsive and fully addressed in the opening brief. Mot. Prelim. Inj. 23-24.

## II. The Court Should Vacate the Interim Award

### A. Meta's Procedural Objections Fail

Seeking to avoid judicial review of the legal flaws in the Interim Award, Meta raises procedural objections. Those objections fail. The Interim Award is reviewable because the temporary equitable relief it imposes is precisely the sort of order the Ninth Circuit said is reviewable in

*Pacific Reinsurance Management Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991). Other circuit courts agree. *See Yasuda Fire & Marine Ins. Co. of Eur., Ltd v. Cont'l Cas. Co.*, 37 F.3d 345, 348 (7th Cir. 1994); *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984). Meta's cases hold that interlocutory judicial intervention in an arbitrator's *procedural* rulings should be disfavored and confined to "extreme cases," Opp. 20-21; that has nothing to do with review of equitable orders like the Interim Award, which are akin to preliminary injunctions. *See In re Sussex*, 781 F.3d 1065, 1072-73 (9th Cir. 2015) (arbitrator's recusal decision); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) (arbitrator's decision to consolidate). By contrast, as *Pacific Reinsurance* holds, an equitable injunction is reviewable because, like a preliminary injunction, it exercises coercive judicial authority by purporting to be "enforceable at the time it is granted" (as Meta's sanctions motion illustrates). 935 F.2d at 1023.

Review is not time barred—9 U.S.C. § 12 imposes a three-month limitation on judicial review of *final* arbitral awards and does not apply to interlocutory review of *temporary* interim awards under § 10. *Swenson v. Bushman Investment Properties, Ltd.*, 870 F. Supp. 2d 1049 (D. Idaho 2012) is consistent. It found that the three-month clock did not start to run upon issuance of an interim award, rejecting an argument that appeal was required before the final award issued. To be sure, an interim award "may be deemed final" for purposes of the three-month bar where it issues final relief on substantive issues, "the award states it is final," and "the arbitrator intended the award to be final." *Id.* at 1054. That explains *Nu-Best Franchising, Inc. v. Motion Dynamics, Inc.*, 2006 WL 1428319, at *4 (M.D. Fla. May 17, 2006) (concluding that the three-month clock began running on an award that resolved all issues in the arbitration but for attorney's fees). But that is not the case here (nor was it the case in *Swenson*, 870 F. Supp. 2d at 1054).

This is not "hav[ing] it both ways." Opp. 21. The Interim Award, like a preliminary injunction, is not a "final order" as to any issue in the arbitration but, as the Ninth Circuit held in *Pacific Reinsurance*, it "has an element of finality sufficient to be confirmed and enforced under the FAA." 935 F.2d at 1023. Nor does Meta truly want FAA time bars to apply: if Ms. Wynn-Williams's time to vacate the Interim Award under the FAA has run, so too has Meta's time to confirm it. *See* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to

the arbitration may apply to the court ... for an order confirming the award.").

Because the coercive effect of the Interim Award improperly constrains Ms. Wynn-Williams's rights today, it does not matter for purposes of reviewability that the arbitrator might ultimately lift or adjust it at some point following a final hearing (whether that hearing occurs in October or some later date). Meta argues (citing no authority) that Ms. Wynn-Williams waived her ability to seek review of the Interim Award by asking the arbitrator not to issue monetary sanctions against her for allegedly violating it, Opp. 22, but that argument once again improperly attributes an intent to waive rights to a necessary defensive action.

### B. The Interim Award Violates the First Amendment

Meta does not refute the two core First Amendment defects of the Interim Award. *First*, no court could have entered such an injunction without reviewing any portion of *Careless People* and making findings about whether or to what extent its content is actually disparaging. *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1049 (C.D. Cal. 1998) (rejecting injunction against "disseminating or publishing further false, defamatory or disparaging information" because "[s]uch an injunction would necessarily precede an adequate determination that a particular statement by defendant was false, defamatory or disparaging"). Although Meta claims that the type of preliminary injunction at issue here is "commonplace," Opp. 23, virtually all of Meta's authorities are cases in which courts adjudicated the content of the speech before issuing such an injunction, revealing how incredibly *not* commonplace the Interim Award actually is.[6]

---

[6] *See Malem Med., Ltd. v. Theos Med. Sys.*, 761 F. App'x 762, 764 (9th Cir. 2019) (affirming final injunction on adjudication that speech at issue was unprotected); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 679 F. App'x 33 (2d Cir. 2017) (same); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205, at *2-4 (S.D.N.Y. Feb. 29, 2016) (district court opinion with several pages of factual findings on unprotected nature of speech at issue); *GRK Fasteners Ltd. v. Bennett*, 2004 WL 1211919,at *1 (D. Or. May 14, 2004) (finding "evidence clearly and convincingly establishes" defendant sent letter violating non-disparagement agreement); *Fisher v. Biozone Pharms., Inc.*, 2017 WL 1097198, at *7 (N.D. Cal. Mar. 23, 2017) (stating under heading "Holdings on Disparagement": "The plaintiff violated the non-disparagement clause of the settlement agreement in his email to the journalist"). *Powell v. United States Sec. & Exch. Comm'n*, 149 F.4th 1029 (9th Cir. 2025), Meta's leading citation on this point, did not involve an as-applied challenge to judicial enforcement of a contract at all but a facial challenge to an SEC rule change under the APA. *Id.* at *1. The only case Meta cites which does not contain such findings is *Millennial Plastic Surgery PLLC v. James*, 2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021), in which the court noted that the defendant "did not object to taking down the Post" that the preliminary injunction ordered her to take down. *Id.* at *3.

Meta improperly asks this Court to replicate this defect by assuming that "Wynn-Williams waived any First Amendment arguments she may have" when she "voluntarily agreed to the non-disparagement clause in the Severance Agreement," Opp. 22, and that her book is "full of disparaging statements in violation of her contractual obligations," *id.* at 24. Meta proved none of these points, the Emergency Arbitrator adjudicated none of them, and there is no record to support them. There is no basis to conclude that Ms. Wynn-Williams "voluntarily agreed" to anything because Meta has not (and cannot) present clear and convincing evidence that her entry into the Severance Agreement was a knowing, voluntary, and intelligent act. *See Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993). Regardless, any such waiver would be limited to the "disparaging, critical or otherwise detrimental" speech specifically addressed by the Severance Agreement, *see* Dkt. 42-28 (June 25, 2026, Wynn-Williams Decl. Ex. A) § 9, and so would require such a finding as to the speech in question. The Emergency Arbitrator did not and could not have made any such findings because not a single page of *Careless People* was in the record before him. *See* Dkts. 42-3, 42-4 (O'Brien Decl. Exs. B, C). The First Amendment requires much more.

*Second*, Meta fails to grapple with the Interim Award's vagueness and overbreadth. Meta contends Ms. Wynn-Williams never identified any vague term, Opp. 24, but that disregards her clear argument that the term "promot[ion]" is vague and enables the evolving and expanding constraints on her speech. Mot. Vacate at 22. Meta's Opposition proves this point: it says that "[n]o reasonable person would interpret the Interim Award as Wynn-Williams proposes," Opp. 25, but ignores that Ms. Wynn-Williams was not hypothesizing, she was presenting Meta's interpretation of the Interim Award, an interpretation the Arbitrator echoed at Meta's urging, *id.* at 20-22.

Finally, Meta contends that the First Amendment does not apply because there is no state action. The Court need not resolve this issue because, regardless, the Interim Award was beyond the scope of the Emergency Arbitrator's powers as defined by the arbitration provision in the Severance Agreement. Mot. Vacate 16-23; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). This Court should grant vacatur on that basis alone, and Meta has no response.

If the Court does reach that issue, however, it should find state action. It is well established that judicial enforcement of a private contractual agreement creates state action subject to full

constitutional review. Mot. Vacate 18 (citing *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert*, 194 Cal. App. 4th 519, 533 (Cal. Ct. App. 2011)). That is why a court could not have entered the Interim Award as a preliminary injunction, *see DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 898 (Cal. 2003) (Moreno, J., concurring); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1089-90 (C.D. Cal. 2003) (collecting cases); *Isuzu Motors Ltd.*, 12 F. Supp. 2d at 1049, and likely why Meta did not exercise the right to seek such a preliminary injunction that it bargained for in the Severance Agreement, instead rushing into arbitration in the hope of avoiding clear precedent. Meta's authority stands for a very different proposition: that arbitration proceedings are not *themselves* state action and therefore constitutional due process requirements do not apply to *the arbitration proceedings*. *See* Opp. 23 (citing *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987)). That says nothing about whether arbitral *orders*, backed by judicial power, can contain substantive relief that the Constitution bars, a point Meta's own authority recognizes. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (distinguishing a case, like this one, in which the "district court, in giving effect to the judgment ... participate[s] in the action the [party seeking vacatur] claims is unconstitutional").

Meta also cannot evade state action by implying that it "m[ight] not" seek judicial enforcement of the Interim Award. Opp. 23. It *already has* sought enforcement of the Interim Award, through its sanctions motion. As the Ninth Circuit has recognized, "[a]rbitrators have no power to enforce their decisions. Only courts have that power." *Pac. Reins.*, 935 F.2d at 1023. The Interim Award, and the sanctions Meta believes should be imposed for violations of it, are functional exercises of judicial power. That is why they are so effective in chilling Ms. Wynn-Williams's speech, and why the Interim Award must be vacated.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Ms. Wynn-Williams's motion for a preliminary injunction and to vacate the Interim Award.

Dated: July 30, 2026

Respectfully submitted,

*/s/ Corey Stoughton*

ZEITGEIST LAW
Marcia Hofmann (SBN 250087)
505 Montgomery Street
San Francisco, CA 94111
Telephone: 415-830-6664
Email: marcia@zeitgeist.law

SELENDY GAY PLLC
Philippe Z. Selendy*
Jennifer M. Selendy*
Claire E. O'Brien*
Corey Stoughton*
Drake Reed*
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
pselendy@selendygay.com
jselendy@selendygay.com
cobrien@selendygay.com
cstoughton@selendygay.com
dreed@selendygay.com

* Admitted *pro hac vice.*
*Attorneys for Plaintiff Sarah Wynn-Williams*