United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SARAH WYNN-WILLIAMS,
Plaintiff,

v.

META PLATFORMS, INC.,
Defendant.

Case No. 26-cv-06341-AMO

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, DENYING PLAINTIFF'S MOTION TO VACATE INTERIM ARBITRAL AWARD, AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: Dkt. Nos. 28, 41, 42

Plaintiff Sarah Wynn-Williams wrote a memoir titled *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*. In the memoir, Wynn-Williams makes certain claims about tech giant Facebook and its executives based on her tenure as an employee there. In March 2025, Facebook's successor, Defendant Meta Platforms, Inc. ("Meta"), initiated an arbitration to constrain publication and publicity of the book based on a non-disparagement clause contained within Wynn-Williams's severance agreement. In March 2025, Meta prevailed in its application for emergency relief from the arbitrator – Wynn-Williams has since been prohibited from "promoting" the memoir. On August 21, 2026, the Court heard argument on three motions relating to the arbitration: (1) Wynn-Williams's motion for preliminary injunction to halt the ongoing arbitration proceedings, Dkt. No. 41; (2) Wynn-Williams's motion to vacate an interim arbitral award, Dkt. No. 42; and (3) Meta's motion to compel the action back to arbitration, Dkt. No. 28 (re-noticed at Dkt. No. 44). Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **DENIES** Wynn-Williams's motion for preliminary injunction, **DENIES** Wynn-Williams's motion to vacate the interim arbitral award, and **GRANTS** Meta's motion to compel the matter to arbitration for the following reasons.

United States District Court
Northern District of California

## I. BACKGROUND

The Court briefly describes the factual background underlying this case and addresses additional facts below where relevant to its analysis. These facts, derived from the record presented from both sides, are largely uncontested. The Court construes these facts consistent with the applicable legal standards for each pending motion.

### A. Wynn-Williams's Employment at Facebook

Plaintiff Sarah Wynn-Williams, a lawyer, joined Facebook in 2011, ultimately rising to the role of Director of Global Public Policy. Wynn-Williams Decl. ¶¶ 3-5. During her time at Facebook, Wynn-Williams alleges she was sexually harassed by her direct supervisor, Joel Kaplan, Facebook's then-Vice President of Global Policy, and by Sheryl Sandberg, Facebook's then-Chief Operating Officer. *Id.* ¶ 6; *see also* Compl. ¶ 28 (Kaplan emailed Wynn-Williams a vulgar reference to a sex act while she was preparing for her citizenship test); *id.* ¶ 32 (Kaplan called Wynn-Williams "sultry" and began grinding into her from behind on the dance floor at a corporate offsite event); *id.* ¶ 33 (Sandberg repeatedly told Wynn-Williams – then seven months pregnant – to "come to bed" on a flight and later stated she "should have got into bed"); *id.* ¶ 41 (Kaplan logged into a video call from his bed and repeatedly asked if it made Wynn-Williams "feel uncomfortable"); *id.* ¶ 42 (Kaplan repeatedly asked Wynn-Williams where she was "bleeding from" regarding her post-surgical complications and became angered when she refused to answer); *id.* ¶ 44 (Kaplan asked Wynn-Williams to "explain breastfeeding" to him, questioned her about her breasts and how she would "get the milk out," and sent breast pumps to her home).

Wynn-Williams avoided reporting this harassment to protect her career from retaliation. Wynn-Williams Decl. ¶ 7. When Facebook began investigating Kaplan anyway, she discussed her concerns about Kaplan with Facebook's head employment lawyer. *See* Compl. ¶¶ 43, 61. Facebook conducted a review and eventually concluded that Kaplan had not engaged in misconduct. *Id.* ¶ 66. Facebook subsequently terminated Wynn-Williams. *Id.* ¶ 68; Wynn-Williams Decl. ¶ 11.

After terminating her, Facebook presented Wynn-Williams with the Severance Agreement. Wynn-Williams Decl. ¶ 12; *id.*, Ex. A. The Severance Agreement contains an arbitration provision that states:

> The parties agree that any and all disputes arising out of the terms of this Agreement, their interpretation, and any of the matters herein released, shall be subject to arbitration, before the American Arbitration Association ("AAA") in accordance with the Employment Arbitration Rules and Mediation Procedures, including its Optional Rules for Emergency Measures of Protection, to the extent not in-consistent with the terms of this Agreement. . . . THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY. Notwithstanding the foregoing, this section will not prevent either party from seeking preliminary injunctive relief (or any other provisional remedy) from any court having jurisdiction over the parties and the subject matter of their dispute relating to this Agreement and the agreements incorporated herein by reference.

*Id.*, Ex. A. at 7. Wynn-Williams retained counsel to negotiate the Severance Agreement, under which she received $780,000 and other benefits, including payment of her attorney's fees. *See* Severance Agreement § 2. As part of the contract negotiations, her counsel substantively revised the Severance Agreement, including the arbitration and non-disparagement provisions underlying this dispute. Dkt. No. 28-2 ¶¶ 3-5.

**B. Wynn-Williams Goes Public**

In 2024 and 2025, Wynn-Williams began to disclose what happened to her, filing whistleblower complaints with the SEC and DOJ, respectively, breaking her silence to the government about the conduct she had observed at Meta, including sexual harassment. Wynn-Williams Decl. ¶¶ 29-33. Wynn-Williams also wrote her memoir, *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*, which recounted the sexual harassment she experienced and misconduct she witnessed while employed by Meta. *Careless People* was released in March 2025. *Id.* ¶ 34.

**C. Meta Initiates Arbitration, Wynn-Williams Objects**

In March 2025, Meta initiated arbitration on grounds that her disclosure of sexual harassment violated her Severance Agreement. Meta obtained an ex parte preliminary arbitration award ("Interim Award") enjoining Wynn-Williams, as well as "her agents, servants, employees,

attorneys, and any other person(s) or entities [] which she controls," from making any "disparaging, critical or otherwise detrimental comments" about Meta, and prohibiting "promoting" her book. Linhardt Decl, Ex. F (Dkt. No. 44-7) at 3-4.

Wynn-Williams quickly moved to vacate the Interim Award, including by advancing jurisdictional objections precluding a likelihood of success on the merits of Meta's contractual claim because, among other reasons, the arbitration provision was unenforceable. Linhardt Decl, Ex. G (Dkt. No. 44-8). Wynn-Williams then reiterated these and other objections to jurisdiction in her formal statement of objection filed on April 22, 2025. Linhardt Decl., Ex. K (Dkt. No. 44-12). In conjunction with that statement of objection, Wynn-Williams filed a counter-demand in the Arbitration, alleging that Meta had itself breached the Severance Agreement by disparaging her. Linhardt Decl., Ex. J (Dkt. No. 44-11). Macmillan, Wynn-Williams's publisher, also objected to the Arbitration on the grounds that Macmillan was not a party to the Severance Agreement and therefore had not agreed to arbitrate any claims with Meta. Linhardt Decl., Ex. I (Dkt. No. 44-10).

Around the same time, Meta initiated settlement talks. Stoughton Decl. of July 13, 2026 (Dkt. No. 48-1) ¶ 2. The Arbitrator's first procedural order, following from the parties' July 9, 2025 status conference ("Procedural Order 1"), memorialized this, stating that the parties were "currently engaged in settlement discussions." Stoughton Decl. of July 13, 2026, Ex. 10 (Dkt. No. 48-11) ¶ 39. Procedural Order 1 stated that Wynn-Williams's counsel had informed the Arbitrator on June 3, 2025, that Wynn-Williams contemplated "parallel court proceedings . . . to enjoin the Arbitration based on the asserted unenforceability of the" arbitration provision in the Severance Agreement. *Id.* ¶¶ 13, 38. Accordingly, Procedural Order 1 further stated "that Section 16(d) [of the Severance Agreement] is the controlling arbitration agreement" and noted: "[t]his determination is without prejudice to any motion by Respondent – before the Arbitrator or a court – that Section 16(d) is unenforceable." *Id.* ¶ 31. Procedural Order 1 scheduled the merits hearing on Meta's claims for June 8-12, 2026. *Id.* at 15.

Wynn-Williams and Meta continued to engage in settlement talks from June to September of 2025, including in professional mediation; during this time, Wynn-Williams continued to participate in the Arbitration. For example, when Wynn-Williams submitted a letter brief to the

Arbitrator on July 21, 2025, related to the scope of appropriate discovery under the Severance Agreement's arbitration provision, Wynn-Williams advanced:

> As stated previously and consistently since the outset of this case, Respondent objects to arbitral jurisdiction on the grounds that the arbitration clause in the severance agreement is unenforceable. Respondent submits this letter brief to preserve her rights in this arbitration, but is not waiving her right to challenge the arbitrability of this dispute in court and/or in this arbitration. Respondent has refrained from filing a court action challenging arbitral jurisdiction and seeking declaratory and injunctive relief solely because the parties are engaged in ongoing settlement discussions.

Linhardt Decl., Ex. L at n.1. Wynn-Williams included that same express statement and objection in each of the discovery requests she served on Meta on September 12, 2025. Stoughton Decl. of July 20, 2026 (Dkt. No. 49-1) ¶ 3.

The parties' settlement negotiations continued through the remainder of 2025 and into early 2026. Apparently in agreement that the top priority was the parties' ongoing settlement talks, Meta did not serve a single discovery request until November 21, 2025, and, following service of those requests, the parties agreed to stay discovery in deference to their settlement talks. Procedural Order 2, issued on December 15, 2025, noted that as of that date "no documents had been produced and no witnesses deposed." Stoughton Decl. of July 20, 2026, Ex. C (Dkt. No. 49-4) ¶ 2. In recognition of the lack of progress in discovery as well as the parties' continued engagement in settlement conversations, the scheduled merits hearing was reset four months later, October 19-23, 2026. *Id.* at 4.

In early 2026, Wynn-Williams's predecessor counsel was forced to withdraw because of an undisclosed and unwaivable conflict of interest. Stoughton Decl. of July 13, 2026 ¶ 8. On April 15, 2026, Selendy Gay PLLC appeared for Wynn-Williams in the Arbitration and the next day re-engaged in settlement talks with Meta on behalf of Wynn-Williams and opposed Meta's motion for sanctions against Wynn-Williams for allegedly violating the Interim Award. *Id.* ¶¶ 9-10. The settlement conversations continued throughout April, May, and June of 2026. *Id.* Following her new counsel's appearance, at the request of the Arbitrator, Wynn-Williams also participated in negotiations with Meta over a protective order to govern discovery in the

Arbitration. Wynn-Williams maintained her objection to arbitral jurisdiction in the protective order the Arbitrator entered on June 15, 2026. Linhardt Decl., Ex. V at 1, n.1.

On June 25, 2026, Wynn-Williams filed the Complaint in this case. Dkt. No. 1. Meta filed its motion to compel the matter back to arbitration on July 6, 2026. Dkt. No. 28. Wynn-Williams filed her motion for preliminary injunction and her motion to vacate interim arbitral award on July 9, 2026. Dkt. Nos. 41 & 42. The Arbitrator thereafter vacated all interim deadlines in the Arbitration, set a tentative new briefing schedule to accommodate the noticed date for Meta's and Wynn-Williams's motions before this Court, and ordered the parties to provide "an update on the status of proceedings in the district court" by August 28. Stoughton Decl. of July 12, 2026, Ex. 9. at 4. At that time the Arbitrator would decide whether the Arbitration's schedule, including the October merits hearing, would need to "be adjusted if the status of the federal action so requires." *Id.*

## II. LEGAL STANDARDS

### A. Motion for Preliminary Injunction

Wynn-Williams moves for a preliminary injunction to halt the arbitration from proceeding further during the pendency of this lawsuit. Dkt. No. 41. A "preliminary injunction is an extraordinary and drastic remedy" which should not be granted unless the movant shows "substantial proof" and "*by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; quotation marks and citation omitted). To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The *Winter* factors may be evaluated on a sliding scale such that preliminary relief may be issued when the moving party demonstrates "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted). To grant preliminary injunctive relief, a court

must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam).

**B. Motion to Vacate Interim Arbitration Award**

Wynn-Williams moves to vacate the arbitrator's preliminary arbitration award barring her from promoting her book. Dkt. No. 42. In general, mid-arbitration intervention is disfavored. *See, e.g.*, *In re Sussex*, 781 F.3d 1065, 1072-73 (9th Cir. 2015) ("[P]ermit[ting] what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate th[e] purpose" of arbitration. (citation omitted)); *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638-39 (7th Cir. 2011) ("Review comes at the beginning or the end, but not in the middle."). "The Ninth Circuit has said that because of the Congressional policy favoring arbitration when agreed to by the parties, judicial review of *non-final* arbitration awards 'should be indulged, if at all, only in the most extreme cases.' " *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991) (emphasis in original; quoting *Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973)); *see also Sussex*, 781 F.3d at 1072 n.2 (limiting this exception to interim awards that are "final as to a distinct issue"). Those extreme cases involve circumstances where, for example, such review would be "essential to preserve assets or enforce performance." *See Pac. Reinsurance*, 935 F.2d at 1022.

**C. Motion to Compel Arbitration**

Meta moves to compel the case back to arbitration and to stay this proceeding in the interim. Dkt. No. 28 (re-noticed at Dkt. No. 44). The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218

(1985). Where a valid agreement to arbitrate exists and encompasses the dispute at issue, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).

When considering whether to compel arbitration, the court generally must resolve two "gateway" issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Such "gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.' " *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

**III. DISCUSSION**

At the hearing, the parties presented their views on how the three pending motions interacted. Plaintiff proposed that the Court consider the motion for preliminary injunction and the motion to compel arbitration together, viewing them effectively as mirror images of each other. Plaintiff reasoned that both motions considered nearly identical legal issues, including whether Wynn-Williams waived her right to seek relief in this forum after having participated in the arbitration for over 15 months, whether Meta was estopped from compelling Wynn-Williams to arbitration following the company's public commitments to avoid compelling allegations of sexual harassment to arbitration, and whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") requires that Wynn-Williams's suit proceed in this Court. Plaintiff also asserted that the motion to vacate interim arbitral award would still require separate resolution because the legal issues presented in that motion fell outside the bounds of the other two motions.

The day before the hearing, the Ninth Circuit issued its opinion in *Ding v. Structure Therapeutics, Inc.*, No. 25-1532, --- F.4th ---, 2026 WL 2420555 (9th Cir. Aug. 19, 2026). Both sides requested, and were granted leave to file, an additional two pages of briefing to address how the *Ding* opinion should influence the outcome of the pending motions. Dkt. Nos. 61 & 62.

Based on Wynn-Williams's conceptualization of the legal issues and informed by the *Ding* opinion, the Court first considers the overarching issue of waiver because it resolves the motion for preliminary injunction and the motion to compel arbitration together. Then, the Court considers Wynn-Williams's motion to vacate the interim arbitral award.

**A. Waiver**

**1. Waiver of Threshold Arbitrability**

Meta argues that Wynn-Williams has waived the right to object to the threshold issue of arbitrability by participating in the arbitration for some 15 months and receiving adverse rulings before bringing this lawsuit in district court. "Waiver," as the Supreme Court has acknowledged in another arbitration-related case, "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (citation & internal quotation marks omitted). The burden for establishing waiver in the arbitration context is the same as the burden for establishing waiver in any other contractual context and not "heavy." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014-15 (9th Cir. 2023). There is no concrete test for assessing whether a party took actions inconsistent with its rights related to an arbitration agreement; instead, courts consider the totality of the parties' actions. *Id.* at 1011. The party asserting waiver must demonstrate the following: (1) knowledge of an existing right to compel or to challenge arbitration and (2) intentional acts inconsistent with either right. *Id.* at 1015.[1]

Significant to the instant analysis, Wynn-Williams leans heavily on a case in which the Ninth Circuit held that a litigant's continued objections throughout the initial portions of arbitration demonstrated that the plaintiff had not relinquished their interest in proceeding in court rather than arbitration. *See, e.g.*, Dkt. No. 49 at 29 (citing *Nagrampa v. Mailcoups*, 469 F.3d 1257 (9th Cir. 2006)). In *Nagrampa*, the Ninth Circuit described the plaintiff's participation in the arbitration proceedings as "minimal" following their initial and repeated objections, and the court accordingly determined the plaintiff had not waived their right to bring claims in district court.

---

[1] At the hearing, the parties conceded that the Court could rely on cases involving waiver either of the right to compel arbitration or the right to challenge arbitration because both groups of cases involve the same foundational principles of how and when a party's litigation conduct constitutes waiver.

469 F.3d at 1278. The court noted plaintiff's participation was limited to procedural activities and thus insufficient to constitute waiver: "a letter to seek a ninety-day continuance, a letter objecting to the validity of the arbitration provision . . . , one conference call that resulted in a scheduling order, an unsuccessful attempt to file a counter-demand . . . , and one set of discovery requests." *Id.* at 1278. Yet, relying on *Nagrampa*, the Ninth Circuit has since held that a party which offered an "equivocal" objection to the arbitration proceedings and then agreed to an arbitration schedule and participated in discovery, only filing district court litigation after receiving an unfavorable ruling from the arbitrator, had waived its right to object to arbitrability. *See Law Offices of Richard E. Wilson, LLC v. Smith*, No. 21-17076, 2022 WL 16647769, at *1 (9th Cir. Nov. 3, 2022).

Here, Wynn-Williams has actively participated in the Arbitration, thereby waiving any interest she had in pursuing this action in district court. For example, she moved to vacate the interim award on March 18, 2025. Linhardt Decl., Ex. F (Dkt. No. 51-7). She specifically asked the Arbitrator to rule on her defenses – challenging the enforceability of the Severance Agreement, contending that Meta breached the agreement, and arguing that the non-disparagement provision violates federal and state law and public policy. *Id.* Wynn-Williams also requested that the arbitrator rule on arbitrability, contending that Meta waived its right to require her to arbitrate. *Id.* at 12. Indeed, she insisted that the arbitrator decide her motion to vacate and to defer ruling on the jurisdictional objections by her book publisher, Macmillan, "until after the Motion to Vacate is resolved." Linhardt Decl., Ex. H (Dkt. No. 51-8) at 4. She "fear[ed]" that if the arbitrator addressed the jurisdictional issue, the publisher "may seek to challenge that decision in court, which would result in a suspension of the arbitration proceedings." *Id.* at 3-4. She opposed delay of "arbitration proceedings" and argued that the arbitrator should not make a decision that risked any "court" challenge. *Id.* at 4. A month later, in April 2025, Wynn-Williams filed a counterclaim along with her answer, raising 23 affirmative defenses. Linhardt Decl., Ex. I (Dkt. No. 51-10). Among these defenses, Wynn-Williams asserted again that "the entire Severance Agreement, and the non-disparagement provision specifically, are unenforceable" and "that Meta has waived its right to arbitrate"; she also asserted that the "arbitration clause is void for

United States District Court
Northern District of California

ambiguity." *Id.* at 6. She contended that if "the arbitrator concludes that a valid and enforceable Agreement exists," the arbitrator should give her relief because "Meta has also breached the agreement and did so before any alleged breach by Ms. Wynn-Williams." *Id.* When she "object[ed] to the arbitrability of Meta's claims," Wynn-Williams asked the arbitrator, not a court, to dismiss those claims. Linhardt Decl., Ex. J (Dkt. No. 51-11). Because Wynn-Williams repeatedly "submitted the question of arbitrability to the arbitrator for decision" – along with the central questions on the validity and enforceability of the Severance Agreement – she "waiv[ed her] right to seek a de novo judicial determination of the same issue[s]." *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 725-26 (9th Cir. 1991) (holding that a party waived the right to raise its objection to arbitrability before a court by having first submitted the issue to the arbitrator and lost).

Further, for 14 more months after asserting counterclaims, Wynn-Williams continued to voluntarily participate in the arbitration process and to submit to the arbitrator's authority. She repeatedly asked the arbitrator to dissolve the Interim Award. *See, e.g.*, Linhardt Decl., Exs. F, X (Dkt. No. 51-7, Dkt. No. 51-25). She continued to challenge the Severance Agreement and non-disparagement provision, and she raised the same First Amendment argument she raises in this case. *Id.* Wynn-Williams also engaged in significant discovery. Linhardt Decl. (Dkt. No. 51-1) ¶¶ 29-30. She successfully moved for the arbitrator to apply broad discovery rules from the Federal Rules of Civil Procedure rather than the more limited AAA discovery rules. Linhardt Decl., Ex. L (Dkt. No. 51-13). And, on September 12, 2025, Wynn-Williams propounded 73 requests for admissions, 59 requests for production, and 11 interrogatories on Meta. Linhardt Decl. (Dkt. No. 51-1) ¶ 28. She also submitted two oppositions to Meta's requests for sanctions (which did not include an objection to the arbitrator's jurisdiction), numerous letters to Meta and the arbitrator, and engaged in protracted negotiations over a protective order to govern discovery in the arbitration. *See, e.g.*, Linhardt Decl., Exs. S & U (Dkt. No. 51-20, Dkt. No. 51-22). She argued that Meta's "sanction application [was] inextricably intertwined with the merits," meaning any determinations by the arbitrator as to whether she had violated the Interim Award would be "improper and premature." Linhardt Decl., Ex. S (Dkt. No. 51-20). In response, the arbitrator

concluded that the merits hearing should proceed in October 2026 as scheduled, denied Wynn-Williams' request for leave to file a motion to dismiss, and deferred ruling on Meta's sanctions application. Linhardt Decl., Ex. T (Dkt. No. 51-21). Considered in its totality, Wynn-Williams's participation in the arbitration for over 15 months prior to initiating this lawsuit can readily be viewed as a series of acts inconsistent with the right to proceed in another forum.

Wynn-Williams fights this conclusion, asserting that she has objected to the arbitrability of this dispute from its earliest moments and preserved that objection at every step. Review of the record shows that her objection to proceeding through arbitration was neither as clear nor as consistent as she contends. She originally moved in the arbitration to vacate Meta's ex parte Interim Award on the grounds that Meta had failed to establish a likelihood of success on the merits. *See* Linhardt Decl., Ex. F (Dkt. No. 51-7). She argued that the arbitrator lacked jurisdiction because (1) the Securities and Exchange Act rendered the Severance Agreement unenforceable; (2) Meta breached the Severance Agreement first, neutralizing its subsequent attempt to argue that she breached; (3) Meta publicly waived its right to compel her claims to arbitration (a similar argument to the one discussed below); (4) the non-disparagement clause in the Severance Agreement fails as unenforceable because it violates whistleblower protection laws; and (5) the non-disparagement clause fails as unenforceable because it violates public policy. *See id.* At no point in her brief did she object to the arbitrator's authority to consider these issues. *Id.* Subsequently, Wynn-Williams filed "objections to [the] arbitrability of Meta's claims," which, rather than contesting the issue of arbitrability, restated most of the same arguments regarding the unenforceability of the Severance Agreement in general. Linhardt Decl., Ex. J (Dkt. No. 51-11). Wynn-Williams cross-referenced that submission in her answer to Meta's arbitration demand and counterclaims against Meta, stating again that, due to Meta's breach, the Severance Agreement generally and the non-disparagement provision specifically could not be enforced against her. Linhardt Decl., Ex. I (Dkt. No. 51-10). Wynn-Williams did not register a true objection to arbitrability until June 2, 2025, as the arbitrator captured in a procedural order:

> As you know, Respondent has objected on multiple occasions to the AAA's jurisdiction in this matter on the grounds that the arbitration agreement at issue is invalid and unenforceable. We intend on

> seeking preliminary relief from the court as early as next week . . . for a declaration that the arbitration agreement is unenforceable and enjoining the arbitration at least until the court proceeding is resolved. We therefore think that it would be premature and inefficient to schedule a preliminary conference . . . at this time, and instead, we propose suspending the arbitration until we receive a ruling from the court as to whether the arbitration agreement is enforceable.

*Id.* at 5-6. This message demonstrates that Wynn-Williams was aware of an existing right to seek injunctive relief in district court, a right she delayed invoking for over a year. *Cf. Armstrong*, 59 F.4th at 1015. Wynn-Williams subsequently offered her most direct objection to the arbitrator's jurisdiction in a footnote in a letter brief dated July 21, 2025, stating,

> As stated previously and consistently since the outset of this case, Respondent objects to arbitral jurisdiction on the grounds that the arbitration clause contained in the severance agreement is unenforceable. Respondent submits this letter brief to preserve her rights in this arbitration, but is not waiving her right to challenge the arbitrability of this dispute in court and/or in this arbitration. Respondent has refrained from filing a court action challenging arbitral jurisdiction and seeking declaratory and injunctive relief solely because the parties are engaged in ongoing settlement discussions.

Linhardt Decl., Ex. K (Dkt. No. 51-12) at 2. This footnote represents the first time Wynn-Williams expressly objected to the arbitrator's jurisdiction – all of the other papers submitted prior only argue that the Severance Agreement is broadly unenforceable without protesting the authority of the arbitrator to resolve the dispute. To the contrary, Wynn-Williams repeatedly entrusted the arbitrator to resolve this issue on the merits. On September 12, 2025, some months later, Wynn-Williams included within her discovery requests to Meta,

> Respondent makes these requests for admission to preserve her rights in this arbitration, but is not waiving her right to challenge the arbitrability of this dispute in court and/or in this arbitration. Respondent has refrained from filing a court action challenging arbitral jurisdiction and seeking declaratory and injunctive relief solely because the parties are engaged in ongoing settlement discussions.

Stoughton Decl. (Dkt. No. 48-1) ¶ 7. Wynn-Williams then included within the parties' thoroughly-negotiated June 15, 2026 protective order, "Respondent maintains and does not waive her jurisdictional objections regarding this Arbitration, nor her objections to the invalidity of the Interim Award issued in the Arbitration." Linhardt Decl., Ex. T (Dkt. 44-23) n.1; *see also*

United States District Court
Northern District of California

Linhardt Decl. ¶ 29 (describing the parties' protracted back and forth regarding the substance of the protective order). Wynn-Williams included the same statement again in her June 26, 2026 responses and objections to Meta's discovery requests. Stoughton Decl. (Dkt. No. 49-1) ¶ 4.

Despite these objections, Wynn-Williams's participation in the arbitration reflects a distinguishable level of activity than that at issue in *Nagrampa*, and something closer to *Law Offices of Richard E. Wilson*. In contrast to *Nagrampa*, Wynn-Williams did not initially object to the arbitrability of the dispute or the arbitrator's authority to preside over it; rather, she squarely participated in the arbitration, argued that the Severance Agreement was broadly unenforceable, and repeatedly sought relief from the arbitrator without bringing the action to court. *Cf. Nagrampa*, 469 F.3d at 1277 (noting that the party who allegedly participated in arbitration for too long first objected to proceeding with the arbitration, stating, "We are not ready or willing to proceed with arbitration" and asserting " 'serious concerns' about the validity of the arbitration provision"). And in those early submissions, contrary to the refrain in her instant briefing, Wynn-Williams argued the merits beyond mere preliminary matters, advancing substantive arguments regarding Meta's likelihood of success on its claim that she breached the Severance Agreement. *See* Linhardt Decl., Ex. G (Dkt. No. 44-8). After three months of proceedings and several filings, Wynn-Williams finally objected to the jurisdiction of the arbitrator and has since repeated her objection, but that objection is difficult to credit given her participation in the arbitration proceedings for over a year since then.

Wynn-Williams advances that not all of this period should count against her – there was a "stay" pending "prolonged settlement discussions." Dkt. No. 49 at 7, 9. The parties did have settlement discussions, including two mediation sessions on September 25 and November 6, 2025. Linhardt Decl. (Dkt. No. 53-1) ¶¶ 8, 9. But after the November 6, 2025 mediation, the parties reached an impasse and the parties proceeded to litigate in the arbitration, negotiating and setting case deadlines and engaging in discovery without any stay in place for further settlement talks. *Id.* ¶¶ 9-11. In the early months of 2026, the parties agreed to certain extensions to accommodate Wynn-Williams's personal schedule as well as to accommodate her search for substitute counsel, but the case schedule remained intact. *Id.* ¶¶ 12-15. Settlement discussions apparently resumed in

April 2026 and continued up until the filing of this lawsuit in June. Stoughton Decl. (Dkt. No. 48-1) ¶¶ 10-11. Wynn-Williams has presented no evidence that the parties agreed to stay the arbitration proceedings pending their settlement discussions.

Given the ambiguity of her objection to the arbitrator's authority to resolve the threshold issue of arbitrability and the record of the parties' participation in the arbitration, the Court finds Wynn-Williams waived her right to object to threshold arbitrability. *Cf. Nagrampa*, 469 F.3d at 1278. She failed to object to arbitrability at the outset and instead objected more broadly to enforcement of the Severance Agreement, and she did this on the merits, attacking Meta's likelihood of success as a basis to have the interim award overturned. *See* Linhardt Decl., Ex. F (Dkt. No. 51-7). She engaged with the arbitrator and the arbitration process repeatedly, seeking relief from the arbitrator at nearly every turn despite threatening to shift the forum to district court as early as June 2025. *See* Linhardt Decl., Ex. J (Dkt. No. 51-11). She asserted a counterdemand, Linhardt Decl., Ex. J (Dkt. No. 44-11), and actively participated in discovery, Linhardt Decl. (Dkt. No. 51-1) ¶¶ 28-30. Wynn-Williams' participation was significant for over 15 months, and she attempts to proceed here only after receiving multiple unfavorable rulings, particularly losing on her requests to have the interim award vacated. Linhardt Decl., Ex. H (Dkt. No. 51-9). Moreover, she only recently filed this action seeking judicial intervention when the arbitration is approaching its climax – on May 7, 2026, the arbitrator rejected both sides' requests to pursue dispositive motions and set the matter for merits hearing in October 2026. Linhardt Decl., Ex. T (Dkt. No. 51-21).

Based on this record, particularly the 15-month period over which she has engaged in the arbitration prior to seeking judicial intervention, the Court finds that Wynn-Williams has waived her right to object to arbitrability.

**2. Waiver of EFAA Election**

In all her papers, Wynn-Williams argues the EFAA requires that arbitration be halted. Enacted as an amendment to the FAA, the EFAA provides that:

> at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect

> to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). "[A]ny dispute or claim that arises or accrues on or after the date of enactment," March 3, 2022, is subject to the EFAA. Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *see Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924 (N.D. Cal. 2023). Courts, not arbitrators, decide whether the EFAA applies, as the issue cannot be delegated to an arbitrator. 9 U.S.C. § 402(b). A plaintiff bears the burden of establishing that an arbitration agreement may be invalidated pursuant to the EFAA. *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1207 (N.D. Cal. 2024).

The initial briefing revealed two main arguments regarding application of the EFAA: (1) whether the case "relates to" sexual harassment of the sort protected by the statute and (2) whether the Severance Agreement reflects a "predispute arbitration agreement" within the statute's meaning. However, the Ninth Circuit's opinion in *Ding v. Structure Therapeutics, Inc., NASDAQ*, No. 25-1532, --- F.4th ---, 2026 WL 2420555 (9th Cir. Aug. 19, 2026), provides a different course for resolving the application of the EFAA here.

In *Ding*, an executive initiated an arbitration action against her former employer, asserting claims of "discrimination, retaliation, and harassment based on her national origin and status as a victim of domestic violence." *Ding*, 2026 WL 2420555, at *3. The parties litigated the dispute in arbitration for over a year, during which Ding learned that "the harassment she experienced at work was based on her sex and sexism" through discovery of facts previously unknown to her. *Id.*, at *4. Ding thereafter withdrew from the arbitration and initiated a lawsuit in the Superior Court of California, "asserting a sex discrimination claim and a sex-based hostile work environment claim" under California law, and "a discrimination claim based on her status as a domestic violence victim." *Id.*, at *3. Defendants removed the case to federal court. *Id.* The district court denied the defendants' motion to compel arbitration in part because Ding plausibly alleged a claim for sexual harassment based on the new information she gleaned through discovery in the arbitration. *Id.*, at *4; *see also Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897 (N.D. Cal. 2025).

Considering the denial of the motion to compel arbitration, the appellate panel focused its attention on two arguments relevant here: (1) whether a plaintiff is categorically barred from making an EFAA election if they first file other claims in arbitration, and (2) whether a plaintiff waived their rights under the EFAA by initially proceeding in arbitration despite earlier knowledge of certain facts giving rise to a sexual harassment claim. *Ding*, 2026 WL 2420555 at *4-5. On the first issue, the panel determined that the EFAA contains no categorical bar on a plaintiff's pursuit of claims in court after initially participating in arbitration. *Id.*, at *4-5. The statute's key terminology centers on a plaintiff's "election" to proceed in the forum of their choice, but in *Ding*, the plaintiff "did not become aware that 'the harassment she experienced at work was based on her sex and sexism' until she obtained discovery from Defendants once arbitration proceedings had commenced," and she accordingly could not have "elected" to proceed under the EFAA until that point. *Id.*, at *4. The panel distinguished Ding's circumstances from those of a plaintiff who waived their election to proceed under the EFAA, highlighting,

> Our conclusion does not mean that a plaintiff may start in arbitration, bring a sexual harassment claim at any time, under any circumstances, and then pursue her claims in court. A plaintiff may waive her EFAA rights under ordinary waiver principles. *See Bobka v. Toyota Motor Credit Corp.*, 968 F.3d 946, 954 (9th Cir. 2020) ("Absent some affirmative indication of Congress' intent to preclude waiver, statutory provisions are subject to waiver by voluntary agreement of the parties." (cleaned up)). "The Supreme Court has defined waiver as the 'intentional relinquishment or abandonment of a *known* right.' " *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1278-79 (9th Cir. 2006) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (emphasis added). Thus, a court may find waiver where a plaintiff is aware of the facts giving rise to a sexual harassment claim and either unduly delays in bringing such a claim through intentional acts or decides to pursue that claim in arbitration rather than court. *Cf. Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) (finding waiver of objection to the arbitrator's authority where plaintiff "initiated the arbitration, attended the hearings with representation, presented evidence, and submitted a closing brief of fifty pages").

*Ding*, 2026 WL 2420555, at *5. The court resolved the second argument, whether a plaintiff waives their rights under the EFAA by initially preceding in arbitration despite earlier knowledge of facts that could give rise to a sexual harassment claim, on related grounds. The Ninth Circuit

held that Ding did not waive her rights under the EFAA because her sexual harassment claim rested on facts discovered after initiation of the arbitration. *Id.*, at *5.

Here, the main query is whether Wynn-Williams has waived her ability to elect to proceed in federal court rather than in arbitration.[2] The Ninth Circuit has made clear that a plaintiff need not make their "election" until the time they know they can allege "conduct constituting a sexual harassment dispute[.]" *Ding*, 2026 WL 2420555, at *4 (quoting 9 U.S.C. § 402(a)). Wynn-Williams has known her claims relate to sexual harassment since the inception of the arbitration. *See* Dkt. No. 1. Wynn-Williams identifies no new facts learned during the course of arbitration that inform her claims in this lawsuit. The allegations of sexual harassment upon which Wynn-Williams invokes the EFAA took place in 2017, and Wynn-Williams has been aware of those instances of harassment since they took place. *Cf. Ding*, 2026 WL 2420555 at *3-4 (describing how the plaintiff only learned of the allegations relating to sexual harassment for the first time during arbitration). In the absence of new information regarding a sexual harassment claim, Wynn-Williams thus waived her election to proceed in court under the EFAA. Wynn-Williams has demonstrated, including through her arbitration filings, meaningful awareness of her option to bring her claims to court since at least June 2025, and she delayed in bringing this lawsuit until June 2026. *See* Linhardt Decl., Ex. J (Dkt. No. 51-11); *see also Nagrampa*, 469 F.3d at 1278-79. By continuing to participate in arbitration for over 15 months before bringing her action to court, Wynn-Williams unduly delayed and waived her election to proceed in court under the EFAA.

**3. Waiver Conclusion**

Having determined that Wynn-Williams waived both her objection to the threshold issue of arbitrability and her election to proceed in court under the EFAA, the Court applies these conclusions to the pending motions.

[2] The Court assumes without deciding that Wynn-Williams's claims "relate to" claims of sexual harassment based on the contents of her book. *Ding* holds that "the EFAA invalidates an arbitration agreement 'with respect to a case' – rather than a claim – that 'relates to' a sexual harassment dispute," so the plaintiff "is entitled to bring her entire case in court." 2026 WL 2420555, at *7 (quoting 9 U.S.C. § 402(a)).

As noted above, a party seeking preliminary injunctive relief must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Wynn-Williams argues that she is likely to succeed on two of her several claims: claim two, that Meta is estopped from compelling arbitration based on its public statements, and claim seven, that the arbitration cannot be allowed to proceed based on the EFAA. Dkt. No. 41 at 17 n.4. Having determined that Wynn-Williams waived her arguments regarding threshold arbitrability, she is not likely to succeed on the merits of her claim that Meta is estopped from enforcing the Severance Agreement's arbitration clause.[3] Similarly, because Wynn-Williams waived her election under the EFAA, she cannot succeed on her claim that the EFAA precludes the Arbitration from proceeding further. Therefore, the Court DENIES the motion for preliminary injunction. *See City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 790 (9th Cir. 2019) ("The analysis ends if the moving party fails to show a likelihood of success on the merits of its claims." (citation omitted)).

As Wynn-Williams's counsel proposed at the hearing, the motion for preliminary injunction and the motion to compel arbitration represent mirror images such that the resolution of the legal issues presented in one motion guides resolution of the legal issues in the other. Thus, because of Wynn-Williams's waiver of both threshold arbitrability and EFAA election, her arguments against further arbitration fail, and the Court GRANTS Meta's motion to compel arbitration.

**B. Motion to Vacate Interim Arbitral Award**

Meta primarily argues that Wynn-Williams's motion to vacate the interim arbitral award should be denied because it is time-barred. *See* Dkt. No. 51 at 29-30. The FAA requires that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party

[3] Wynn-Williams already presented this same estoppel argument to the arbitrator and lost. *See* Linhardt Decl., Ex. F (Dkt. No. 51-7) at 2, 12-13 (raising same argument); *id.*, Ex. H (Dkt. No. 51-9) at 14 (ruling by the arbitrator stating that Meta's "general public statements regarding not requiring sexual harassment victims to arbitrate sexual harassment claims does not establish that [Meta] waived its rights to pursue this arbitration against" Wynn-Williams).

or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. This statutory deadline typically only applies to final awards because, as noted above, typically only final awards are subject to judicial review, and "judicial review of non-final arbitration awards 'should be indulged, if at all, only in the most extreme cases.' " *Pac. Reinsurance*, 935 F.2d at 1022 (citations omitted).

Wynn-Williams argues at length that this is such an extreme case – the arbitrator's interim award warrants judicial review because it represents a prior restraint on her speech in violation of the First Amendment. *See* Dkt. No. 42 at 23. The Court assumes without deciding that the First Amendment concerns raised by Wynn-Williams make this an extreme case warranting an appeal from the arbitrator's interim award. Accepting that premise, Wynn-Williams had three months in which to seek to vacate the interim award, a deadline of June 12, 2025. 9 U.S.C. § 12; *see also* Dkt. No. 44-7 (interim award dated March 12, 2025). Even if that statutory deadline did not begin to run until March 31, 2025, when the arbitrator denied her emergency motion to vacate the arbitration award, the deadline to seek judicial review was June 30, 2025. *See* Dkt. No. 44-6. On this basis, Wynn-Williams's motion to vacate the interim arbitration award is time-barred and must be denied because she did not seek judicial relief until almost 15 months after the challenged arbitral award.

Wynn-Williams resists this conclusion, relying on *Swenson v. Bushman Investment Properties, Ltd.*, 870 F. Supp. 2d 1049 (D. Idaho 2012). *See* Dkt. No. 54 at 19. In *Swenson*, the arbitrator issued an interim award on liability followed several months later by a final award on damages and attorney's fees. The defendant argued that the motion to vacate the arbitration award failed as untimely because the time to seek vacatur ran from the issuance of the interim award; the district court disagreed and found the motion to vacate was timely because it was filed within three months after the final award. *Swenson*, 870 F. Supp. 2d at 1054. Any analogy from *Swenson* cuts against Wynn-Williams, not in her favor. Here, there is no final award – the award she challenges is only an interim award, and she did not bring any action even close to within three months of its issuance. As was true regarding waiver, Wynn-Williams delayed too long and participated in the

arbitration too thoroughly to seek to evade its constraints at this stage. The Court therefore DENIES the motion to vacate interim award.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** the motion for preliminary injunction, **DENIES** the motion to vacate interim arbitral award, and **GRANTS** the motion to compel arbitration. The Court **STAYS** the case pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

The parties SHALL FILE a joint status report on December 1, 2026, and every 90 days thereafter, to inform the Court of the status of the arbitration proceedings. Additionally, within 28 days of the resolution of the arbitration, the parties SHALL FILE a joint status report and advise whether the case should be terminated and/or other actions which should be taken.

**IT IS SO ORDERED.**

Dated: September 4, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**